BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division
C. SALVATORE D'ALESSIO, Jr.
Director, Torts Branch
RICHARD MONTAGUE
Senior Trial Counsel
BRIAN J. BOYD
Trial Attorney (NY Bar # 5562582)
175 N St. NE, 7th Floor
Washington, DC 20002
Tel: (202) 616-4142
Fax: (202) 616-4314
E-Mail: Brian.J.Boyd@usdoj.gov

Attorneys for Defendant
UNITED STATES OF AMERICA

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF ASHLI BABBITT AND AARON BABBITT, individually and on behalf of the ESTATE OF ASHLI BABBITT,<br><br>        Plaintiffs,<br><br>   vs.<br><br>THE UNITED STATES OF AMERICA,<br><br>     Defendant. | Case No. 24CV0033 BAS DDL<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT UNITED STATES OF AMERICA'S MOTION TO TRANSFER VENUE**<br><br>Hearing Date:  April 8, 2024<br><br>**NO ORAL ARGUMENT UNLESS ORDERED BY THE COURT** |

# **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................ 1

STATEMENT .................................................................................................................. 2

LEGAL STANDARD ...................................................................................................... 4

ARGUMENT .................................................................................................................. 5

The Balance of Factors Favors Transfer to the District of Columbia ............................ 6

    1.    Plaintiff's Choice of Forum is Entitled to Minimal Consideration ................... 6

    2.    Convenience of Potential Witnesses Strongly Favors the District of
         Columbia. ......................................................................................................... 7

    3.    Convenience of the Parties Favors Washington, D.C. ..................................... 12

    4.    Washington, D.C. Provides Easier Access to Relevant Evidence ................... 13

    5.    The District of Columbia Federal Court is Best Suited to Apply
         D.C. Law ......................................................................................................... 14

    6.    The District of Columbia Has a Stronger Local Interest in This
         Action ............................................................................................................... 15

    7.    Court Congestion and Time to Trial Favors Neither District .......................... 17

    8.    There Are No Actions to Consolidate in Either District .................................. 18

CONCLUSION .............................................................................................................. 18

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF AUTHORITIES

**Cases**

*Abiding Place Ministries v. Newsom,*
    No. 3:21-CV-00518-RBM-DDL, 2023 WL 2001125 (S.D. Cal. Feb. 14, 2023)............2

*Al Otro Lado, Inc. v. Kelly,*
    No. 17-CV-5111-JFW (JPRx), 2017 WL 10592130 (C.D. Cal. Nov. 21, 2017).....11, 13

*Am. GNC Corp. v. GoPro, Inc.,*
    No. 18-CV-00968-BAS-BLM, 2018 WL 6074395 (S.D. Cal. Nov. 6, 2018)........*passim*

*Barroca v. United States,*
    No. 19-CV-00699-MMC, 2019 WL 5722383 (N.D. Cal. Nov. 5, 2019) .....................13

*Bennett v. United States,*
    44 F.4th 929 (9th Cir. 2022) ........................................................................................14

*Bivens v. Union Pac. R.R. Co.,*
    No. CV H-06-3751, 2007 WL 9734368 (S.D. Tex. July 5, 2007)...................................9

*Cohen Asset Mgmt., Inc. v. Davey Tree Expert Co.,*
    No. 05-CV-1214 W (LSP), 2005 WL 8173354 (S.D. Cal. Sept. 7, 2005).....................14

*Commodity Futures Trading Comm'n v. Savage,*
    611 F.2d 270 (9th Cir. 1979) ..........................................................................................5

*Decker Coal Co. v. Commonwealth Edison Co.,*
    805 F.2d 834 (9th Cir. 1986) ...............................................................................5, 6, 13

*Eclipse IP LLC v. Volkswagen Grp. of Am., Inc.,*
    No. EDCV 12-2087 PSG SPX, 2013 WL 9935572 (C.D. Cal. May 10, 2013) ............11

*Gentle v. Richmond Police Dep't,*
    No. 2-22CV945-KJM-KJN PS, 2022 WL 3161993 (E.D. Cal. July 12, 2022) .............15

*Grain Co. v. The FBL-585,*
    364 U.S. 19 (1960) ..........................................................................................................4

iii

*Greenley v. Kochava, Inc.,*
  No. 22-CV-01327-BAS-AHG, 2023 WL 4833466 (S.D. Cal. July 27, 2023) ..............15

*Gulf Oil Corp. v. Gilbert,*
  330 U.S. 501 (1947) ......................................................................................................15

*Hamilton v. Willms,*
  No. 1:02-CV-6583 AWI SMS, 2013 WL 1156432 (E.D. Cal. Mar. 20, 2013) .............17

*Hatch v. Reliance Ins. Co.,*
  758 F.2d 409 (9th Cir. 1985) ..........................................................................................4

*Hinestroza v. United States,*
  No. CV 23-2026-MWF (MRWx), 2023 WL 6787769 (C.D. Cal. Sept. 6, 2023) .....6, 11

*Hornbeck Offshore Transp., LLC v. United States,*
  569 F.3d 506 (D.C. Cir. 2009) ........................................................................................1

*In re Ferrero Litig.,*
  768 F. Supp. 2d 1074 (S.D. Cal. 2011) ..........................................................................15

*In re Hoffmann-La Roche Inc.,*
  587 F.3d 1333 (Fed. Cir. 2009) .....................................................................................15

*In re Nintendo Co., Ltd.,*
  589 F.3d 1194 (Fed. Cir. 2009) .....................................................................................12

*In re TikTok, Inc.,*
  85 F.4th 352 (5th Cir. 2023) ..........................................................................................15

*In re TS Tech USA Corp.,*
  551 F.3d 1315 (Fed. Cir. 2008) .....................................................................................14

*Italian Colors Rest. v. Am. Express Co.,*
  2003 WL 22682482 (N.D. Cal. Nov. 10, 2003) .............................................................12

*Jones v. GNC Franchising, Inc.,*
  211 F.3d 495 (9th Cir. 2000) .....................................................................................4, 12

iv

*Koval v. United States*,
  No. 2:13-CV-1630-HRH, 2013 WL 6385595 (D. Ariz. Dec. 6, 2013) ........................ 15

*Llevat v. True N. Brands, LLC*,
  No. 21-CV-656-BAS-AGS, 2021 WL 5449033 (S.D. Cal. Nov. 22, 2021) ............. 4, 12

*Lueck v. Sundstrand Corp.*,
  236 F.3d 1137 (9th Cir. 2001) ........................................................................ 7

*Montue v. City of San Diego*,
  No. 2-22CV511-TLN-KJN PS, 2022 WL 1228924 (E.D. Cal. Apr. 26, 2022) ............. 15

*Pac. Car & Foundry Co. v. Pence*,
  403 F.2d 949 (9th Cir. 1968) ........................................................................ 6

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
  442 F.3d 741 (9th Cir. 2006) ........................................................................ 2

*Saleh v. Titan Corp.*,
  361 F. Supp. 2d 1152 (S.D. Cal. 2005) ......................................... 7, 9, 10, 15

*Stambanis v. TBWA Worldwide, Inc.*,
  No. 19-CV-00821-TSH, 2019 WL 1979949 (N.D. Cal. May 3, 2019) ................. 11, 12

*Trump v. Thompson*,
  20 F.4th 10 (D.C. Cir. 2021) ................................................................... 2, 16

*United States ex rel. Cody v. Mantech Int'l Corp.*,
  No. CV 13-9173 FMO (SSX), 2016 WL 10537807 (C.D. Cal. Feb. 9, 2016) ............. 13

*United States v. Oliveras*,
  No. CR 21-738 (BAH), 2023 WL 196679 (D.D.C. Jan. 17, 2023) ............................. 16

## **Statutes**

28 U.S.C. § 1346(b)(1) .......................................................................... 1, 5, 14

28 U.S.C. § 1402(b) ................................................................................. 1, 5

28 U.S.C. § 1404(a) .............................................................................. 1, 4, 5

v

28 U.S.C. §§ 2671-2680 ................................................................. 1

**<u>Rules</u>**

Fed. R. Civ. P. 45(c)(1)(A-B) ..................................................... 12

**<u>Other Authorities</u>**

Admin. Office of the U.S. Courts*, U.S. District Courts–Federal Court Management
  Statistics–Profiles (Dec. 31, 2023) ................................................ 17

Architect of the Capitol, J. Brett Blanton*, Statement before the House of Representatives
  Committee on House Administration* (May 19, 2021) .............................. 16

Department of Justice, *Department of Justice Closes Investigation into the Death of Ashli
  Babbitt* (April 14, 2021) ............................................................. 3

Department of Justice, *Virginia Man Found Guilty of Felony and Misdemeanor Charges
  Related to Capitol Breach* (September 13, 2023) ............................... 10

Department of Justice, *Kentucky Man Found Guilty of Felony and Misdemeanor Charges
  Related to Actions During Jan. 6 Capitol Breach* (July 26, 2023) ............... 10

Philip Elliott, *'Always Be Ready to Run': For Some Capitol Workers, It's Still Jan. 6*
  (August 3, 2023) ..................................................................... 16

Shirin Ali, *How reliving the Jan. 6 insurrection can take a toll on mental health*
  (June 13, 2022) ...................................................................... 16

United States Capitol Police, *USCP Completes Internal Investigation into the January 6
  Officer-Involved Shooting* (August 23, 2021) ..................................... 3

vi

**INTRODUCTION**

This case stems from the shooting death of Ms. Ashli Babbitt by a U.S. Capitol Police officer during the January 6 assault on the Capitol in Washington, D.C. Aaron Babbitt, individually and as the appointed personal representative and administrator of the Estate of Ashli Babbitt, now sues under the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680 (FTCA), alleging negligent or wrongful acts or omissions by Capitol Police officers and other Washington, D.C.-based federal officials that he says led to Ms. Babbitt's death.

The FTCA waives federal sovereign immunity and imposes liability on the United States in accordance with the law of the place where the alleged negligent or wrongful act or omission occurred. *Id*. § 1346(b)(1). District of Columbia law therefore determines the United States' potential liability. *See, e.g., Hornbeck Offshore Transp., LLC v. United States*, 569 F.3d 506, 508 (D.C. Cir. 2009). The FTCA's venue provision, 28 U.S.C. § 1402(b), similarly lays venue in the judicial district "wherein the act or omission complained of occurred," but also allows for venue where the plaintiff resides. *Id*. Mr. Babbitt resides in this district.

Although venue is permissible in this district, "[f]or the convenience of parties and witnesses, [and] in the interest of justice," transfer to the District of Columbia is warranted under 28 U.S.C. § 1404(a). All of the events at issue occurred in Washington, D.C. A substantial, if not overwhelming, majority of witnesses and documentary and physical evidence are located there, as are both parties' counsel. Transfer to Washington, D.C. would thereby reduce the costs, burdens, and inconvenience to the parties and witnesses. The District of Columbia federal court is well-versed in District of Columbia tort law. Finally, the Washington, D.C. community has a stronger interest in the local adjudication of this case. The unprecedented attack on the Capitol was unquestionably a matter of national interest, but it directly affected the District of Columbia community that includes the police officers, congressional staffers, and other employees of the

1

Legislative Branch who found themselves under siege that day. Consequently, a venue transfer under section 1404(a) is warranted.

## STATEMENT[1]

Ms. Babbitt traveled from California to Washington, D.C. to attend a rally on January 6, 2021, at which former President Donald J. Trump gave a speech regarding the outcome of the 2020 election. Compl. ¶ 10. Following the rally, large groups of rally attendees, including Ms. Babbitt, converged on the Capitol. *Id.* ¶ 11. Once there, some of these individuals violently clashed with law enforcement, *Trump v. Thompson*, 20 F.4th 10, 18 (D.C. Cir. 2021), and some, including Ms. Babbitt, unlawfully entered the Capitol, *see* Compl. ¶ 11. At the time, the Capitol was closed to the public while then-Vice President Pence and the Joint Session of Congress certified the results of the 2020 Presidential election. *Trump*, 20 F.4th at 18. Though certain Members of the House and Senate and Vice President Pence were evacuated from the House and Senate Chambers, *id.,* some House Members remained inside the House Chamber, *see* Compl. ¶ 49(a-c).

After entering the Capitol, a large group of individuals, including Ms. Babbitt, gathered outside the East Speaker's Lobby doors. *Id.* ¶¶ 11, 14. The Speaker's Lobby leads directly to the House Chamber, and the East Speaker's Lobby doors—which are two swinging doors with large glass panels and glass transoms on either side, *id.* ¶ 13— were closed, *id.* ¶ 49(c). Officers also reinforced the inside of the Speaker's Lobby doors with a barricade of furniture. *Id.* ¶ 49(e). Several individuals in the group struck the

---

[1] This narrative is compiled from the complaint, court documents, and other publicly available government documents of which the Court may take judicial notice. *Abiding Place Ministries v. Newsom*, No. 3:21-CV-00518-RBM-DDL, 2023 WL 2001125, at *3 (S.D. Cal. Feb. 14, 2023) ("A court may take judicial notice of court filings, other matters of public record, and documents that are readily verifiable, including public records and government documents available from reliable sources on the internet, such as websites run by governmental agencies." (citing *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006))).

Speaker's Lobby doors, breaking one of the windows. *Id.* at ¶ 14; DOJ, *Department of Justice Closes Investigation into the Death of Ashli Babbitt* (April 14, 2021), *available at* https://www.justice.gov/usao-dc/pr/department-justice-closes-investigation-death-ashli-babbitt ("DOJ April 14th Press Release") (last visited March 1, 2024). After Ms. Babbitt attempted to climb through the window, Officer Michael Byrd fired one round from his service firearm, striking Ms. Babbitt in her left shoulder. *Id.* She fell backwards onto the floor just outside the Speaker's Lobby. Several Capitol Police Containment and Emergency Response Team officers provided immediate medical attention to her, and D.C. Fire transported her to MedStar Washington Hospital Center; she died from her injuries. *Id.*

The United States Attorney's Office for the District of Columbia, the Department of Justice Civil Rights Division, and the District of Columbia Metropolitan Police Department investigated the shooting and found no evidence that Officer Byrd did not reasonably believe it necessary to use deadly force in self-defense or in defense of the Members of Congress and others evacuating the House Chamber. DOJ April 14th Press Release. The Capitol Police Office of Professional Responsibility separately determined that Officer Byrd's actions were lawful and within department policy.[2]

Three years later, Mr. Babbitt filed this suit. He asserts seven claims under the FTCA labeled as: (1) Assault and Battery by Officer Byrd, *see* Compl. at p.8; (2) Negligence by Officer Byrd, *id.* at p.9; (3) Negligence by other Capitol Police Officers and an employee of the House of Representatives, Office of the Sergeant At Arms, *id.* at p.23; (4) Negligent supervision, discipline, and retention of Officer Byrd by the Capitol

---

[2] United States Capitol Police, *USCP Completes Internal Investigation into the January 6 Officer-Involved Shooting* (August 23, 2021), *available at* https://www.uscp.gov/media-center/press-releases/uscp-completes-internal-investigation-january-6-officer-involved (last visited March 1, 2024).

Memorandum of Points and Authorities in Support of
Defendant's Motion to Transfer Venue                              24cv0033 BAS DDL

Police and the Capitol Police Board, *id*. at p.26; (5) Negligent Training by the Capitol Police and the Capitol Police Board, *id*. at p.28; (6) a Survival Action, *id*. at p.30; and (7) Wrongful Death, *id*. at p.31. He seeks $30 million in damages.

## <u>LEGAL STANDARD</u>

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer" an action to another "district…where it might have been brought." 28 U.S.C. § 1404(a). "The idea behind § 1404(a) is that where a 'civil action' to vindicate a wrong—however brought in a court—presents issues and requires witnesses that make one District Court more convenient than another, the trial judge can, after findings, transfer the whole action to the more convenient court." *Con'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960). "To construe § 1404(a) this way merely carries out its design to protect litigants, witnesses and the public against unnecessary inconvenience and expense . . . ." *Id*. at 27; *see also Llevat v. True N. Brands, LLC*, No. 21-CV-656-BAS-AGS, 2021 WL 5449033, at *3 (S.D. Cal. Nov. 22, 2021) (Bashant, J.). "[T]he district court has discretion to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).

A district court must make two findings when determining whether to transfer an action. *See Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985). First, it must determine whether the action could have been brought in the transferee court. *Id.* If so, it must then determine whether transfer there will serve "the convenience of parties and witnesses" and promote the interests of justice. *Id*. To make these findings, district courts generally evaluate eight factors: (1) the plaintiff's choice of forum; (2) convenience of the witnesses; (3) convenience of the parties; (4) each forum's familiarity with the applicable law; (5) ease of access to evidence; (6) the forum's local interest in the controversy; (7) relative court congestion and time of trial in each forum; and (8) feasibility of consolidation with other cases. *Jones*, 211 F.3d at 498; *see also Am. GNC*

4

*Corp. v. GoPro, Inc.*, No. 18-CV-00968-BAS-BLM, 2018 WL 6074395, at *15 (S.D. Cal. Nov. 6, 2018) (Bashant, J.).

These factors are nonexclusive. Section 1404(a) partially displaces the law of forum non conveniens, and so "forum non conveniens considerations are helpful in deciding a § 1404 transfer motion." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). Accordingly, additional factors bearing on transfer include "private and public interest factors affecting the convenience of the forum." *Id.* (citation omitted). As relevant here, additional private factors include the availability of compulsory process against unwilling witnesses, cost of attendance for willing witnesses, possibility of viewing the scene of the incident (if helpful to the action), and any other practical problems making trial easier, expeditious and inexpensive, while a relevant public factor is having local controversies decided at home with the law that governs. *Id.* (cleaned up) (citation omitted). The moving party bears the burden of showing that transfer is appropriate. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979).

## **ARGUMENT**

Transfer to the District of Columbia "[f]or the convenience of parties and witnesses, [and] in the interest of justice," is plainly appropriate in this case. The District of Columbia is a judicial district in which this action "might have been brought." 28 U.S.C. § 1404(a). The FTCA vests subject matter jurisdiction in "the district courts" generally, *see id.* § 1346(b)(1), and venue in FTCA suits is proper "in the judicial district where the plaintiff resides or where the act or omission complained of occurred." *Id.* § 1402(b). Both parties agree that the acts or omissions giving rise to this case occurred in the District of Columbia. *See* Compl. ¶ 5. And as demonstrated below, the District of Columbia is a more convenient forum for the parties and witnesses, and transfer is in the interests of justice.

**The Balance of Factors Favors Transfer to the District of Columbia**

On balance, the relevant factors show that litigation of this action in Washington, D.C. is more convenient for the parties and witnesses and that transfer is in the interests of justice. All of the alleged acts or omissions giving rise to this action occurred in Washington, D.C. The overwhelming majority of non-party and party witnesses, relevant documents, and physical evidence are located there. Both parties' counsel are located in Washington, D.C. Transfer would thus reduce the costs, burdens, and inconvenience to both the parties and witnesses. The District Court for the District of Columbia is well-versed in applying District of Columbia law, which provides the rule of decision governing Plaintiff's claims. The District of Columbia community also has the stronger public interest in adjudicating this case. The January 6 attack directly affected members of the local community, including the police officers, congressional staff members, and other employees who were attacked and terrorized that day. Accordingly, transfer to the District of Columbia is proper.

1.    <u>Plaintiff's Choice of Forum is Entitled to Minimal Consideration</u>

Though a plaintiff's choice of forum is ordinarily afforded significant weight in the section 1404(a) analysis, *see Decker Coal Co.*, 805 F.2d at 843, "[i]f the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter, the plaintiff's choice is entitled only to minimal consideration." *Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968); *see also Am. GNC Corp.*, 2018 WL 6074395, at *15 (explaining that when all the alleged events occurred outside the forum the "[d]eference to the plaintiff's chosen venue is substantially reduced") (internal quotation marks and citation omitted); *Hinestroza v. United States*, No. CV 23-2026-MWF (MRWx), 2023 WL 6787769, at *3 (C.D. Cal. Sept. 6, 2023) (granting transfer after finding, among other things, plaintiff's choice to bring FTCA claims in district where he resides was entitled to "less weight" because "the

alleged tortious conduct occurred entirely elsewhere."). All of the events at issue here occurred in the District of Columbia, and so Plaintiff's choice of forum, the principal factor weighing in favor of litigating the case in this district, carries less weight.

2.   Convenience of Potential Witnesses Strongly Favors the District of Columbia.

"[C]onvenience of the witnesses is the most important consideration in determining whether to transfer venue" with the primary focus on non-party witnesses who are not subject to party control. *Am. GNC Corp.*, 2018 WL 6074395, at *17 (internal quotation marks and citation omitted); *see also Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1160 (S.D. Cal. 2005) (explaining that convenience of party witnesses is relevant, but it carries less weight).[3] When analyzing this factor, courts consider where witnesses are located and the "nature and quality of their testimony." *Am. GNC Corp.*, 2018 WL 6074395, at *17; *see also Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1146 (9th Cir. 2001) (evaluating transfer motion under forum non conveniens and explaining that courts should analyze "the materiality and importance of the anticipated evidence and witnesses' testimony and then determine their accessibility and convenience to the forum" (cleaned up)). A court should also consider the burden that travel to another location places on witnesses and "whether such witnesses are subject to compulsory process in the judicial forum where the case is being litigated so that their testimony can be compelled for trial if necessary." *Am. GNC Corp.*, 2018 WL 6074395, at *18. These factors show that the District of Columbia is the more convenient forum for anticipated witnesses.

---

[3] In the venue transfer context, "party witness" is a shorthand for witnesses affiliated with a party or under its control, such as an employee. "Non party" or "third-party witness" refers to witnesses not affiliated with a party. *See, e.g., Am. GNC Corp.*, 2018 WL 6074395, at *17.

7

The complaint itself refers to several potential non-party witnesses located in or near Washington, D.C.:[4]

| Non-Party Witness | Location | Nature of Testimony |
|---|---|---|
| 1. Two undercover Metropolitan Police Department Officers | Work in D.C. | Followed Ms. Babbitt into the Capitol just prior to the shooting. Compl. ¶ 11 |
| 2. Zachary Alam | Lives in Centerville, Virginia | Beat on the Speaker's Lobby door and was near Ms. Babbitt at the time of the shooting. *Id.* ¶¶ 49, 53, 65-72, 92. |
| 3. Chad Jones | Lives in Mount Washington, Kentucky | Beat on the Speaker's Lobby door and was near Ms. Babbitt at the time of the shooting. *Id.* |
| 4. Former Capitol Police Officer Christopher Lanciano | Unknown | Located outside the Speaker's Lobby door just prior to the shooting. *Id.* ¶¶ 49, 63-74. |

Other potential non-party witnesses include:

| Non-Party Witness | Location | Nature of Testimony |
|---|---|---|
| 5. Metropolitan Police Investigators and crime scene personnel | Work in D.C. | Investigated the shooting and collected physical evidence. |
| 6. D.C. Fire and Emergency Medical Services Captain La'Kisha Lacey | Works in D.C. | Treated Ms. Babbitt on scene and transported her to MedStar Washington Hospital Center. |
| 7. Additional D.C. Fire Personnel | Work in D.C. | Treated Ms. Babbitt on scene and transported her to MedStar Washington Hospital Center. |

---

[4] In their administrative claim filed with the Capitol Police, Mr. Babbitt also identified 16 other non-party witnesses, six of whom are listed with addresses located within 100 miles of Washington, D.C., and none of whom are located in or within 100 miles of this district.

8

| 8. Medical Personnel at MedStar Washington Hospital Center | Work in D.C. | Treated Ms. Babbitt at the hospital for gunshot injury. |
|---|---|---|
| 9. Dr. Francisco Diaz, D.C. Medical Examiner | Works in D.C. | Conducted the autopsy of Ms. Babbitt. |

The location of these non-party witnesses in or near Washington, D.C. strongly favors transfer. *See Bivens v. Union Pac. R.R. Co.*, No. CV H-06-3751, 2007 WL 9734368, at *1 (S.D. Tex. July 5, 2007) (finding transfer to Louisiana was proper where the testimony of material non-party eyewitnesses, emergency responders, and investigators located there would be "critical").

The location of party witnesses, the overwhelming majority of whom are also located in or near Washington, D.C., also favors transfer. *See Saleh*, 361 F. Supp. 2d at 1160. Relevant party witnesses include the following:

| Party Witness | Location | Nature of Testimony |
|---|---|---|
| 1. Capitol Police Officer Michael Byrd | Works in D.C. | Officer who shot Ms. Babbitt. Compl. ¶¶ 49, 63-74. |
| 2. Capitol Police Sergeant Paul McKenna | Works in D.C. | Located inside the Speaker's Lobby door before and at the time of the shooting. *Id.* |
| 3. Capitol Police Sergeant Timothy Lively | Works in D.C. | Located outside the Speaker's Lobby door just prior to the shooting. *Id.* |
| 4. Capitol Police Officer Reggie Tyson | Works in D.C. | Located inside the Speaker's Lobby before and at the time of the shooting. *Id.* |
| 5. Capitol Police Officer Steven Robbs | Works in D.C. | Located outside Speaker's Lobby at the time of the shooting and provided first aid to Ms. Babbitt. *Id.* |
| 6. Capitol Police Officer Don Smith | Works in D.C. | Located outside Speaker's Lobby at the time of the shooting and witnessed the first aid provided to Ms. Babbitt. *Id.* |

9

| | | |
|---|---|---|
| 7. Capitol Police Officer Brandon Sikes | Works in D.C. | Located outside Speaker's Lobby at the time of the shooting and provided first aid to Ms. Babbitt. *Id.* |
| 8. Capitol Police Officer Michael Brown | Works in D.C. | Located outside Speaker's Lobby at the time of the shooting and witnessed the first aid provided to Ms. Babbitt. *Id.* |
| 9. Former Capitol Police Officer/Current federal Special Agent Kyle Yetter | Works in greater D.C. area | Located outside the Speaker's Lobby door just prior to the shooting. *Id.* |
| 10. Jason Gandolph, employee for the United States House of Representatives, Office of the Sergeant At Arms | Works in D.C. | Located near the Speaker's Lobby at the time of the shooting. *Id.* ¶¶ 63-74. |
| 11. Additional Capitol Police officials | Work in D.C. | Information regarding (i) Capitol Police's response to the January 6 attack and the breach of the Speaker's Lobby; (ii) department policies and procedures related to critical incidents and use of force, and the hiring, retention, and disciplinary actions of Officer Byrd, *id.* ¶¶ 75-101 (Counts IV-VII); and (iii) the Capitol Police's Office of Professional Responsibility internal investigation into the shooting. |
| 12. FBI Special Agents | Work in D.C. | Investigated rioters, such as Alam[5] and Jones.[6] |

---

[5] https://www.justice.gov/usao-dc/pr/virginia-man-found-guilty-felony-and-misdemeanor-charges-related-capitol-breach-0 (last visited March 1, 2024).

[6] https://www.justice.gov/usao-dc/pr/kentucky-man-found-guilty-felony-and-misdemeanor-charges-related-actions-during-jan-6 (last visited March 1, 2024).

10

Aside from Plaintiff Aaron Babbitt himself (who was not a witness to the shooting), the United States is not currently aware of any party witness located in this district. Accordingly, the convenience-of-witnesses factor tips decidedly in favor of transfer. *See Hinestroza*, 2023 WL 6787769, at *3 (finding convenience of government party witnesses favored transfer where the "officers with personal knowledge of the relevant facts were stationed in the Southern District of Texas"); *Al Otro Lado, Inc. v. Kelly*, No. 17-CV-5111-JFW (JPRx), 2017 WL 10592130, at *3 (C.D. Cal. Nov. 21, 2017) (favoring transfer from Central District of California to Southern District of California because "the overwhelming majority of [party] witnesses, including [federal law enforcement]" were located in the Southern District.).

In the absence of transfer, all of these witnesses could be substantially burdened and inconvenienced. Without a venue transfer, should this case proceed to trial, all "must take time out of their work and private time to travel to and from the place of trial, to live away from home and to wait around windowless corridors on call to testify" while "[b]ack home, they have children to get to school, elderly parents to care for, jobs to do and lives to lead—all of which must be managed somehow or put on hold." *Stambanis v. TBWA Worldwide, Inc.*, No. 19-CV-00821-TSH, 2019 WL 1979949, at *2 (N.D. Cal. May 3, 2019) (internal quotation marks and citation omitted). Those hardships are compounded here because "inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Am. GNC Corp.*, 2018 WL 6074395, at *17 (internal quotation marks and citation omitted). Absent transfer, these witnesses may need to travel approximately 2600 miles to this district, were the case to proceed to trial, whereas most would be within driving distance if the case proceeds in Washington, D.C. where most work and where the events at issue happened.

Additionally, "[i]n the Ninth Circuit, the availability of compulsory process to compel attendance of non-party witnesses in the transferee district favors transfer." *Eclipse IP LLC v. Volkswagen Grp. of Am., Inc.*, No. EDCV 12-2087 PSG SPX, 2013

WL 9935572, at *4 (C.D. Cal. May 10, 2013) (citing *Jones*, 211 F.3d at 499); *see also* Fed. R. Civ. P. 45(c)(1)(A-B) (limiting the court's power to "command a person to attend a trial, hearing or deposition…within 100 miles of…or within the state where the person resides, is employed, or regularly transacts business"). This Court has found that the "convenience of witnesses weighs heavily in favor of transfer where, as here, witnesses would be forced to travel over 100 miles . . . to testify at trial" and be beyond the court's subpoena power. *Llevat*, 2021 WL 5449033, at *8 (finding transfer would "significantly reduce inconvenience to witnesses."). So too here. And while the United States cannot now determine if any non-party witnesses would be unwilling to travel to this district should the case remain here, as the chart above shows, non-party witnesses in or near Washington, D.C. will be outside this Court's subpoena power. Transfer eliminates or significantly reduces this concern. Accordingly, this factor strongly favors transfer.

   3.   <u>Convenience of the Parties Favors Washington, D.C.</u>

   Litigating this action in Washington, D.C. is also more convenient for the parties because "[g]enerally, litigation costs are reduced when venue is located near the most witnesses expected to testify or give depositions." *Italian Colors Rest. v. Am. Express Co.*, No. C 03-3719 SI, 2003 WL 22682482, at *5 (N.D. Cal. Nov. 10, 2003). This Court has previously explained that "'[t]he convenience and cost of attendance for witnesses is an important factor in the transfer calculus' because 'additional distance from home means additional travel time . . . [which] increases the probability for meal and lodging expenses' and 'additional time with overnight stays increase the time which these fact witnesses must be away from their regular employment.'" *Am. GNC Corp.*, 2018 WL 6074395, at *17 (quoting *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1199 (Fed. Cir. 2009)); *see also Stambanis*, 2019 WL 1979949, at *2 ("The expenses of transportation, housing and meals, even if borne by a party, are nonetheless authentic" litigation costs that should be considered). Because the majority of witnesses are located in or near Washington, D.C., transfer to the District of Columbia would substantially reduce these

Memorandum of Points and Authorities in Support of                24cv0033 BAS DDL
Defendant's Motion to Transfer Venue

costs, especially for the United States (a majority of percipient witnesses being Capitol Police officers). *See Decker Coal Co.*, 805 F.2d at 843 (explaining courts should avoid transfer that "would merely shift rather than eliminate" costs).

The District of Columbia is also a more convenient venue for the parties because both parties' counsel are based in Washington, D.C. Requiring the parties' attorneys to travel over 2,600 miles to this district to attend hearings and potential trial would impose additional burden and expense that would be avoided if the case proceeds in the District of Columbia. *See Barroca v. United States*, No. 19-CV-00699-MMC, 2019 WL 5722383, at *3 (N.D. Cal. Nov. 5, 2019); *United States ex rel. Cody v. Mantech Int'l Corp.*, No. CV 13-9173 FMO (SSX), 2016 WL 10537807, at *3 (C.D. Cal. Feb. 9, 2016) (transfer to Virginia more convenient for parties since both parties' counsel were based out of Washington, D.C.).

Finally, transfer will not cause any "unreasonable delay" to this litigation because it is at its "nascent stages." *Am. GNC Corp.*, 2018 WL 6074395, at *16. The action has just been filed, and the Government brought its venue transfer motion at the earliest possible opportunity. Accordingly, the "unreasonable delay" factor is no impediment to transfer.

### 4.  Washington, D.C. Provides Easier Access to Relevant Evidence

Transfer to the District of Columbia also provides the parties with relatively greater ease of access to evidence because the "overwhelming majority of the documentary" and physical evidence "necessary to defend" the case is located there. *See Al Otro Lado, Inc.*, 2017 WL 10592130, at *3. Transfer would thereby provide the parties the "easiest access to the documents and other physical evidence necessary to" litigate the case. *Id*. And while documentary discovery increasingly is conducted in electronic form, "the location of physical documents remains a relevant factor notwithstanding advances

in information technology." *Am. GNC Corp.*, 2018 WL 6074395, at *20 (internal quotation marks and citation omitted).

In practical terms, all the potentially relevant documents related to the shooting and Plaintiff's claims are in Washington, D.C. Those include documents pertaining to the shooting itself; D.C. Fire and EMS reports about the initial treatment and transport of Ms. Babbitt to the hospital; hospital treatment records; Medical Examiner reports; documents pertaining to the Capitol Police's internal investigation of the shooting; and documents related to Capitol Police policies, and hiring, training, and discipline decisions. By contrast, the only potentially relevant documents likely to be in this district are those related to possible damages calculations, such as Ms. Babbitt's tax returns and earnings statements.

Transfer is also likely to facilitate possible site inspections, such as inspections of the Speaker's Lobby or other areas of the Capitol grounds. Transfer will also facilitate access to physical evidence. *See Cont'l Indus. Cap., L.L.C. through Cohen Asset Mgmt., Inc. v. Davey Tree Expert Co.*, No. 05-CV-1214 W (LSP), 2005 WL 8173354, at *2 (S.D. Cal. Sept. 7, 2005); *see also In re TS Tech USA Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008) (finding district court erred in not weighing this factor in favor of transfer "[b]ecause all of the physical evidence…and documentary evidence" was more conveniently located near the transferee court). Accordingly, this factor favors transfer.

5.  The District of Columbia Federal Court is Best Suited to Apply D.C. Law

"[T]he FTCA generally applies the substantive law 'of the place where the act or omission occurred[.]'" *Bennett v. United States*, 44 F.4th 929, 936 (9th Cir. 2022) (quoting 28 U.S.C. § 1346(b)(1)). District of Columbia law controls Plaintiff's claims. *See* Compl. ¶ 19 (citing Section 1346(b) and District of Columbia law as source of tort claims). And while federal courts can apply the law of states other than those in which the court sits, the District Court for the District of Columbia is necessarily more familiar with and can more readily apply District of Columbia law than can courts from other

14

districts. *See Greenley v. Kochava, Inc.*, No. 22-CV-01327-BAS-AHG, 2023 WL 4833466, at *9 (S.D. Cal. July 27, 2023) (Bashant, J.) (finding Southern District of California was "more familiar with California law" and therefore better situated to apply it than the District of Idaho); *In re Ferrero Litig.*, 768 F. Supp. 2d 1074, 1081 (S.D. Cal. 2011) ("A California district court is more familiar with California law than district courts in other states."). This favors transfer.

      6.  <u>The District of Columbia Has a Stronger Local Interest in This Action</u>

"If there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor." *Am. GNC Corp.*, 2018 WL 6074395, at *20 (cleaned up) (quoting *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009)). This is because "[t]here is a local interest in having localized controversies decided at home." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947). That factor "weighs heavily in favor of transfer" especially "when there is no relevant factual connection to the transferor district." *In re TikTok, Inc.*, 85 F.4th 352, 364 (5th Cir. 2023) (cleaned up and citation omitted). The Washington, D.C. community has a stronger interest in the adjudication of this case.

Washington, D.C. has a "significant interest in applying and interpreting its laws in this case." *Saleh*, 361 F. Supp. 2d at 1167 (finding stronger local interest for Eastern District of Virginia to apply its laws and preside over case concerning the alleged actions of top government officials at the Pentagon). This case implicates, among other things, the operations and actions of the Capitol Police and other Washington, D.C.-based first responders. Courts regularly find that when cases involve the actions of local police, the district where the officers are located has "a significant local interest" in the case. *Gentle v. Richmond Police Dep't*, No. 2-22CV945-KJM-KJN PS, 2022 WL 3161993, at *2 (E.D. Cal. July 12, 2022); *Montue v. City of San Diego*, No. 2-22CV511-TLN-KJN PS,

15

2022 WL 1228924, at *2 (E.D. Cal. Apr. 26, 2022) (similar); *Koval v. United States*, No. 2:13-CV-1630-HRH, 2013 WL 6385595, at *4 (D. Ariz. Dec. 6, 2013) (similar).

So too here. The Capitol Police is a unique federal police department that operates almost exclusively within the borders of Washington, D.C. The agency is charged with the protection of a facility unique to Washington, D.C.—the Capitol. This litigation may implicate how the Capitol Police secures the Capitol, protects Members of Congress and the surrounding Capitol grounds, and responds to future threats. While these are matters of national interest, they are also matters of heightened interest to the Washington, D.C. community. Members of Congress, congressional staff, law enforcement officers, and other employees who work in the Capitol hold a deeply personal stake in the issues likely to arise in this case. Many still suffer from the trauma of January 6.[7] These members of the Washington, D.C. community, therefore, have a significant interest in this case.

The January 6 Capitol attack also has had, and continues to have, a profound and deep impact on local first responders and National Guardsman, their families, and the D.C. community. *See United States v. Oliveras*, No. CR 21-738 (BAH), 2023 WL 196679, at *2 (D.D.C. Jan. 17, 2023) ("To be sure, the immediate local impact [of January 6] on the residents of D.C. was undoubtedly substantial…"). Hundreds of first responders and National Guardsman from the District of Columbia, Virginia, and Maryland responded to the Capitol on January 6 to protect life and property and restore order. *See Trump*, 20 F.4th at 18. The Capitol attack left at least 80 Capitol Police and 60

---

[7] *See* https://thehill.com/changing-america/well-being/mental-health/3521946-how-reliving-the-january-6-insurrection-can-take-a-toll-on-mental-health/ (last visited March 1, 2024); https://time.com/6301285/january-6-capitol-trauma-trump-arraignment/ (last visited March 1, 2024). *See also* Architect of the Capitol, J. Brett Blanton, Statement before the House of Representatives Committee on House Administration (May 19, 2021), *available at* https://www.aoc.gov/sites/default/files/2021-05/AOC_Testimony_CHA_Hearing-2021-05-19.pdf (describing actions taken by staff to protect Congressional staff and aid police officers inside the Capitol, and the resulting stress and trauma that followed) (last visited March 1, 2024).

Memorandum of Points and Authorities in Support of                    24cv0033 BAS DDL
Defendant's Motion to Transfer Venue

Metropolitan Police Department officers injured. *Id*. at 18-19 (citing Staff Report of Comm. On Homeland Security and Governmental Affs. And Comm. On Rules and Admin., 117th Cong., Examining the U.S. Capitol Attack: A Review of the Security, Planning, and Response Failures, at 29 (June 8, 2021) ("Capitol Attack Senate Report"). It also significantly contributed to the deaths of Capitol Police Officers Brian Sicknick and Howard Liebengood, and Metropolitan Police Officer Jeffrey Smith. *See* Capitol Attack Senate Report at 29. These local first responders, National Guardsman, their families, and the local communities that they serve are distinctly affected by and interested in cases related to January 6. Accordingly, this factor tips decidedly in favor of transfer.

7. <u>Court Congestion and Time to Trial Favors Neither District</u>

Judges in this district and in the District of Columbia both have substantial caseloads that render this factor neutral. Based on the U.S. District Court December 2023 caseload statistics, a judge in this district receives a total of 549 filings each year, comprised of 247 felony criminal cases, 192 civil cases, and 110 supervised release hearings, whereas a judge in the District of Columbia receives 298 total filings, with 28 felony criminal cases, 260 civil cases, and 9 supervised release hearings.[8] And while the average time from filing to trial in this district for civil cases is 40.2 months compared to 48.6 months in the District of Columbia, it is difficult to determine how much impact this district's substantially higher criminal docket—which takes precedence over civil matters—will have on prolonging disposition of civil cases moving forward. *See Hamilton v. Willms*, No. 1:02-CV-6583 AWI SMS, 2013 WL 1156432, at *3 (E.D. Cal. Mar. 20, 2013) ("The law requires the Court give any criminal case priority over civil

---

[8] *See* Admin. Office of the U.S. Courts, *U.S. District Courts–Federal Court Management Statistics–Profiles* (Dec. 31, 2023), *available* at https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile1231.2023.pdf (last visited March 1, 2024).

trials and other matters, and the Court must proceed with criminal trials even if a civil trial is older or was set earlier."). Therefore, this factor is neutral.

8. There Are No Actions to Consolidate in Either District

There are no other actions pending in either this district or the District of Columbia regarding Mr. Babbitt's personal injury claims related to Ms. Babbitt's death. This factor, therefore, carries no weight in the section 1404(a) transfer analysis.

## **CONCLUSION**

For the foregoing reasons, the United States respectfully requests that this Court transfer this action to the United States District Court for the District of Columbia for the convenience of the witnesses and parties, and in the interests of justice.


DATED: March 1, 2024                           Respectfully submitted,

                                               BRIAN M. BOYNTON
                                               Principal Deputy Assistant Attorney General
                                               Civil Division

                                               C. SALVATORE D'ALESSIO, JR.
                                               Director, Torts Branch

                                               RICHARD MONTAGUE
                                               Senior Trial Counsel

                                               SARAH E. WHITMAN
                                               Senior Trial Counsel

                                               JOSEPH A. GONZALEZ
                                               Trial Attorney
                                By:

                                               */s/ Brian J. Boyd*
                                               BRIAN J. BOYD
                                               Trial Attorney
                                               U.S. Department of Justice, Civil Division

18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Torts Branch, Constitutional Torts Section
P.O. Box 7146, Ben Franklin Station
Washington, DC 20044
(202) 616-4142
Email: Brian.j.boyd@usdoj.gov

19