ROBERT PATRICK STICHT (SBN 138586)
JUDICIAL WATCH, INC.
425 Third Street SW, Suite 800
Washington, D.C. 20024
Telephone: (202) 646-5172
Fax: (202) 646-5199
Email: rsticht@judicialwatch.org

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

ESTATE OF ASHLI BABBITT and AARON BABBITT, individually and on behalf of the ESTATE OF ASHLI BABBITT,

Plaintiffs,

v.

UNITED STATES OF AMERICA,

Defendant.

Case No. 3:24-cv-00033-BAS-DDL

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE**

Hearing Date: April 8, 2024

Honorable Cynthia A. Bashant
Courtroom 12B (12th Floor)

Plaintiffs Estate of Ashli Babbitt and Aaron Babbitt, individually and on behalf of the Estate of Ashli Babbitt, by and through counsel, respectfully submit their opposition to Defendant United States of America's motion to transfer venue.

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ 3

ARGUMENT ........ 6

I. VENUE PROPERLY LIES IN THIS DISTRICT ........ 6

II. TRANSFER TO THE DISTRICT OF COLUMBIA IS NOT APPROPRIATE ........ 6

  A. Legal Standard ........ 6

  B. This Action Could Have Been Brought In The District of Columbia ........ 8

  C. The District of Columbia Is Neither More Convenient Nor In the Interest of Justice ........ 8

    1. Plaintiffs' Choice of Forum ........ 8

    2. Convenience of Parties ........ 9

    3. Convenience of Witnesses ........ 10

    4. Ease of Access to Evidence ........ 13

    5. Each Forum's Familiarity With Applicable Law ........ 14

    6. Feasibility of Consolidation With Other Cases ........ 15

    7. Forum's Local Interest In The Controversy ........ 16

    8. Relative Court Congestion and Time of Trial In Each Forum ........ 19

CONCLUSION ........ 20

## TABLE OF AUTHORITIES

**Cases**

*Adams v. Bell*,
711 F.2d 161 (D.C. Cir. 1983) .......... 7,10

*Aylward v. SelectHealth, Inc.*,
2018 U.S. Dist. LEXIS 125497 (S.D. CA 2018) .......... 15

*Caruth v. International Psychoanalytical Ass'n*,
59 F.3d 126 (9th Cir. 1995) .......... 10,13

*CE Distrib., LLC v. New Sensor Corp.*,
380 F.3d 1107 (9th Cir. 2004) .......... 10

*Cooper v. Tokyo Elec. Power Co. Holdings*,
960 F.3d 549 (9th Cir. 2020) .......... 15

*Dale v. United States*,
846 F. Supp. 2d 1256 (M.D. Fla. 2012) .......... 9

*Decker Coal Co. v. Commonwealth Edison Co.*,
805 F.2d 834 (9th Cir. 1986) .......... 6,7,8

*District of Columbia v. Chinn*,
839 A.2d 701 (D.C. 2003) .......... 14

*Estate of Ashli Babbitt v. U.S. Department of Justice*,
Case No. 3:24-cv-00119-LL-JLB .......... 15

*Gherebi v. Bush*,
352 F.3d 1278, 1303 (9th Cir. 2003),
*vacated on other grounds* 2004 U.S. LEXIS 4767 (2004) .......... 7,13

*Graham v. Connor*,
490 U.S. 386 (1989) .......... 14

*Greenley v. Kochava, Inc.*,
2023 U.S. Dist. LEXIS 130552 (S.D.CA 2021) (Bashant, J.) .......... 7,8

*Grubs v. Consolidated Freightways, Inc.*,

189 F. Supp. 404 (D. MT. 1960) ........................................................... 11,12,14

*Hayes v. County of San Diego*,
57 Cal. 4th 622 (2013) ........................................................................ 14

*Hinestroza v. United States*,
2023 U.S. Dist. LEXIS 160738 (C.D. CA 2023) ........................................ 9

*Hoffman v. Blaski*,
363 U.S. 335 (1960) ........................................................................... 7

*Hooper v. Lockheed Martin Corp.*,
688 F.3d 1037, 1045-46 (9th Cir. 2012) .................................................. 15

*Jernigan v. Cal. Dep't of Corr. & Rehab.*,
2011 U.S. Dist. LEXIS 9675 (N.D. CA 2011) ........................................... 10

*Jones v. GNC Franchising, Inc.*,
211 F.3d 495 (9th Cir. 2000) ................................................................. 8

*Mabvax Therapeutic Holdings, Inc. v. LLP*,
2019 U.S. Dist. LEXIS 243196 (S.D. CA 2019) .................................... 11,13,15,16

*Martin v. Glob. Tel*Link Corp.*,
2015 U.S. Dist. LEXIS 59474 (N.D. Cal. 2015) ......................................... 8

*Menken v. Emm*,
503 F.3d 1050 (9th Cir. 2007) ............................................................... 10,16

*Piper Aircraft v. Reyno*,
454 U.S. 235 (1981) ........................................................................... 6

*Schleier v. Kaiser Foundation Health Plan of Mid-Atlantic States, Inc.*,
876 F.2d 174 (D.C. Cir. 1989) ............................................................... 15

*Stewart Org., Inc. v. Ricoh Corp.*,
487 U.S. 22 (1988) ............................................................................. 7,8

*STX, Inc. v. Trik Stik, Inc.*,
708 F. Supp. 1551 (N.D. Cal. 1988) ........................................................ 11

*Tennessee v. Garner*,
471 U.S. 1 (1985) .......................................................................... 14

*United States ex rel. Touhy v. Ragen*,
340 U.S. 462 (1951) ...................................................................... 11

*Van Dusen v. Barrack*,
376 U.S. 612, 616 (1964) ...................................................................6,8,13,15

*Wagner Aeronautical, Inc. v. Dotzenroth*,
2022 U.S. Dist. LEXIS 242606 (S.D. CA 2022) ........................................ 6,8,16

**Statutes**

28 U.S.C.

§ 1391(e)(1)(C) ........................................................................ 6
§ 1402(b) ................................................................................ 6,9
§ 1404(a) ................................................................................ 6,7,8,10

**Regulations**

28 C.F.R.

§§ 16.21-16.29 ........................................................................ 11

**Miscellaneous**

Three Years Since the Jan. 6 Attack on the Capitol (Jan. 6, 2024),
https://www.justice.gov/usao-dc/36-months-jan-6-attack-capitol-0 ................ 20

## ARGUMENT

### I. VENUE PROPERLY LIES IN THIS DISTRICT.

Venue in this action is proper in this district. *See* 28 U.S.C. §§ 1391(e)(1)(C) (civil action against the United States may be brought in any judicial district in which the plaintiff resides); 1402(b) (civil action on a tort claim against the United States under section 1346(b) may be prosecuted in the judicial district where the plaintiff resides). Defendant does not dispute venue lies in this district. *See* Memorandum of Points and Authorities In Support of Defendant United States of America's Motion to Transfer Venue ("Def's Motion"), at 1 ("The FTCA's venue provision, 28 U.S.C. § 1402(b) . . . allows for venue where the plaintiff resides."); *id*. ("venue is permissible in this district").

### II. TRANSFER TO THE DISTRICT OF COLUMBIA IS NOT APPROPRIATE.

#### A. Legal Standard.

Even when venue is proper, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought[.]" 28 U.S.C. § 1404(a). The purpose of section 1404(a) is to prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense. *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal citations and quotation marks omitted). "The party requesting the transfer bears the burden of showing that the balance of conveniences weighs heavily in favor of the transfer in order to overcome the strong presumption in favor of the plaintiff's choice of forum." *Wagner Aeronautical, Inc. v. Dotzenroth*, 2022 U.S. Dist. LEXIS 242606, *33 (S.D. CA 2022) *citing Piper Aircraft v. Reyno*, 454 U.S. 235, 255-56 (1981) and *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) ("The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum.").

Federal venue provisions reflect the long-recognized "conventional understanding that procedural rules ought to treat the government like any other litigant." *Adams v. Bell*, 711 F.2d 161, 192 (D.C. Cir. 1983) (dissenting opinion). "A court cannot transfer simply because the defendant would prefer another forum or because the transaction involved arose elsewhere." *Id*. at 193, n.115. "[T]he district court is not required to 'determine the best venue,' and transfer under § 1404(a) 'should not be freely granted.'" *Gherebi v. Bush*, 352 F.3d 1278, 1303 (9th Cir. 2003), *vacated on other grounds* 2004 U.S. LEXIS 4767 (2004) (citations omitted.) "Section 1404(a) provides for transfer to a more convenient forum, 'not to a forum likely to prove equally convenient or inconvenient,' and a 'transfer should not be granted if the effect is simply to shift the inconvenience to the party resisting the transfer.'" *Id*. "Further, there is a strong 'presumption in favor of plaintiff's choice of forums.'" *Id*. "This presumption must be taken into account when deciding whether the convenience of the *parties* – rather than the convenience of *respondent* – requires a transfer." *Id*. (emphasis original.)

"District courts employ a two-step framework to resolve a transfer motion." *Greenley v. Kochava, Inc.*, 2023 U.S. Dist. LEXIS 130552, *17 (S.D.CA 2021) (Bashant, J.). "A court first asks whether the plaintiff could have originally brought the action in the proposed transferee forum." *Id. citing Hoffman v. Blaski*, 363 U.S. 335, 344 (1960). "If the action could have been brought there, then the court weighs 'a number of case-specific factors' based in convenience and fairness." *Id. citing Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29-30 (1988).

Section 1404 expressly identifies the "convenience of parties and witnesses" and the "interest of justice." 28 U.S.C. § 1404(a). In addition, "courts deem '*forum non conveniens* considerations [to be] helpful in deciding a § 1404 transfer motion.'" *Greenley*, 2023 U.S. Dist. LEXIS 130552 at **19-20, *quoting Decker Coal Co.*, 805 F.2d 834, 843 (9th Cir. 1986). In the Ninth Circuit, courts generally weigh several public and private factors when determining whether transfer is appropriate,

including: (1) the plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses and availability of compulsory process, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation of other claims, (7) any local interest in the controversy, and (8) relative court congestion and time to trial in each forum. *See Decker Coal Co.*, 805 F.2d at 843; *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000); *Greenley*, 2023 U.S. Dist. LEXIS 130552 at *20. "This list is non-exclusive, and courts may consider other factors, or only those factors which are pertinent to the case at hand." *Martin v. Glob. Tel*Link Corp.*, 2015 U.S. Dist. LEXIS 59474, *5 (N.D. Cal. 2015).

**B. <u>This Action Could Have Been Brought In The District of Columbia</u>.**

The party moving to transfer under section 1404(a) must show the transferee court possesses subject matter jurisdiction, proper venue, and personal jurisdiction over the parties. *Greenley*, 2023 U.S. Dist. LEXIS 130552 at *20; *Wagner Aeronautical, Inc.*, 2022 U.S. Dist. LEXIS 242606 at *33. Plaintiffs do not dispute this action "might have been brought" in the District of Columbia.

**C. <u>The District of Columbia Is Neither More Convenient Nor In The Interest of Justice</u>.**

Even though Plaintiffs' action could have been filed in the District of Columbia, Defendant has not made a clearly strong showing of inconvenience nor demonstrated a transfer serves the interest of justice.

**1. <u>Plaintiffs' Choice of Forum</u>.**

"Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc.*, 487 U.S. at 29 *quoting Van Dusen v. Barrack*, 376 U.S. at 622; *see also Greenley*, 2023 U.S. Dist. LEXIS 130552 at *17. A motion to transfer under section 1404(a) thus calls on the district court to weigh in the balance a number of case-specific factors. Plaintiffs'

choice of venue pursuant to a special venue statute is a significant factor in the calculus.

Defendant mistakenly argues that Plaintiffs' choice of forum is entitled to minimal consideration. *See* Def's Motion at 6. Defendant does not dispute that a plaintiff's home forum is entitled to considerable deference. Also, *Hinestroza v. United States*, 2023 U.S. Dist. LEXIS 160738 (C.D. CA 2023), the only FTCA case cited by Defendant, noted that "a plaintiff's choice of venue pursuant to a special venue statute may be entitled to even greater deference." *Id*. at ** 6-7, *citing* 28 U.S.C. § 1402(b) (permitting plaintiffs to sue "in the judicial district where the plaintiff resides"), and *Dale v. United States*, 846 F. Supp. 2d 1256, 1258 (M.D. Fla. 2012) (finding that the obvious purpose behind the broad venue provision of the FTCA is to "protect the plaintiff from abuse by the United States forcing the plaintiff to litigate the controversy in an inconvenient forum"). Thus, Plaintiffs' choice of the home forum is entitled to considerable weight and not to be disturbed absent a particularly strong showing of inconvenience.

**2. Convenience of Parties.**

Defendant argues the convenience of the parties favors the District of Columbia because both parties' counsel are based in Washington, D.C. *See* Def's Motion at 12-13. Actually, the undersigned Plaintiffs' trial counsel is based in Los Angeles. Although Judicial Watch, Inc. is headquartered in D.C., it also maintains an office in San Marino, California. Regarding Defendant, it is standard practice in most FTCA actions brought in forums outside Washington D.C. for the Department of Justice to assign active litigation to the U.S. Attorney's Office (USAO) in the forum district, with supervision and guidance from the Civil Division, Torts Branch, at the Department of Justice (DOJ) in the District of Columbia. In this case, the DOJ chose to assign trial attorneys from the Civil Division in the District of Columbia rather than have the USAO in San Diego, where venue is proper, handle the matter. In this context, it is misleading for the Defendant to deviate from standard practice, select

trial attorneys based in the District of Columbia, and then argue Defendant's counsel are based there in support of a motion to transfer venue there.

Plaintiffs' choice of this district court evidences the convenience of the home forum for them, and Defendant's physical presence here is likewise evidence of its convenience for the government. *See Adams*, 711 F.2d at 193, n.115; *Jernigan v. Cal. Dep't of Corr. & Rehab.*, 2011 U.S. Dist. LEXIS 9675 *8 (N.D. CA 2011) ("While it may be that CDCR would prefer to litigate in the Eastern District, section 1404(a) is not a mechanism for simply shifting burdens from a defendant to a plaintiff.").

**3. Convenience of Witnesses.**

The location of the evidence and witnesses no longer weighs heavily in light of modern advances in communication and transportation. *See Caruth v. International Psychoanalytical Ass'n*, 59 F.3d 126, 129 (9th Cir. 1995) (discussing reasonableness factors in the jurisdiction context); *Menken v. Emm*, 503 F.3d 1050, 1063 (9th Cir. 2007) ("the seven reasonableness factors [in the jurisdiction context] parallel the private and public interests that a district court must weigh when considering a claim of *forum non conveniens*."); *CE Distrib., LLC v. New Sensor Corp.*, 380 F.3d 1107, 1112 (9th Cir. 2004) ("Nevertheless, with the advances in transportation and telecommunications and the increasing interstate practice of law, any burden is substantially less than in days past.").

Defendant unpersuasively argues that convenience of potential witnesses strongly favors the District of Columbia. *See* Def's Motion at 7. Defendant urges consideration of both the nature and quality of nine potential non-party witnesses and the burden that travel places on these witnesses. *Id*. The travel factor is mitigated by the availability of electronic means of discovery and depositions. Plaintiffs chose their home forum knowing some of these potential witnesses are located in the District of Columbia area and some are located elsewhere, and are therefore willing to travel if needed to conduct depositions or live interviews of witnesses as needed.

Defendant already has acknowledged it has a trial team in the District of Columbia for representation at witness depositions there and elsewhere in the country.

Defendant also unduly emphasizes the travel burden should this case proceed to trial. *Id*. at 11. The trial of this FOIA action would be a bench trial in which the Court has considerably greater flexibility and discretion over the sequence of testimony and other matters than a typical jury trial.

Defendant does not address the true nature and quality of the nine identified non-party witnesses beyond simply noting their possible roles. *Id*. at 8-9. Accordingly, it's not clear what Defendant intends to prove by the witnesses in its defense of the unlawful killing of Ashli Babbitt by a Capitol Police officer. Similarly, it cannot be determined from the information provided whether any of these witnesses will be "key witnesses" for Defendant or whether it will be necessary for an adequate defense to have any of them personally present for a trial. *See Grubs v. Consolidated Freightways, Inc.*, 189 F. Supp. 404, 410 (D. MT. 1960).

Non-party witnesses Zachary Alam and Chad Jones were both recently convicted on charges stemming from their conduct on January 6, 2021, and are awaiting sentencing. Their locations are therefore subject to change most likely to a location within the Bureau of Prisons. This factor does not favor transfer.

Former Capitol Police Officer Christopher Lanciano is identified as a non-party witness, *id*. at 8, but as Defendant's former employee his testimony is subject to a degree to the control of Defendant and therefore should be considered a party witness whom Defendant may compel to testify. *See United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951); *see also* 28 C.F.R. 16.21-16.29 (DOJ regulations); *Mabvax Therapeutic Holdings, Inc. v. LLP*, 2019 U.S. Dist. LEXIS 243196, *71 (S.D. CA 2019), *citing STX, Inc. v. Trik Stik, Inc.*, 708 F. Supp. 1551, 1556 (N.D. Cal. 1988) ("defendant's claim that defense witnesses could not be expected to appear at trial must be discounted since at least four of the six witnesses are defendant's employees whom defendant can compel to testify.").

Defendant ventures beyond the four corners of the complaint in generally identifying D.C. Metropolitan Police investigators and crime scene personnel, Fire and Emergency personnel, and MedStar Washington Hospital Center medical personnel, as well as the Medical Examiner. *See* Def's Motion at 8-9. Defendant has not identified any physician who treated Ashli Babbitt, who was shot at 2:44 p.m., transported at 3:00 p.m., and simply pronounced dead upon arrival at the hospital at 3:15 p.m.. The crucial issues for determination in this case do not evolve from the degree and character of an injury sustained at the hands of a treating physician. *See* Compl. ¶ 9 ("The autopsy report identified the cause of death as a 'gunshot wound to left anterior shoulder' with an onset interval of 'minutes.') Thus, the residence and availability of a treating physician is not a factor to consider, nor would it be entitled to any weight. *See Grubs*, 189 F. Supp. at 410 ("The residence of the attending physicians is not, however, in itself controlling, and should simply be considered with other relevant factors."). The convenience of an expert witness, such as a medical examiner, is entitled to little consideration. *Id*.

Defendant's non-party witness list does not include Dr. Austin Harris, of Grenada Hills, California, a California physician who attempted to give medical aid to Ashli Babbitt immediately after the shooting, but was forced away from the scene by Capitol Police. Defendant also does not identify or list these Capitol Police officers as party witnesses. Plaintiffs anticipate Dr. Harris would be willing to testify as their witness if called at trial.

Defendant's list also omits as many as thirty or more non-party witnesses at the scene of the shooting, many of whom videotaped the shooting and demonstration at the location of the shooting. *See* Compl. ¶ 65 ("Within two minutes, approximately thirty demonstrators filled the narrow hallway.") These witnesses were visiting the Capitol from states all over the country, including California, Utah, Texas, Florida, and Pennsylvania to name a few. Similarly, Defendant's list omits members of Congress at the location of the shooting who reside in states outside the District of

Columbia, including Oklahoma and Texas just to name two. *Id.* ¶ 49(a) ("six members who chose not to evacuate"); *ibid*. ("twelve to fifteen additional House members"). Contrary to Defendant's assertion, this factor does not strongly favor transfer. *See Mabvax Therapeutic Holdings, Inc*, 2019 U.S. Dist. LEXIS 243196 at *63 ("Given that witnesses and evidence relating to this matter are likely located in California, New York, New Jersey, and Florida, this factor does not weigh in favor of either party."); *Gherebi*, 352 F.3d 1278, 1303 (9th Cir. 2003), *vacated on other grounds* 2004 U.S. LEXIS 4767 (2004), *citing Barrack*, 376 U.S. at 646 ("[T]ransfer should not be granted if the effect is simply to shift the inconvenience to the party resisting the transfer.").

Plaintiffs contend that most if not all of the witnesses would provide testimony favorable to Ashli Babbitt regarding her actions on January 6, 2021, including whether she was armed when shot, whether she assaulted any officers or government officials or was otherwise violent, and whether she posed a threat of death or serious bodily injury to anybody on that day. If any party would be adversely affected by having these witnesses located in a distant forum, it is Plaintiffs, not Defendant, and Plaintiffs oppose a change of venue.

**4. <u>Ease of Access to Evidence</u>.**

As discussed above, the location of the evidence and witnesses no longer weighs heavily in light of modern advances in communication and transportation. *See Caruth*, 59 F.3d at 129.

Defendant argues the District of Columbia provides the parties with relatively greater ease of access to evidence because the documentary and physical evidence are located there. *See* Def's Motion at 13-14. Here, again, if any party would be adversely affected by this factor it would be Plaintiffs, not Defendant, whose trial attorneys are located in D.C., and Plaintiffs oppose a change of venue.

Many of the documents identified in the motion – e.g., documents pertaining to the shooting itself and the ensuing investigation, *id*. at 14 – already are publicly

available on the internet. Most of the evidence in this matter consists of reports, documents, and video recordings of the actual shooting and the demonstration in the area of the demonstration that preceded the shooting. Medical documents describing the injury and cause and manner of death are also contained in reports. All such reports, documents, and videos are easily available electronically. Defendant fails to demonstrate why their location is still a relevant factor in this case.

While it is true that the scene of the shooting, the doors at the east end of the Speaker's Lobby inside the Capitol, is physically located in D.C., if it ever becomes necessary to physically inspect the scene, Plaintiffs and their counsel are willing to travel to D.C. Defendant already has acknowledged it has a trial team in D.C. for this purpose so it would not be a travel burden or expense. In this case, it is unlikely that the trier of fact, the Court, would need to physically inspect the scene of the shooting, and Defendant does not argue otherwise.

**5. <u>Each Forum's Familiarity With Applicable Law</u>.**

Defendant generally argues that the District Court for the District of Columbia is more familiar with D.C. substantive law and therefore this factor favors a change of venue. *See* Def's Motion at 14-15. "While this is a factor to be considered, it is by no means controlling, and is of less significance in cases of this nature than where a question of conflict of laws is more likely to be presented." *Grubs*, 189 F. Supp. at 410.

In this police shooting case, the substantive law applicable to the intentional torts alleged in the complaint originates with the U.S. Supreme Court, with which all district courts are familiar and can readily apply. *See* Compl. ¶ 22 *citing Graham v. Connor*, 490 U.S. 386 (1989) and *Tennessee v. Garner*, 471 U.S. 1 (1985). Also, the substantive law pertaining to the alleged negligent use of deadly force in this case is essentially the same in both the District of Columbia and California. *See e.g., District of Columbia v. Chinn*, 839 A.2d 701 (D.C. 2003); *Hayes v. County of San Diego*, 57 Cal. 4th 622 (2013). The applicable procedural law in this FTCA action proceeds

based on federal statutory law, not District of Columbia law. Because this Court can without undue effort apply District of Columbia law where necessary as well as federal law, this factor does not favor a venue change. *See Mabvax Therapeutic Holdings, Inc.*, 2019 U.S. Dist. LEXIS 243196 at *63 ("Defendants fail to demonstrate that this Court would face difficulty in applying New York law to the facts of this case."); *Aylward v. SelectHealth, Inc.*, 2018 U.S. Dist. LEXIS 125497, *38 (S.D. CA 2018) ("Defendants fail to demonstrate that this Court would face difficulty in applying Utah or Idaho law to the facts of this case."); *cf. Cooper v. Tokyo Elec. Power Co. Holdings*, 960 F.3d 549, 567 (9th Cir. 2020) … ("if the suit proceeds in the Southern District of California, the district court will have to inform itself at every turn of the nuances of Japanese civil law.").

The interests of justice would not be served by a transfer of venue because District of Columbia law would continue to apply even if the case were moved there. *See Barrack*, 376 U.S. at 639; *Schleier v. Kaiser Foundation Health Plan of Mid-Atlantic States, Inc.*, 876 F.2d 174, 177 (D.C. Cir. 1989) ("Neither would the interests of justice be served, as District of Columbia law would continue to apply even if the case were moved to Virginia."); *Hooper v. Lockheed Martin Corp.*, 688 F.3d 1037, 1045-46 (9th Cir. 2012).

**6. <u>Feasibility of Consolidation With Other Cases</u>.**

Defendant states there are no actions to consolidate in the District of Columbia. Def's Motion at 18. Thus, this factor does not favor transfer. There is, however, a related action in this district. On January 17, 2024, Plaintiffs filed a FOIA/Privacy Act complaint against the U.S. Department of Justice in this Court. *See Estate of Ashli Babbitt v. U.S. Department of Justice*, Case No. 3:24-cv-00119-LL-JLB. The complaint seeks documents and other information pertaining to the shooting of Ashli Babbitt on January 6, 2021. The Justice Department has made no effort to transfer venue in the related matter, but has instead answered the complaint, and it would promote efficiency and the ends of justice for both matters to remain in this district.

Another related matter is the probate and administration of Ashli Babbitt's estate, which has been pending in the Superior Court of California, County of San Diego, for nearly three years. *See* Compl. ¶ 3. The presence of both cases favors venue in this district.

**7. <u>Forum's Local Interest in the Controversy</u>.**

Defendant has not demonstrated that the burden of litigating in this district outweighs the burden on Plaintiffs to litigate away from their home forum, particularly in light of Defendant's contacts with California related to these claims – an employee of Defendant United States shot and killed a resident of San Diego County. *See Wagner Aeronautical, Inc.*, 2022 U.S. Dist. LEXIS 242606 (weighing the corresponding burdens on defendant and plaintiff in the context of jurisdiction); *Menken*, 503 F.3d at 1063 ("the seven reasonableness factors [in the jurisdiction context] parallel the private and public interests that a district court must weigh when considering a claim of *forum non conveniens*."). "California has a strong interest in providing redress for its injured citizens," and "an interest in the adjudication of a case . . . that harmed a California business." *Mabvax Therapeutic Holdings, Inc.*, 2019 U.S. Dist. LEXIS 243196 at *63.

Air Force veteran Ashli Babbitt, age 35, was a resident of Ocean Beach. See Compl. ¶¶ 3, 8. Ashli was born and raised in Lakeside, California, educated in the local school district, and then volunteered to serve in the United States military. *See* Declaration of Michelle A. Witthoeft ("Witthoeft Decl."), ¶ 2.

Ashli enlisted in the U.S. Air Force after graduating high school at age seventeen, completed basic training at Lackland Air Force Base, San Antonio, Texas, and received her first assignment at Eielson Air Force Base near Fairbanks, Alaska. *Id.* ¶¶ 3, 6. Ashli served as a military police officer and guarded high-value military assets and troops and high-level national security officials and dignitaries in the Middle East as well as captured terrorists and even nuclear weapons. *Id.* ¶ 5. Ashli also conducted Presidential Security. *Id.* ¶ 6. Ashli deployed down range on at least

four separate occasions in support of Operation Iraqi Freedom and Operation Enduring Freedom maintaining security for her area of responsibility and also deployed to the United Arab Emirates and Korea. *Id.* ¶ 6. Ashli received multiple medals and awards as well as two honorable discharges from the Air Force and the Air National Guard. *Id.* ¶ 4, 8.

Although Ashli loved serving her country in the military, she was most happy to return to San Diego, live three blocks from the water in Ocean Beach where she enjoyed surfing as a kid, and be near her family. *Id.* ¶ 10. Ashli's strong connection and ties to San Diego County also convinced her then boyfriend, Aaron Babbitt, who was not from California, to move to San Diego. *Id.* ¶ 11. Together, Ashli and Aaron, a U.S. Marine Corps veteran, purchased a 37-year-old pool business known as Fowler's Pool Service in Spring Valley, California. *Id*. Ashli and Aaron were married two years later in San Diego. *Id*.

Ashli's pool service provided employment in the local community for Ashli, Aaron, and four existing employees, as well as taxes, spending on local products and services, and other benefits to the community. It also serviced approximately 500 accounts in greater San Diego County from the border to Jamul, Poway, and La Jolla. *See* Declaration of Aaron Babbitt ("Babbitt Decl."), ¶ 2. The business did not survive Ashli's killing on January 6, 2021. *Id.* ¶ 4. Approximately 50 customers were immediately lost who were politically-motivated to sever ties. *Id*. The business was also attacked massively and viciously on social media. *Id*. Its Yelp account was flooded with fake reviews that Yelp refused to take down, and Facebook and Instagram accounts also had to be shut down. *Id*. In short, the business good will that had been established in San Diego County over forty years was destroyed. *Id*. Aaron Babbitt also received personal death threats locally. *Id*.

Ashli's remains were cremated and returned to her husband and family in San Diego. They said goodbye to Ashli and released her ashes to the wind over the Pacific ocean waters near her home in Ocean Beach. *Id*. ¶ 5.

Ashli Babbitt had no ties to the District of Columbia. *Id*. ¶ 6; Witthoeft Decl. ¶ 13. Therein lies the problem with Defendant's position that the District of Columbia has a stronger local interest in this action. Defendant nowhere argues the District of Columbia has *any* interest in the wrongful death of Ashli Babbitt. The entire focus of its motion is instead placed on "the Capitol Police and other Washington, D.C.-based first responders," (Def's Mot. at 15), "how the Capitol Police secures the Capitol, protects Members of Congress and the surrounding Capitol grounds, and responds to future threats," (*Id*. at 16), the "profound and deep impact on . . . National Guardsman, their families, and the D.C. community," (*Id*.), "80 Capitol Police and 60 Metropolitan Police Department officers injured," (*Id*. at 16-17), and "the deaths of Capitol Police Officers Brian Sicknick and Howard Liebengood, and Metropolitan Police Officer Jeffrey Smith," (*Id*. at 17). The Court should not allow itself to be distracted by these matters and let Congress and other agencies deal with the events of January 6, 2021 on the whole. The paramount issue in this case is the wrongful death of Ashli Babbitt, the only person shot with a firearm and killed on January 6, 2021.

Defendant's position illustrates and underscores the prejudice and injustice that Plaintiffs would face if venue were transferred to the District of Columbia. Defendant mentions 80 Capitol Police officers and 60 Metropolitan Police officers that were injured and connects the deaths of three officers to the events on that day, thus connecting Ashli Babbitt to these deaths and other injuries, as if she caused them. The request for a change in venue is clearly influenced by Defendant's strongest motivation for changing venue, which is to select the forum where it feels it would receive a favorable process and outcome based on adversity against January 6 participants. By its motion, Defendant hopes to unfairly and unjustly connect Ashli Babbitt to violence, injuries, and deaths for which she is blameless and connect her by association to thousands of individuals convicted of misdemeanors and felonies

for which she was never charged and is unable to present a defense due to the lawless actions of one of Defendant's employees in shooting and killing her.

This Court should not let that happen. This Court has the stronger interest in maintaining a venue in which Plaintiffs will receive a fair hearing, and in which Plaintiffs believe they will have the better chance of fairly presenting their wrongful death case to the Court. The public also has a strong interest in the fair administration of justice in this case, which this Court can and should protect.

It's no secret that the District of Columbia is a hostile forum for January 6 defendants. It's also prejudicially biased against Ashli Babbitt. For example, during a recent sentencing hearing in the District of Columbia in *United States v. Daniel Goodwyn*, Docket No. 1:21-cr-00153-RBW, U.S. District Judge Reggie B. Walton made the following statement to the defendant and his counsel regarding the shooting of Ashli Babbitt:

> THE COURT: You should not have been – you cannot convince me that somehow what she was doing was somehow justified and the police did not have a justification for taking the actions that they took. You can't convince me of that.

*See* Declaration of Robert Patrick Sticht, ¶ 2, Exh. 1 (Transcript of Sentencing, June 5, 2023), at 63. Judge Walton's statement evidences he has already predetermined a crucial issue in this case – whether Ashli Babbitt's killing was justified. Judge Walton made other biased comments on the record, including, "Well, she shouldn't have been coming through the window," and "this man who was protecting the Capitol ends up being called a thug . . . that is just mind boggling." *Id*. Unfortunately, Judge Walton is speaking what many others are at least thinking behind the bench in the District of Columbia. This Court is the only venue which offers Plaintiffs a chance of receiving a fair trial.

**8. <u>Relative Court Congestion and Time of Trial in Each Forum</u>.**

Defendant asserts that this factor favors neither the District of Columbia nor this district. Def's Motion at 17. This Court should consider the fact that the District

of Columbia is burdened and congested with more than 1,265 January 6 cases. *See* Three Years Since the Jan. 6 Attack on the Capitol (USAO-DC, Jan. 6, 2024), https://www.justice.gov/usao-dc/36-months-jan-6-attack-capitol-0 (Jan. 6, 2024). This factor favors maintaining venue in this district.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's motion to transfer venue to the District of Columbia.

Dated: March 25, 2024

Respectfully submitted,

JUDICIAL WATCH, INC.

By: */s/ Robert Patrick Sticht.*
ROBERT PATRICK STICHT

Attorneys for Plaintiffs