UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

ESTATE OF ASHLI BABBITT and
AARON BABBITT, individually and on
behalf of the ESTATE OF ASHLI
BABBITT,

                Plaintiffs,         Case No. 1:24-cv-01701-ACR

v.

UNITED STATES OF AMERICA,

                                       **ORAL ARGUMENT REQUESTED**

                Defendant.
                                   /

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO RETRANSFER VENUE TO THE SOUTHERN DISTRICT OF CALIFORNIA**


Dated: August 23, 2024                                 Respectfully submitted,

                                                         JUDICIAL WATCH, INC.

                                  By:   */s/ Robert Patrick Sticht.*
                                              ROBERT PATRICK STICHT
                                              D.C. Bar No. 423395
                                              Judicial Watch, Inc.
                                              425 Third Street SW, Suite 800
                                              Washington, D.C. 20024
                                              (202) 646-5172
                                              rsticht@judicialwatch.org

                                              Attorney for Plaintiffs Estate of Ashli
                                              Babbitt and Aaron Babbitt

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES

ARGUMENT

I.      Standard of Review

II.     Legitimate, Nonfrivolous Grounds for Retransfer

III.    Conclusion

# TABLE OF AUTHORITIES

**Cases**

*Arizona v. California*,

460 U.S. 605 (1983)

*Bauman v. United States Dist. Ct.*,

557 F.2d 650 (9th Cir. 1977)

*Christianson v. Colt Indus. Operating Corp.*,

486 U.S. 800 (1988)

*Chrysler Credit Corp. v. Country Chrysler*,

928 F.2d 1509 (10th Cir. 1991)

*En Fuego Tobacco Shop LLC v. United States FDA*,

356 F.Supp.3d 1 (D.D.C. 2019)

*Fine v. McGuire*,

433 F.2d 499 (D.C. Cir. 1970)

*FMC Corp. v. U.S. E.P.A.*,

557 F.Supp. 2d 105 (D.D.C. 2008)

*FMC Corp. v. U.S. E.P.A.*,

case number 1:07-cv-2277-RMU

*Hill v. Henderson*,

195 F.3d 671 (D.C. Cir. 1999)

*Hoffman v. Blaski*,

363 U.S. 335 (1960)

*Herman v. Cataphora Inc.*,

2013 U.S. Dist. LEXIS 9862 (N.D. CA 2013)

*In re Briscoe*,

976 F.2d 1425 (D.C. Cir. 1992)

*In re Nine Mile Ltd.*,

692 F.2d 56 (8th Cir. 1982)

*In re Nine Mile Ltd.*,

673 F.2d 242 (8th Cir. 1982)

*Lou v. Belzberg*,

834 F.2d 730, 733 (9th Cir. 1987)

*NBS Imaging Systems, Inc. v. United States Dist. Ct. E. Dist.*,

841 F.2d 297 (9th Cir. 1988)

*Roofing & Sheet Metal Services, Inc. v. La Quinta Motor Inns, Inc.*,

689 F.2d 982 (11th Cir. 1982)

*Scott v. Harris*,

550 U.S. 372 (2007)

*Starnes v. McGuire*,

512 F.2d 918 (D.C. Cir. 1974)

*Town of North Bonneville, Washington v. United States Dist. Ct.*,

732 F.2d 747 (9th Cir. 1984)

*United States v. Petty*,

2022 U.S. Dist. LEXIS 90428 (W.D.N.Y. 2022)

*Varsic v. United States Dist. Ct. for Cent. Dist.*,

607 F.2d 245 (9th Cir. 1979)

*White v. Murtha*,

377 F.2d 428 (5th Cir. 1967)

**Other Authorities**

Local Rules, U.S. Dist. Ct. S. Dist. CA.

## ARGUMENT

I.  **Standard of Review.**

The government's position on the standard of review is untenable in all its theses. It begins with the false premise that the California transfer decision is reviewable in the D.C. Circuit. Opp. Br. at 1 (equating Ashli's assertion that, absent retransfer, she will be denied the opportunity to secure adequate and orderly review of "the transfer *decision*" in the Ninth Circuit with the *Hill* court's statement that a party transferred against its will can secure "partial review of the *transfer*" in the D.C. Circuit by filing a motion to retransfer.). That premise is false because the *Hill* court said it was not true in the D.C. Circuit and most circuits: "Once a case is transferred most circuits have found that they lack jurisdiction to review a transfer *order* from a court outside of their circuit upon final judgment." *Hill v. Henderson*, 195 F.3d 671, 676-77 (D.C. Cir. 1999) (emphasis added), *citing In re Briscoe*, 976 F.2d 1425, 1426 (D.C. Cir. 1992) (noting that a transfer order "therefore may effectively become immune from appellate scrutiny"); *see also Posnanski v. Gibney*, 421 F.3d 977, 980 (9th Cir. 2005) ("We know of no principle in American law that permits a circuit court of appeals to review, as such, a transfer order issued by a district court in another circuit. Such transfer orders, as we now hold, are reviewable only in the circuit of the transferor district court."). Since the D.C. Circuit lacks jurisdiction to review the California district court's transfer order upon final judgment, it generally lacks jurisdiction to review that order on an interlocutory basis, for example, on a petition for mandamus from a decision denying a motion to retransfer.[1]

---

[1] An exception to this rule, which is not implicated here, arises when the transferor court lacks the power to transfer a case. Jurisdiction in that instance does not piggyback the transfer – *i.e.*, the transferor circuit still has power in mandamus to vacate the transfer order to protect its appellate jurisdiction while the transferee circuit also has power in mandamus to determine its (lack of) jurisdiction and to order retransfer. *See Hoffman v. Blaski*, 363 U.S. 335, 340 n.9

The government's next thesis – that "[a] party seeking retransfer must show that the transfer order is 'clearly erroneous and would work a manifest injustice'," Opp. Br. at 1, 4 – likewise is untenable. The *Hill* court made two references to clear error or manifest injustice. In the first it said, "at the time of a motion to retransfer the transfer order would be law of the case binding the second district court (in the absence of clear error or manifest injustice, *see Chrysler Credit Corp. v. Country Chrysler*, 928 F.2d 1509, 1518 (10th Cir. 1991))[.]" 195 F.3d at 677. In the second it said, "a decision of a court of coordinate status is entitled to be considered 'law of the case.' *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817, 100 L. Ed. 2d 811, 108 S. Ct. 2166 (1988) (stating that courts should be loathe to disturb the decision of a coordinate court unless the initial decision was "clearly erroneous and would work a manifest injustice")." *Id*. at 678. Neither reference is remarkable or even relevant here as defining a standard of review on a motion to retransfer.

"As most commonly defined, the [law of the case] doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issue in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983). Under the doctrine, "it is not improper for a court to depart from a prior holding if convinced that it is clearly erroneous and would work a manifest injustice." *Id*. at n.8. But the doctrine also is not an inexorable command when "the evidence on a subsequent trial was substantially different," or

---

(1960), *cited and quoted in Hill*, 195 F.2d at 677; *In re Briscoe*, 976 F.2d 1425, 1427 (D.C. Cir. 1992) ("When there is a substantial issue whether the district court had 'power to order the transfer,' *Starnes*, 512 F.2d at 924 n.6, we will not consider the clerk's compliance with the order as destroying our jurisdiction."); *Starnes v. McGuire*, 512 F.2d 918, 924 n.6 (D.C. Cir. 1974) (stating, "it is well established that a transferee court cannot directly review the transfer order itself," and noting, "[w]here the transfer is to a forum that is not permitted under Section 1404(a) (*i.e.*, a forum where the action could not have been brought) it is possible to argue that the transferor court was without power to order the transfer and that therefore the transferor court never lost jurisdiction over the action.").

"controlling authority has since made a contrary decision of the law[.]" *White v. Murtha*, 377 F.2d 428, 431-32 (5th Cir. 1967); *accord Chrysler Credit Corp.*, 928 F.2d at 1516 (prior ruling of a transferor court may be "reconsidered when the governing law has been changed by the subsequent decision of a higher court, when new evidence becomes available, when a clear error has been committed or to prevent manifest injustice.") (citations omitted). There may also be other reasons for departing from a prior ruling in a case, but the point is that the government's selection of the first one – clearly erroneous and manifestly unjust – is arbitrary in the sense of being without precedent and limiting in a way that violates the Ninth Circuit's right to protect its appellate jurisdiction.

In *Hill*, the only case cited as supportive by the government, the D.C. Circuit was confronted with an appeal from a pre-transfer order that dismissed a claim before the remaining counts in the case were transferred to another circuit. 195 F.3d at 672. The sole issue was whether the dismissal was a final judgment reviewable in the D.C. Circuit simply because of the transfer order. *Id*. Hill did not seek review of the transfer order. *Id*. at 674. The court discussed the reviewability of inter-circuit transfer orders only to assure itself that their reviewability did not contradict the court's view that the reviewability of pre-transfer orders shifts to the transferee circuit. *Id*. at 676-677. One sentence makes that clear: "In short, transfer orders themselves have engendered a complex and somewhat conflicting pattern of reviewability that does not appear to contradict our – and the other circuits' – view that reviewability of pre-transfer orders shifts to the transferee circuit." *Id*. at 677. That was the textual context in which the court's first reference to the law of the case doctrine and the clearly erroneous, manifest injustice formulation appeared.

Now, in that context, examine what the *Hill* court actually said: "Although at the time of

a motion to retransfer the transfer order would be law of the case binding the second district court (in the absence of clear error or manifest injustice, *see Chrysler Credit Corp. v. Country Chrysler*, 928 F.2d 1509, 1518 (10th Cir. 1991)), the court of appeals in the transferee circuit would not be bound by the decision of either lower court." Obviously, the point of the parenthetical in the quoted passage was to acknowledge, correctly, that there are exceptions to the law of the case doctrine's limitation on a district court's discretion to depart from a transfer decision. The *Hill* court was not setting forth a separate standard for deciding a motion to retransfer, particularly one which is predicated on the transferor circuit's right to protect its appellate jurisdiction, as here. To be sure, in *Hill*, not only did Hill not seek review of the transfer order, but "the district court ha[d] not yet sent the files to the [transferee district court]." 195 F.3d at 678. Hence, there was no occasion for a motion to retransfer.

    The law of the case doctrine and the limiting formulation of clearly erroneous, manifest injustice resurfaced again at the close of the *Hill* court's opinion where it considered the possibility that the transferee circuit might take a view opposite of *Hill's* and hold that it has no jurisdiction over an appeal from a dismissal in the District of Columbia district court. *Id*. at 678. In response to the question whether that event would leave Hill bereft of appellate review on the dismissed count, the court said, "[w]e think not, because whatever the [transferee circuit's] analysis, a decision of a court of coordinate status is entitled to be considered 'law of the case.'" *Id. quoting Christianson*, 486 U.S. at 817, and parenthetically noting, "courts should be loathe to disturb the decision of a coordinate court unless the initial decision was 'clearly erroneous and would work a manifest injustice.'" *Id*. In other words, the *Hill* court's view that reviewability of pre-transfer orders shifts to the transferee circuit would be binding on the transferee circuit even if it holds a different view, subject to certain exceptions, including the limiting clearly erroneous,

manifest injustice formulation. Here, the point of the quoted passage in the parenthetical was to acknowledge exceptions to the law of the case doctrine's limitation on an appellate court's discretion to depart from a coordinate appellate court's decision. The *Hill* court was not setting forth a separate standard for deciding a motion to retransfer, particularly not one like the instant motion in this case, which is predicated on the transferor circuit's right to protect its appellate jurisdiction.

Another false and untenable thesis of the government is that Ashli is asking this Court to "depart[] from the law of the case established by the transfer order." Opp. Br. at 4. Quite to the contrary, the motion to retransfer respects the fact that the transfer order is the law of the case because it asks this Court to return the case file to the California district court in order to re-vest jurisdiction in that court for the purpose of allowing adequate and orderly review of the transfer order by the Ninth Circuit. "Although the D.C. Circuit has said little about retransfer motions," *En Fuego Tobacco Shop LLC v. United States FDA*, 356 F.Supp.3d 1, 8 (D.D.C. 2019), its guidance is unmistakenly clear: "This state of the law makes it essential that procedures be adopted and observed that will provide plaintiffs a fair opportunity to seek review in the transferor circuit[.]" *Starnes v. McGuire*, 512 F.2d 918, 924 (D.C. Cir. 1974) (*en banc*).

Transfer pursuant to 28 U.S.C. § 1404(a) strips the transferor district court and the corresponding appellate court of jurisdiction the moment the case is docketed in the transferee court. *See Lou v. Belzberg*, 834 F.2d 730, 733 (9th Cir. 1987); *Starnes*, 512 F.2d at 924. Furthermore, the local rules in the Southern District of California do not provide that the transferor court should retain the case file for a certain period so as to allow a petitioner to seek appellate review. *See generally* Local Rules, U.S. Dist. Ct. S. Dist. CA.

In *Herman v. Cataphora Inc.*, 2013 U.S. Dist. LEXIS 9862 (N.D. CA 2013), the district

court was confronted with a problem nearly identical to this case. Its local rules provided a *Starns*-like procedure whereby an order transferring an action to another district became effective 14 days after it was filed unless the order specified an effective date. *Id*. at *4. By contrast, the transferor court, like the California district court here, did not provide such a procedure. The court said that the immediate transfer of the case file simultaneously with the entry of the transfer order "unfairly deprived plaintiffs of the opportunity to seek appellate review in the transferor circuit." *Id*. at **5-6. The court found that the hasty transfer presented an "extraordinary circumstance" where "[a] grave miscarriage of justice would result if an administrative glitch were to deprive the Plaintiffs of an opportunity to seek appellate review in the transferor circuit." *Id*. at *6. On that basis, the court ordered the case file to be returned to the transferor court "in order to allow Plaintiffs to seek appellate review of the Transfer Order in the [transferor circuit]." *Id*. It did so regardless of "whether or not the Plaintiffs will be allowed to pursue appellate review of the Transfer Order in the transferor circuit in the form of an immediate appeal, a writ of mandamus, or at all," saying that "is a question that lies properly within the jurisdiction of the [transferee circuit]." *Id*. at *6, n.1.

The government repeatedly asserts here that neither statute nor precedent supports retransfer for the purpose of seeking mandamus review in the transferor circuit. Opp. Br. at 2 ("Neither 28 U.S.C. § 1404, nor any precedent"); *id*. at 3 ("not authorized by any statute or precedent"); *id*. at 4 ("no authority"); *id*. at 7 ("no precedent"). Obviously, that assertion is incorrect in light of *Herman*.

The government further criticizes Ashli's appeal to this Court's discretion over her motion to retransfer in the "interest of justice and fair play," officiously declaring that such discretion is not the correct standard, Opp. Br. at 4, but it is in fact guilty of taking advantage of

that standard in at least one other recent retransfer case. *See United States v. Petty*, 2022 U.S. Dist. LEXIS 90428, *6 (W.D.N.Y. 2022) (granting government's motion to retransfer case to the transferor court to allow the government to seek reconsideration of the transfer order and finding retransfer in the "interest of justice" because the transferor court's clerk "effectuated the transfer almost immediately, which left the government with virtually no opportunity to ask the court to reconsider or move for a stay.").

During the August 6 hearing in this case, the government, quoting from *NBS Imaging Systems, Inc. v. United States Dist. Ct. E. Dist.*, 841 F.2d 297 (9th Cir. 1988), faulted Ashli for not filing a mandamus petition in the Ninth Circuit and asking it to order the California district court to make an informal request that this Court return the case file. ECF 21 (Transcript), at 35-37. The *NBS Imaging* court denied petitioner's request in mandamus to vacate a transfer order because the district court did not act hastily in transferring the case file (indeed, it waited 35 days from its oral pronouncement and 26 days from its written order) and petitioner did not act diligently in seeking mandamus relief during this time. 841 F.2d at 298. Petitioner did not file a motion to retransfer in the transferee court. *Id*. The government quoted the court as saying, "where the case is docketed in the transferee court, this court has previously ordered a district court in this circuit to request the transferee court to return the case. *Id. citing Town of North Bonneville, Washington v. United States Dist. Ct.*, 732 F.2d 747, 752 (9th Cir. 1984). *North Bonneville* was distinguishable, however, because the transferor courts there had not lost jurisdiction by the docketing of the case in the transferee court: "The Town timely filed a notice of appeal from the adverse effect of the transfer order in each of the four transferred causes, and those appeals are now pending in this court." *Id*. at 749.[2] Thus, the *NBS Imaging* court could not

---

[2] The timely filing of a notice of appeal before a case is docketed in the transferee court enables

have vacated the transfer order even if it had wanted to. The most it could have done was order the district court to informally request the transferee court to return the case file.

Even in cases where the transferee court returned a case to the transferor court following an informal request of the transferor appellate court, the retransfer was entirely discretionary, and the requests, acknowledging jurisdictional limitations, did not purport to simultaneously vacate the transfer order. *See e.g., In re Nine Mile Ltd.*, 692 F.2d 56, 58 (8th Cir. 1982) (transferee court, exercising discretion, returned case to transferor court in order to confer jurisdiction "so that the district court could properly reconsider its transfer order, with review in this Court if necessary."); *In re Nine Mile Ltd.*, 673 F.2d 242, 244 n.5 (8th Cir. 1982) ("this Court and the district court lack power to compel the [transferee court] to return the case files to the [transferor court]"); *In re Sosa*, 712 F.2d 1479, 1480 n.1 (D.C. Cir. 1983) ("Short of dismissal, the only option available to us at this time is an informal request that the [transferee] court retransfer the record to permit consideration of Sosa's petition."); *Fine v. McGuire*, 433 F.2d 499, 500 n.1 (D.C. Cir. 1970) (transferee court, exercising discretion, "return[ed] the file in the District Court action to this jurisdiction to permit orderly consideration" of mandamus challenge to original transfer). Courts in these cases frequently counsel the parties to file a motion to retransfer in the transferee court as "the appropriate course of action." *See In re Nine Mile*, 673 F.2d at 244 n.5; *In re Sosa*, 712 F.2d at 1480; *Starnes*, 512 F.2d at 924. No authority required Ashli to ignore this sound guidance and travel the jurisdictionally limited route of an informal request from an appellate court. Both invoke the transferee district court's discretion to order the return of the case file to

---

the court of appeals in the transferor circuit to exercise jurisdiction over the case. See *Lou*, 834 F.2d at 733 (9th Cir. 1987); *Starnes*, 512 F.2d at 924, n.6 ("when the appeal has been filed and docketed at the time the physical transfer takes place, the district court is without power to complete a valid physical transfer.").

the transferor court, which, as demonstrated by all of these cases, would not be an abuse of discretion given the hasty transfer in this case.

The government's next thesis – that a motion to retransfer is "at bottom, a form of a motion for reconsideration," Opp. Br. at 4 – is also untenable. Indeed, Ashli is asking this Court *not* to reconsider the California district court's decision because it lacks discretion to do so under the law of the case doctrine and precedent cited both herein and in the motion. And, as stated, Ashli is not here invoking any exception to that doctrine. The government urges the Court to treat her retransfer motion as a motion for reconsideration so that "'the court must, as a threshold matter, determine whether the law-of-the-case doctrine effectively insulates the transfer from review.'" Opp. Br. at 4, *quoting FMC Corp. v. U.S. E.P.A.*, 557 F.Supp. 2d 105, 109 (D.D.C. 2008). *FMC Corp*. is an oddball case which is wholly inapposite because plaintiff there filed a section 1404(a) original motion to transfer venue in the transferee court seeking to transfer venue to its home district court and, only in the alternative, asked the transferee court to retransfer the case to the transferor district court. *See FMC Corp.*, case number 1:07-cv-2277-RMU, ECF 50. This Court should treat Ashli's motion to retransfer fairly as such, not as a motion for reconsideration.

The government contends it was not clear error for the California district court to resolve its motion to transfer on the papers without a hearing. Opp. Br. at 5-6, *quoting Starnes*, 512 F.2d at 934. However, Ashli may argue to the Ninth Circuit that it was an abuse of discretion. "The courts of appeals have been particularly hospitable to petitions for mandamus challenging transfer orders entered, as the one in this case was, without a hearing." *Roofing & Sheet Metal Services, Inc. v. La Quinta Motor Inns, Inc.*, 689 F.2d 982, 987 (11th Cir. 1982), *citing e.g., Starnes*, 512 F.2d at 929 (D.C.Cir. 1974) (*en banc*).

Finally, the government's thesis that Ashli must here demonstrate a reasonable likelihood of success on the merits in the Ninth Circuit is untenable.  The proposition not only lacks citations to precedent, but would also interfere with the Ninth Circuit's jurisdiction.  *See Varsic v. United States Dist. Ct. for Cent. Dist.*, 607 F.2d 245, 251 n.5 (9th Cir. 1979) ("While *Magnetic Engineering* may permit Varsic to seek relief in mandamus in the Second Circuit, this does not alter our decision to issue the writ; there is no need to refrain from granting extraordinary relief simply because another court may also be in the position to grant such relief.  Moreover, it is the protection of this circuit's jurisdiction, not that of the Second Circuit, with which Varsic and we are concerned.").  As a practical matter, it makes no sense to require a party, particularly one of limited means, to prove his case twice – once in the transferee circuit on a motion to retransfer and a second time in the transferor circuit on a petition for mandamus.

## II.     Legitimate, Nonfrivolous Grounds for Retransfer.

Ashli's objective here is to answer this Court's inquiry during the August 6 hearing regarding the basis for her anticipated petition for mandamus relief in the Ninth Circuit.  Her position is that review of the transfer decision itself properly lies solely in the Ninth Circuit.  Her motion to retransfer simply enforces the right of the Ninth Circuit to protect its own appellate jurisdiction.

In summary, by transferring this case from California to the District of Columbia the court:

1.      Unfairly transferred the burden, difficulty, and expense of litigation from the Defendant to the Plaintiffs;

2.      Failed to properly assess and evaluate the importance of the special venue provision which allows an FTCA claimant to file suit in the venue in which she resides;

3.⠀⠀⠀⠀Improperly weighed and gave greater deference to local interest in this controversy, finding that the District of Columbia had greater interest in this matter than California;

4.⠀⠀⠀⠀Entirely ignored the weight and import of the witnesses who shot video recordings of the shooting at issue, all of whom are non-party critical witnesses, and none of whom apparently reside in the District of Columbia;

5.⠀⠀⠀⠀Despite giving lip service to the notion that "Plaintiff's choice of forum is accorded significant deference," the court's analysis favored venue in the forum giving rise to the action. Such analysis would always favor the venue where the action occurred over the plaintiff's choice of forum unless the plaintiff chose to file in the venue where the action occurred. This sort of analysis would essentially read the special venue provision out of law, requiring an FTCA claimant to always file in the district where the injury occurred.

⠀⠀⠀⠀Importantly, the government's opposition to retransfer construes too narrowly the concept of its own standard of manifest injustice. Whether the California court's transfer order meets the legal standard of abuse of discretion, clearly erroneous, or works a manifest injustice, is not the only problem with the order. Manifest injustice occurs when a party procedurally entitled to file an appeal pursuant to 28 U.S.C. §1294 is deprived of that right because of an inopportune and rushed transfer of the docket before the transferred party has an opportunity to file an appeal. Here, Ashli was entitled to appeal the California transfer order to the Ninth Circuit. The precipitous way in which the docket was transferred out of California and to the District of Columbia was itself a manifest injustice. The Government narrowly reads the "manifest injustice" to be found in the substance of the California court's reasoning. This belies the reasoning by the precedents reviewed above that by transferring a case before a party can file an

appeal in the transferor circuit, the party against whom transfer occurred was deprived of due process. The due process consists of having the matter heard in the transferor circuit court.

Tellingly, the California court does not cite any FTCA cases in its analysis of choice of forum. It further cites to another non-FTCA case, *Lou*, 834 F.2d 730, 739 (9th Cir., 1987) for the proposition that "[i]f the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter, [plaintiff's] choice is entitled to only minimal consideration." Putting aside the fact that California has a strong interest in the parties and the subject matter (including damages), this analysis fails to consider the special venue provisions contained in the FTCA because it holds "the alleged tortious conduct occurred entirely in the District of Columbia." The court found that because Ashli chose to file in California, the factor weighed against transfer, but "not significantly." This factor alone, given the special venue provisions contained in the FTCA, should have significantly weighed against transfer. The court's failure to accord significant weight to the special venue provision contained in the FTCA was an abuse of discretion, if not clearly erroneous interpretation of the special venue statute.

The Ninth Circuit has apparently never ruled on the significance and weight that must be accorded an FTCA claimant given the special venue statute. Previous considerations given by the Ninth Circuit in venue dispute cases did not address the special venue provision contained in the FTCA. This observation meets prong five of the *Bauman* factors, *see Bauman v. United States Dist. Ct.*, 557 F.2d 650 (9th Cir. 1977), as the California district court's transfer order and its weighing of the special venue provision contained in the FTCA raised a new and important legal issue of first impression.

Oddly, the California court found that "inconvenience of counsel is irrelevant to assessing transfer," again citing to three non-FTCA cases. Holding this factor neutral was an abuse of

discretion, if not clearly erroneous, given that the government has United States government attorneys in San Diego available and able to litigate this case, whereas Ashli's litigation counsel is located in California and travel to the District of Columbia to litigate the case and be present at hearings and trial would clearly be burdensome and costly to Mr. Babbitt, who is unemployed by reason of the shooting at issue and of limited resources.

The court's analysis of convenience of witnesses gave great deference to the party and non-party witnesses identified by the government. The court gave no deference to Ashli's rebuttal that many non-party witnesses are not located in Washington D.C. In fact, among the most critical non-party witnesses are those who videotaped the shooting of Ashli Babbitt. The government mentioned none of these witnesses in its filing because none of them reside in D.C. The government also failed to mention the many non-party demonstrators not located in D.C. who witnessed the shooting and can testify as to whether Ashli was armed, attacked any officers, or threatened any officers on January 6th. Despite these omissions, the court found the government met its burden of identifying non-party witnesses who would find it more convenient to testify in D.C. rather than in California. The court then found that because the plaintiffs failed to identify these other testifying witnesses in their opposition filing, the court could not assess the convenience afforded to them by transfer.

Not only did this analysis misplace the burden on the party opposing venue transfer rather than the party filing for venue transfer, but it would have required Ashli to reveal trial strategy in her opposition filing. The court accommodated the government in this regard, stating, "Defendant, however, need not lay out its trial strategy or prospective defenses at this juncture. Rather, the Government must identify possible witnesses who may be called to testify, their relationship to the allegations, and how transfer would convenience them. It has done so." This

conclusion was clearly erroneous, and startling given the failure of the government to identify any of the non-party witnesses who captured video of the shooting, arguably the best evidence of whether the shooting of Ashli Babbitt was justified or demonstrated negligence. *See Scott v. Harris*, 550 U.S. 372, 378-381 (2007) (record included a videotape capturing the events in question blatantly contradicting the plaintiff's version of events so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a summary judgment motion) (viewing the facts in the light depicted by the videotape, it is clear that Deputy Scott did not violate the Fourth Amendment.).

**III.     Conclusion.**

For the foregoing reasons, the Court should grant the motion to retransfer.

Dated:  August 23, 2024                                              Respectfully submitted,

                                                                                            JUDICIAL WATCH, INC.

                                                                        By:     */s/ Robert Patrick Sticht.*
                                                                                   ROBERT PATRICK STICHT

                                                                                   Attorney for Plaintiffs Estate of Ashli Babbitt and Aaron Babbitt