# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ESTATE OF ASHLI BABBITT, and AARON BABBITT, individually and on behalf of the ESTATE OF ASHLI BABBITT, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:24-cv-01701-ACR |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) ) ) | |

## DEFENDANT UNITED STATES OF AMERICA'S
## MOTION TO DISMISS COUNTS III, IV, AND V

Defendant United States of America moves under Federal Rule of Civil Procedure 12(b)(1) to dismiss Counts III, IV, and V of the complaint (ECF No. 1) for lack of subject matter jurisdiction. The Negligence claim (Count III) brought under the Federal Tort Claims Act is subject to dismissal because the complaint fails to allege circumstances where a private person would be liable under D.C. law, as required by 28 U.S.C. § 1346(b)(1). Additionally, Count III as well as Plaintiff's Negligent Supervision, Discipline, and Retention (Count IV) and Negligent Training (Count V) claims are barred by the discretionary-function exception to the FTCA. 28 U.S.C. § 2680(a).

The grounds for this motion are set forth in the accompanying memorandum of points and authorities. A proposed order is attached.

Dated: September 6, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

C. SALVATORE D'ALESSIO, JR.

Director, Torts Branch, Civil Division

RICHARD MONTAGUE
Senior Trial Counsel

*/s/ Sarah E. Whitman*
SARAH E. WHITMAN
MA Bar 657726
Senior Trial Counsel, Torts Branch, Civil Division
United States Department of Justice
175 N Street, NE
Washington, DC 20002
Tel: (202) 616-0089; F: (202) 616-4314
Sarah.whitman@usdoj.gov

*/s/ Joseph A. Gonzalez*
JOSEPH A. GONZALEZ
D.C. Bar No. 995057
Trial Attorney, Torts Branch, Civil Division
United States Department of Justice
175 N Street, NE
Washington, DC 20002
Tel: (202) 598-3888; F: (202) 616-4314
Joseph.a.gonzalez@usdoj.gov

*Counsel for Defendant United States of America*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

———————————————————— )
ESTATE OF ASHLI BABBITT, and )
AARON BABBITT, individually and on )
behalf of the ESTATE OF ASHLI )
BABBITT, )
                Plaintiffs, )
 )
      v. )      Case No. 1:24-cv-01701-ACR
 )
UNITED STATES OF AMERICA, )
 )
             Defendant. )
———————————————————— )

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT UNITED STATES' MOTION TO DISMISS COUNTS III, IV, AND V

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

C. SALVATORE D'ALESSIO, JR.
Director, Torts Branch, Civil Division

RICHARD MONTAGUE
Senior Trial Counsel

SARAH E. WHITMAN, MA Bar 657726
Senior Trial Counsel, Torts Branch, Civil Division
United States Department of Justice
175 N Street, NE
Washington, DC 20002
T: (202) 616-0089; F: (202) 616-4314
Sarah.whitman@usdoj.gov

JOSEPH A. GONZALEZ, D.C. Bar No. 995057
Trial Attorney, Torts Branch, Civil Division
United States Department of Justice
175 N Street, NE
Washington, DC 20002
T: (202) 598-3888; F: (202) 616-4314
Joseph.a.gonzalez@usdoj.gov

*Counsel for Defendant United States of America*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................ 1

STATEMENT .................................................................................................................. 2

ARGUMENT .................................................................................................................... 5

   I.     Count III Should Be Dismissed Because the Complaint Does Not Allege an
         Actionable Legal Duty Under D.C. Law. ................................................... 5

       A.    Liability Depends Upon Establishing a Private Person Analog Under
            D.C. Law. ............................................................................................ 6

       B.    There Is No Private Person Analog Under D.C. Law That Imposes a
            Duty to Address the Third-Party Criminal Conduct of Alam and Jones.............. 8

           1.    The complaint does not allege circumstances that support legal
                 foreseeability. ............................................................................ 8

           2.    The complaint's Count III negligence theory implies an
                 extraordinary expansion of liability. ......................................... 12

       C.    The Eight Officers Breached No Duty to Ms. Babbitt Under a
            Reasonably Prudent Officer Standard. ............................................... 13

   II.    The FTCA's Discretionary-Function Exception Bars Counts III, IV, and V. ........... 15

       A.    Negligence of the Additional Eight Federal Employees (Count III)................. 17

       B.    Negligent Training and Negligent Supervision, Discipline, and
            Retention of Lt. Byrd (Counts IV and V)............................................. 21

   CONCLUSION................................................................................................................ 25

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Alfrey v. United States*,
  276 F.3d 557 (9th Cir. 2002) ................................................................................. 20

\* *Bd. of Trustees of Univ. of D.C. v. DiSalvo*,
  974 A.2d 868 (D.C. 2009) ......................................................................... 6, 10, 11

*Berkovitz v. United States*,
  486 U.S. 531 (1988)...................................................................................... 16, 18, 22

*Bostic v. U.S. Capitol Police*,
  644 F. Supp. 2d 106 (D.D.C. 2009)........................................................................ 25

*Bragdon v. United States*,
  537 F. Supp. 2d 157 (D.D.C. 2008)........................................................................ 25

*Brownback v. King*,
  141 S. Ct. 740 (2021)............................................................................................ 2, 5

*Bruno v. W. Union Fin. Servs., Inc.*,
  973 A.2d 713 (D.C. 2009) ...................................................................................... 11

*Buchanan v. United States*,
  915 F.2d 969 (5th Cir. 1990) ................................................................................. 21

*Buie v. United States*,
  No. 22cv3501, 2024 WL 519593 (D.D.C. Feb. 9, 2024)...................................... 23

\* *Burkhart v. Washington Metro. Area Transit Auth.*,
  112 F.3d 1207 (D.C. Cir. 1997) ............................................................ 21, 22, 23, 24

*Dalehite v. United States*,
  346 U.S. 15 (1953)................................................................................................. 16

*Deuser v. Vecera*,
  139 F.3d 1190 (8th Cir. 1998) ............................................................................... 18

*Donahue v. United States*,
  870 F. Supp. 2d 97 (D.D.C. 2012)........................................................................... 5

*Dugard v. United States*,
  835 F.3d 915 (9th Cir. 2016) ............................................................................... 7, 8

*Dupris v. McDonald*,
554 F. App'x 570 (9th Cir. 2014) ................................................. 19

*Ellis v. Safeway Stores, Inc.*,
410 A.2d 1381 (D.C. 1979) ......................................................... 11

*Feirson v. Dist. of Columbia*,
362 F. Supp. 2d 244 (D.D.C. 2005) ......................................... 9, 10

*Fornaro v. James*,
416 F.3d 63 (D.C. Cir. 2005) ........................................................ 5

*Freyberg v. DCO 2400 14th St., LLC*,
304 A.3d 971 (D.C. 2023) ..................................................... 11, 13

*Gager v. United States*,
149 F.3d 918 (9th Cir. 1998) ..................................................... 24

*Gordo-González v. United States*,
873 F.3d 32 (1st Cir. 2017) ........................................................ 21

*Hall v. Ford Enterprises, Ltd.*,
445 A.2d 610 (D.C. 1982) ........................................................ 6, 9

*Harper v. United States*,
No. 12cv1802, 2020 WL 4192540 (D.D.C. Jul. 21, 2020) ................ 23, 24

*Hart v. United States*,
630 F.3d 1085 (8th Cir. 2011) ................................................... 20

*Hines v. Dist. of Columbia*,
580 A.2d 133 (D.C. 1990) ......................................................... 14

*Hornbeck Offshore Transp., LLC v. United States*,
569 F.3d 506 (D.C. Cir. 2009) ..................................................... 7

*Hundley v. Dist. of Columbia*,
494 F.3d 1097 (D.C. Cir. 2007) ................................................. 15

*In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*,
668 F.3d 281 (5th Cir. 2012) ....................................................... 7

\*   *Klahr v. Dist. of Columbia*,
576 A.2d 718 (D.C. 1990) ..................................................... 13, 14

*LaBarge v. Mariposa Cnty.*,
  798 F.2d 364 (9th Cir. 1986) ................................................................. 7

*Lee v. United States*,
  570 F. Supp. 2d 142 (D.D.C. 2008) ........................................................ 13

*Loumiet v. United States*,
  828 F.3d 935 (D.C. Cir. 2016) ................................................... 16, 17, 22

*M.D.C.G. v. United States*,
  956 F.3d 762 (5th Cir. 2020) ................................................................. 21

*Martinez v. United States*,
  587 F. Supp. 2d 245 (D.D.C. 2008) ........................................................ 20

*Miango v. D.R. Congo*,
  243 F. Supp. 3d 113 (D.D.C. 2017) ................................................... 14, 15

*Miller v. United States*,
  992 F.3d 878 (9th Cir. 2021) ................................................................. 21

*Morgan v. Dist. of Columbia*,
  468 A.2d 1306 (D.C. 1983) ................................................................... 14

*Olaniyi v. Dist. of Columbia*,
  763 F. Supp. 2d 70 (D.D.C. 2011) .......................................................... 19

*RELX, Inc. v. Baran*,
  397 F. Supp. 3d 41 (D.D.C. 2019) ........................................................... 5

*Romero v. Nat'l Rifle Ass'n of Am., Inc.*,
  749 F.2d 77 (D.C. Cir. 1984) ............................................................... 6, 9

\* *Shuler v. United States*,
  531 F.3d 930 (D.C. Cir. 2008) ..................................................... 5, 17, 18, 19

*Sloan v. U.S. Dep't of Housing and Urban Dev't*,
  236 F.3d 756 (D.C. Cir. 2001) ............................................................ 2, 5

*Smith v. United States*,
  157 F. Supp. 3d 32 (D.D.C. 2016) ................................................. 21, 23, 25

*Sydnes v. United States*,
  523 F.3d 1179 (10th Cir. 2008) ............................................................ 21

*Tookes v. United States*,
   811 F. Supp. 2d 322 (D.D.C. 2011) ................................................................... 24, 25

*United States v. Faneca*,
   332 F.2d 872 (5th Cir. 1964) ................................................................................. 18

\*    *United States v. Gaubert*,
   499 U.S. 315 (1991) ........................................................................................ 16, 17, 22

*United States v. Nassif*,
   97 F.4th 968 (D.C. Cir. 2024) ............................................................................. 17

\*    *United States v. Olson*,
   546 U.S. 43 (2005) ................................................................................................ 6, 7

*United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*,
   467 U.S. 797 (1984) ........................................................................................ 1, 16, 17

*Usoyan v. Republic of Turkey*,
   6 F.4th 31 (D.C. Cir. 2021) .............................................................................. 18, 19

*Warren v. Dist. of Columbia*,
   444 A.2d 1 (D.C. 1981) ...................................................................................... 13, 14

*Whittaker v. CSOSA*,
   401 F. Supp. 3d 170 (D.D.C. 2019) ..................................................................... 7, 10

*Workman v. United Methodist Comm.*,
   320 F.3d 259 (D.C. Cir. 2003) ....................................................................... 9, 12, 13

## **Statutes**

2 U.S.C. § 1961 ............................................................................................................ 18

2 U.S.C. § 5605(a) ....................................................................................................... 5

3 U.S.C. § 15 ................................................................................................................ 2

28 U.S.C. § 1346 .......................................................................................................... 1

28 U.S.C. § 1346(b)(1) ........................................................................................ 1, 2, 6, 15

28 U.S.C. §§ 2671-2680 .............................................................................................. 1

28 U.S.C. § 2674 .......................................................................................................... 7

28 U.S.C. § 2680(a) ................................................................................................ 1, 2, 15

**Federal Rules**

Federal Rule of Civil Procedure 12(b)(1) .............................................................. 1, 2, 5

**Other Authorities**

167 CONG. REC. H75–H85 (daily ed. Jan. 6, 2021) .................................................... 2

Restatement (Second) of Torts § 314 (1965) ................................................................. 9

THREE YEARS SINCE THE JAN. 6 ATTACK ON THE CAPITOL, U.S. Dept. of Justice,
   https://www.justice.gov/usao-dc/36-months-jan-6-attack-capitol-0 ....................... 12

## INTRODUCTION

On January 6, 2021, a Joint Session of Congress convened to certify the results of the 2020 Presidential election.  That same day, Plaintiff Aaron Babbitt's decedent, Ms. Ashli Babbitt, attended the Save America Rally at the Ellipse in Washington, D.C.  At the conclusion of the rally, thousands of attendees, including Ms. Babbitt, converged on the U.S. Capitol. Demonstrators breached the building.  Ms. Babbitt unlawfully entered the Capitol.  She made her way to the east doors of the Speaker's Lobby situated immediately behind the Chamber of the U.S. House of Representatives, the site of Joint Sessions of Congress.  Although officers had barricaded the Speaker's Lobby doors with heavy furniture, demonstrators broke through the glass panels of the lobby doors and matching windows (called "sidelights") on either side of the doors.  Michael Byrd, a U.S. Capitol Police lieutenant, was positioned on the other side of the lobby doors.  When Ms. Babbitt, wearing a backpack, tried to climb through a sidelight into the Speaker's Lobby, Lt. Byrd fatally shot her.

Aaron Babbitt, individually and as the appointed personal representative and administrator of the Estate of Ashli Babbitt, now sues the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346; 2671-2680 (2018) (FTCA), seeking damages for Ms. Babbitt's death.  In addition to assault, battery, and wrongful death claims based on the shooting by Lt. Byrd, he brings a series of claims (Counts III, IV, and V) based on alleged negligent acts or omissions by other Capitol Police Officers and federal officials that he claims contributed to Ms. Babbitt's death.

The FTCA waives sovereign immunity for certain tort claims, however it "did not waive the sovereign immunity of the United States in all respects."  *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808 (1984).  Relevant here, the

FTCA waives immunity, and vests district court jurisdiction, only "where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1); *see Brownback v. King*, 141 S. Ct. 740, 749 (2021).  In addition, the FTCA excepts from the sovereign-immunity waiver any claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."  28 U.S.C. § 2680(a).  Because these limits to the sovereign-immunity waiver bar Counts III, IV, and V of the complaint, those claims warrant dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

## STATEMENT[1]

As required by the Twelfth Amendment to the United States Constitution and the Electoral Count Act, 3 U.S.C. § 15, a Joint Session of Congress convened at the U.S. Capitol on January 6, 2021, to certify the results of the Presidential election.  167 CONG. REC. H75–H85 (daily ed. Jan. 6, 2021).  Ms. Ashli Babbitt traveled from San Diego, California, to Washington, D.C. to attend the Save America Rally at the Ellipse that day.  ECF No. 1, Complaint (Compl.) ¶¶ 10-11.  After the rally, she joined fellow demonstrators converging on the Capitol.  *Id*.

Demonstrators breached the Capitol at approximately 2:12p.m.  *Id*. ¶ 37.  Ms. Babbitt entered the Capitol on the Senate side of the building.  *Id*. ¶ 11.  She traversed through the Capitol to the House side, first joining demonstrators at the main entrance to the Chamber of the U.S. House of Representatives.  *Id*.  Demonstrators shattered the glass of the main door to the

---

[1] The description of events here is taken from the complaint, the well-pleaded facts of which are assumed to be true for the purposes of this facial attack on subject matter jurisdiction. *See Sloan v. U.S. Dep't of Housing and Urban Dev't*, 236 F.3d 756, 759 (D.C. Cir. 2001).

House Chamber.  *Id*. ¶ 49d.  A report of shots fired on the House floor was transmitted over the radio.  *Id*.  House Members and their staff began evacuating the House Chamber through the doors at the west entrance to the Speaker's Lobby.  *Id*. ¶ 49e.  The Speaker's Lobby is a corridor situated directly behind the House Chamber.  *Id*. ¶ 12.

Ms. Babbitt made her way to the east entrance of the Speaker's Lobby.  *Id*. ¶¶ 11-14.  The Speaker's Lobby entrance features double doors with panels and sidelights on each side of the doors.  *Id*. ¶ 13.  Seeing Ms. Babbitt, three Capitol Police Officers, Sergeant Lively, Officer Yetter, and Officer Lanciano, formed a line in the hallway in front of the Speaker's Lobby doors.  *Id*. ¶ 64.  "Within two minutes, approximately thirty demonstrators filled the narrow hallway."  *Id*. ¶ 65.  At 2:41p.m., a radio call reported, "The crowd at the House main door is heading around to the glass doors on the rear now of the chambers.  You need all units to go there and hold the glass."  *Id*. ¶ 49c.  Lieutenant Byrd positioned himself on the Speaker's Lobby side of the east lobby doors (on the opposite side of the doors from Sergeant Lively, Officer Yetter, and Officer Lanciano).  *Id*. ¶¶ 14, 64.  Lt. Byrd and others barricaded the east lobby doors with heavy furniture and chairs to prevent access to the Speaker's Lobby.  *Id*. at ¶ 49c.  At the time, some House Members and staff were on the House floor and in the House gallery.  *Id*. ¶ 49a.

Undeterred, rioters in the "tightly packed hallway struck and dislodged the glass panels" of the doors and right sidelight.  *Id*. ¶ 14.  Specifically, Zachary Alam "reach[ed] over the officers," and he and Chad Jones "were striking the lobby doors and shattering the glass panels in the doors."  *Id*. ¶¶ 53, 65.[2]  "At one point, Alam was directly next to [Ms. Babbitt] and directly

---

[2] Alam was found guilty of eight felony and three misdemeanor charges related to his actions on January 6, 2021, including disorderly conduct and entering and remaining in a restricted building with a deadly or dangerous weapon.  *United States v. Alam*, No. 1:21cr190 (D.D.C.).  Jones was found guilty of five felony and four misdemeanor charges related to his actions on January 6, 2021.  *United States v. Jones*, No. 1:21cr213 (D.D.C.).  One felony charge was later dismissed.

in front of Officer Lanciano as Alam struck the glass of the right lobby door sidelight in the small, tightly packed hallway." *Id.* ¶ 65.  Jason Gandolph, an employee of the House Sergeant at Arms, was nearby.  *Id.* ¶¶ 46, 70.  Officers Lively, Yetter, and Lanciano moved away from the doors, passed Ms. Babbitt, and descended a nearby stairway.  *Id.* ¶¶ 46, 66.  At the same time, U.S. Capitol Police Containment and Emergency Response Team Officers Robbs, Smith, Sikes, and Brown ascended the same stairway.  *Id.* ¶ 67.  "Alam dislodged the glass panel in the right door, then moved to his right, striking, then dislodging, the glass panels in the right door sidelight."  *Id.* ¶ 68.  Meanwhile, "Jones struck and dislodged the glass panel in the left door." *Id.*  Once the glass panels in the east lobby doors and right sidelight were dislodged, Ms. Babbitt, wearing a backpack, "raised herself up into the opening of the right door sidelight."  *Id.* ¶¶ 14, 49j.  Lieutenant Byrd, positioned to Ms. Babbitt's left and on the opposite side of the doors, fired one shot, killing her.  *Id.*; *see also id.* ¶ 47.

The complaint includes seven claims, labeled as Counts I through VII.  Count I alleges assault and battery by Lt. Byrd.  Count II alleges that Lt. Byrd acted negligently.  Count III alleges negligence on the part of U.S. Capitol Police Officers Lively, Yetter, Lanciano, Robbs, Smith, Sikes, and Brown and House Sergeant at Arms employee Jason Gandolph.  Count IV alleges negligent supervision, discipline, and retention of Lt. Byrd by the Capitol Police and the Capitol Police Board.  Count V alleges negligent training by the Capitol Police and the Capitol Police Board.  Count VI alleges a survival action and Count VII alleges a wrongful death action. Because the negligence claims in Counts III, IV, and V on their face fall outside the FTCA's limited waiver of sovereign immunity, they should be dismissed for lack of subject matter jurisdiction.

## ARGUMENT

"The United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of consent to be sued in any court define that court's jurisdiction to entertain the suit." *Fornaro v. James,* 416 F.3d 63, 66 (D.C. Cir. 2005) (cleaned up). "That means [an FTCA] plaintiff must plausibly allege that 'the United States, if a private person, would be liable to the claimant' under state law both to survive a merits determination under Rule 12(b)(6) and to establish subject-matter jurisdiction." *Brownback*, 141 S. Ct. at 749 (quoting 28 U.S.C. § 1346(b)(1)). Similarly, to survive a motion to dismiss, a plaintiff must invoke jurisdiction by pleading facts that facially allege conduct that falls outside the FTCA's discretionary-function exception. *Shuler v. United States*, 531 F.3d 930, 933-34 (D.C. Cir. 2008); *Donahue v. United States*, 870 F. Supp. 2d 97, 104, n.4 (D.D.C. 2012). A challenge to subject matter jurisdiction may be facial or factual. *RELX, Inc. v. Baran*, 397 F. Supp. 3d 41, 47 (D.D.C. 2019). When evaluating a facial challenge to subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the court assumes the complaint's factual allegations and draws all reasonable inferences in the plaintiff's favor. *Id.*; *see also Sloan*, 236 F.3d at 759.

## I.     Count III Should Be Dismissed Because the Complaint Does Not Allege an Actionable Legal Duty Under D.C. Law.

Count III alleges negligence on the part of U.S. Capitol Police Officers Lively, Yetter, Lanciano, Robbs, Smith, Sikes, and Brown and House Sergeant at Arms employee Jason Gandolph.[3] Specifically, Mr. Babbitt faults them for not protecting Ms. Babbitt from Alam's

---

[3] Although the complaint alleges Jason Gandolph, by virtue of his status as an employee of the House Sergeant at Arms, was a law enforcement officer and had arrest authority, Compl. ¶ 63, that is incorrect. Under 2 U.S.C. § 5605(a), the Sergeant at Arms of the House of Representatives himself has "the same law enforcement authority, including the authority to carry firearms, as a member of the Capitol Police" provided that he meets certain qualifications listed in section 5605(b). The Sergeant at Arms' authority

and Jones' criminal activity and asserts that not doing so renders them liable for the harm that befell Ms. Babbitt when she decided to climb through a broken sidelight.  *See* Compl. ¶¶ 14, 65, 67. Count III is subject to dismissal because a private person would not be liable in like circumstances under District of Columbia tort law as the FTCA's section 1346(b)(1) requires. District of Columbia law holds that generally "no liability exists in tort for harm resulting from the criminal acts of third parties[.]"  *Hall v. Ford Enterprises, Ltd.*, 445 A.2d 610, 611 (D.C. 1982).  Narrow exceptions to this general rule that can trigger a duty of care depend on establishing that the act "was so foreseeable that it became the defendant's duty to guard against it," *Bd. of Trustees of Univ. of D.C. v. DiSalvo*, 974 A.2d 868, 872 (D.C. 2009) (citations omitted), or "either a special relationship between the parties to the suit" or "a relationship of control between the defendant and the intervening criminal actor" who caused the plaintiff's injury.  *Romero v. Nat'l Rifle Ass'n of Am., Inc.*, 749 F.2d 77, 81 (D.C. Cir. 1984).  Mr. Babbitt's allegations do not trigger such exceptions.  Mr. Babbitt's theory lacks a legal basis and, therefore, Count III should be dismissed.

### A.  Liability Depends Upon Establishing a Private Person Analog Under D.C. Law.

A plaintiff may bring an FTCA suit against the United States "under circumstances where . . . a private person[] would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1).  In *United States v. Olson*, 546 U.S. 43 (2005), the Supreme Court explained that the United States waives sovereign immunity "'under circumstances' where local law would make a 'private person' liable in tort."  *Id.* at 44. So, the proper inquiry "look[s] to the law of the local jurisdiction—in this case, the District of

---

does not extend to civilian employees of the Office of the Sergeant at Arms like Gandolph.  The United States' dismissal motion, however, does not turn on the inaccuracy of this allegation.

Columbia—to determine whether there is a local private party analog to [the plaintiff's] claims." *Hornbeck Offshore Transp., LLC v. United States*, 569 F.3d 506, 508 (D.C. Cir. 2009); *see Whittaker v. CSOSA*, 401 F. Supp. 3d 170, 183 (D.D.C. 2019) ("[T]he Court must determine whether or not a private person can be sued under District of Columbia law for claims similar to those which Plaintiff alleges against Defendants.").

A private party analog requires identifying "like circumstances" that would give rise to liability, not "the same circumstances." *Olson*, 546 U.S. at 46; *see also* 28 U.S.C. § 2674 (providing that the United States is liable "in the same manner and to the same extent as a private individual under like circumstances"). A "court's job in applying the standard is to find the most reasonable analogy" to private party liability. *LaBarge v. Mariposa Cnty.*, 798 F.2d 364, 367 (9th Cir. 1986); *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 668 F.3d 281, 288 (5th Cir. 2012) (same). Identifying a reasonable analogy is necessary to preclude characterizing the government action at issue so generically that the analogy fits with almost any circumstance, as opposed to a reasonably similar circumstance. *See Hornbeck Offshore Transp., LLC*, 569 F.3d at 509 (holding plaintiff could not "circumnavigate the local law requirement" with "citation to the generic duty 'to act with due care' while undertaking an action[.]").

The Ninth Circuit's decision in *Dugard v. United States*, 835 F.3d 915 (9th Cir. 2016), provides a helpful illustration of the "like circumstances" requirement in the context of a claim of failure to prevent criminal acts by a third party. *Cf.* Compl. ¶ 67 (faulting Capitol Police Officers for not "controlling, de-escalating, or stopping Alam"). The plaintiff in *Dugard* "alleged that the government negligently performed numerous mandatory duties when supervising [a parolee], including duties to report parole violations," that led to the parolee kidnapping the plaintiff. *Dugard*, 835 F.3d at 918. In determining whether California law would

support the claim against a private party, the court looked to cases concerning "the liability of private criminal rehabilitation facilities" because those cases were "most analogous cases to this situation[.]" *Id.* at 919.  The cases established that private facilities "do not owe a duty of care to the public at large for the conduct of inmates or parolees under their supervision." *Id.*  Rather, private facilities "owe[d] a duty only to individuals that are foreseeable and specifically identifiable victims of their wards' conduct." *Id.*  The *Dugard* plaintiff, as a member of the public at large, did not meet this exception, and thus there was no comparable private duty upon which the United States could be liable.  *Id.*  District of Columbia law similarly imposes no duty to protect members of the general public from the criminal acts of others.

**B.  There Is No Private Person Analog Under D.C. Law That Imposes a Duty to Address the Third-Party Criminal Conduct of Alam and Jones.**

1.    <u>The complaint does not allege circumstances that support legal foreseeability.</u>

Mr. Babbitt's negligence theory rests on Jones' and Alam's third-party criminal conduct in knocking out the sidelight window and Ms. Babbitt's own decision to climb through it.  *See* Compl. ¶¶ 14, 63.  Mr. Babbitt alleges that the nearby eight officers breached a duty "to control, de-escalate, or stop Alam or Jones" from breaking the windows and "fail[ed] to call for backup," which in turn led to the harm that befell Ms. Babbitt.  *Id.* ¶¶ 70-72.

D.C. law forecloses Mr. Babbitt's theory because it rests on an unprecedented expansion of liability for third-party criminal acts.  He alleges that not only should the eight officers have prevented or otherwise addressed Alam's and Jones's criminal conduct, but also that they are responsible for Ms. Babbitt's independent decision to climb through the broken sidelight.  *See, e.g.*, *id.* ¶ 67.  As a practical matter, the theory charges the officers with knowledge of unforeseeable consequences in uncontrolled circumstances.  A mob of thousands had descended upon the Capitol, committed hundreds of crimes, and dozens of those individuals had finally

reached the threshold of the Speaker's Lobby.  The officers could neither control nor restrain them all, let alone anticipate which of the mob's criminal acts might lead other members of the mob to intentionally put themselves in harm's way.

Under a duty analysis, the theory does not make it past its first premise—the claim that the officers should have prevented Alam's and Jones's third-party criminal conduct.  In the District, generally "no liability exists in tort" against private individuals "for harm resulting from the criminal acts of third parties[.]"  *Hall*, 445 A.2d at 611.  Both the D.C. Court of Appeals and the D.C. Circuit have reiterated this principle in a variety of situations.  *See Workman v. United Methodist Comm.,* 320 F.3d 259, 262 (D.C. Cir. 2003) ("We note first that the Court of Appeals has been reluctant to see a defendant held liable for harm caused by the criminal act of a third party."); *Feirson v. Dist. of Columbia*, 362 F. Supp. 2d 244, 250 (D.D.C. 2005) ("Establishing that an individual defendant had an affirmative duty to protect another person is very difficult because generally the common law does not impose such a duty.") (citing Restatement (Second) of Torts § 314 (1965) ("The fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not itself impose upon him a duty to take such action.")), *aff'd*, 506 F.3d 1063 (D.C. Cir. 2007).

Mr. Babbitt has not alleged, nor could allegations support, the narrow exceptions to that principle: the presence of a special relationship between Ms. Babbitt and the officers, or the existence of a "control" relationship between the officers and Alam and Jones.  *See Romero*, 749 F.2d at 81 (noting "the general rule of nonliability at common law for harm resulting from the criminal acts of third parties" and observing that the "only District cases departing from that rule involved either a special relationship between the parties . . . or a relationship of control between the defendant and the intervening criminal actor[.]").  "The generally recognized special

relationships that give rise to a duty to protect are: common carrier-passenger; innkeeper-guest; landowner-invitee; one obligated by the law; or one who voluntarily takes custody of another and in doing so deprives that person of the ability to protect himself." *Feirson*, 362 F. Supp. 2d at 250.  Neither a "control" relationship nor any "special relationship" was present here.  *See Whittaker*, 401 F. Supp. 3d at 184 ("[I]nstitutions, such as prisons and mental hospitals, that have custody over dangerous persons have a duty to members of the public to exercise reasonable care to control their inmates or patients.").  Instead, Alam and Jones, neither of whom were subject to federal custody, were committing federal crimes in the midst of a riot.

The only other exception to the general rule that private citizens have no duty to prevent third-party criminal acts hinges on establishing a "defendant's increased awareness of the danger of a particular criminal act" that "was so foreseeable that it became the defendant's duty to guard against" it.  *DiSalvo*, 974 A.2d at 872.  But no private person could have reasonably foreseen that Alam and Jones would breach the Capitol, smash the sidelight windows outside the Speaker's Lobby or that Ms. Babbitt would climb through the window opening created by Alam and Jones.

*DiSalvo* illustrates the high bar required to establish the legal foreseeability of a criminal act.  There, a student sued a university after being stabbed in the parking lot by an unknown third party.  974 A.2d at 870.  The student alleged that the university breached a duty to protect her because it should have foreseen the crime.  *Id*. at 873.  The plaintiff noted the presence of a "roving security officer" in the garage and pointed to "several previous on-campus crimes."  *Id*.  The D.C. Court of Appeals rejected her argument and reversed the trial court's denial of a motion for judgment as a matter of law.  *Id*. at 870.  It reasoned that none of the previous crimes were "committed with a weapon, none [were] in a campus parking garage, and none resulted in

any serious injury to the victim." *Id.* at 873.  This lack of specific notice of a previous criminal act, of a specific type, and in a specific location, foreclosed heightened foreseeability. *See id.*; *Bruno v. W. Union Fin. Servs., Inc.*, 973 A.2d 713, 721 (D.C. 2009).

Mr. Babbitt's Count III negligence claim also lacks these required features.  He makes no allegation plausibly suggesting that the criminal acts on which his claim rests were so foreseeable as to trigger a duty of care to Ms. Babbitt.  Indeed, the January 6 riot, the mob at the Speaker's Lobby, and Ms. Babbitt's decision to climb through the sidelight are unprecedented. Dismissal is therefore appropriate.  *See Freyberg v. DCO 2400 14ᵗʰ St., LLC*, 304 A.3d 971, 980 (D.C. 2023) (affirming dismissal of the plaintiff's failure to protect claim because the allegations concerning the "heightened possibility of crime are merely conclusory and do not suffice to state a claim").

A "foreseeability" theory of duty cannot succeed for another basic reason.  Liability for third-party criminal acts turns on knowledge of *prior* criminal acts, not observing them in real time.  For this reason, the D.C. Court of Appeals rejected a plaintiff's attempt to hold a supermarket liable for failure to warn when she was stabbed by another customer.  *See Ellis v. Safeway Stores, Inc.*, 410 A.2d 1381, 1382-83 (D.C. 1979).  It reasoned that the entire episode took just a few moments in which the assailant "searched her purse" and "emerged with an ice pick."  *Id.* at 1383.  The supermarket had no responsibility to address the crime as it occurred because it had "no greater warning as to what [the assailant] would do than did anyone else present[.]"  *Id.*  That conclusion reflects the rule that generally "there is no duty to warn of a danger which is as well known to the invitee as to the owner."  *Id.*  Here, nothing in the complaint suggests that the eight officers had "greater warning as to what [Alam and Jones] would do" than did Ms. Babbitt (or anyone else for that matter).  *Id.*  As in *Ellis*, Alam's and

Jones's conduct unfolded quickly, and occurred in indisputably chaotic circumstances.  The cases involving private liability most analogous to this situation do not support a negligence claim based on the eight officers' alleged acts or omissions.

      2.      <u>The complaint's Count III negligence theory implies an extraordinary expansion of liability.</u>

Two additional factors foreclose finding that a private person would owe a legal duty under D.C. tort law in like circumstances.  First, in each of the cases discussed above the tort victim was either an invitee (*DiSalvo*) or a customer (*Ellis*), and therefore an entrant anticipated by the defendant.  These types of relationships suggest a duty of protection in some circumstances and thus at least the potential for a duty of protection to arise if the defendant had sufficient notice of a risk.  *See Workman*, 320 F.3d at 264 ("If the relationship between the parties strongly suggests a duty of protection, then specific evidence of foreseeability is less important[.]").  That is not the case here.  Ms. Babbitt, along with other rioters, hundreds of whom have been convicted of unlawful entry and disorderly conduct crimes, unlawfully breached the Capitol in an unprecedented attempt to subvert a constitutional process.[4]  She was not an invitee or a customer.  And unlike the plaintiffs in the cases discussed above, her presence as a rioter climbing through a smashed window could not have been reasonably anticipated.

Second, nearly all the cases that concern liability for third-party criminal acts follow a familiar pattern.  A third party commits a criminal act against the plaintiff, and the plaintiff sues the defendant for failure to prevent the harm.  In *DiSalvo*, the assailant stabbed the student.  In *Ellis*, the assailant stabbed the customer.  Here, there is no allegation that Alam and Jones

---

[4] *See* THREE YEARS SINCE THE JAN. 6 ATTACK ON THE CAPITOL, U.S. Dept. of Justice (Jan. 5, 2024), https://www.justice.gov/usao-dc/36-months-jan-6-attack-capitol-0 (last visited September 6, 2024).

harmed Ms. Babbitt.  Instead, Mr. Babbitt appears to allege that Alam and Jones broke windows and then Ms. Babbitt came to harm when she "raised herself up into the opening of the right door sidelight."  Compl. ¶¶ 14, 49j; *see also id*. ¶¶ 65-72.  Imposing a duty to prevent third-party criminal acts because yet another individual may independently participate and build upon those criminal acts would entail an extraordinary extension of legal liability beyond the conceptual limits of foreseeability set by the D.C. Court of Appeals.  *See Freyberg*, 304 A.3d at 977–78 (explaining that "pure failure-to-protect cases" require a high bar of foreseeability to avoid "invit[ing] an absurd sprawl of liability whereby everyone is responsible for preventing all crimes at all times.") (citation omitted).  Indeed, if harm from the direct criminal acts of third parties rarely imposes liability, acts that indirectly lead to harm (and add causation steps) cannot support liability.  Mr. Babbitt's theory of liability has no private person analogy in the District of Columbia, and Count III should be dismissed.

### C.    The Eight Officers Breached No Duty to Ms. Babbitt Under a Reasonably Prudent Officer Standard.

The complaint posits that the United States is liable because its officers failed to act as "reasonably prudent officers."  *See, e.g.*, Compl. ¶¶ 63, 71, 72.  That is mistaken.  However, assuming that a "reasonably prudent police officer" standard is a permissible gloss on the FTCA's private person analog requirement, *see, e.g.*, *Lee v. United States*, 570 F. Supp. 2d 142, 151-52 (D.D.C. 2008), the District of Columbia's public duty doctrine forecloses Mr. Babbitt's negligence claim.  The eight officers had no duty "to protect [Ms. Babbitt] from harm," Compl. ¶ 63, in the circumstances alleged here.  The public duty doctrine mandates this conclusion because it holds that there is "no general duty to provide . . . police protection[] to any particular individual citizen[.]"  *Klahr v. Dist. of Columbia*, 576 A.2d 718, 720 (D.C. 1990) (quoting *Warren v. Dist. of Columbia*, 444 A.2d 1, 3 (D.C. 1981) (en banc)); *see also Warren*, 444 A.2d at

4 (explaining when a "governmental entity undertakes to furnish police services, it assumes a duty only to the public at large and not to individual members of the community."). Accordingly, officers have no general duty to "protect someone from harm." *Klahr*, 576 A.2d at 720.

This holds true even when an officer has contact with an individual incident to their on-scene responsibility. *See Warren*, 444 A.2d at 3 (interactions that are "part of the on-scene responsibility of the police . . . fail[] to create a relationship which imposes a special legal duty[.]"). "[T]he mere fact that an individual has emerged from the general public and become an object of the special attention of public employees does not create a relationship which imposes a special legal duty." *Hines v. Dist. of Columbia*, 580 A.2d 133, 136 (D.C. 1990). Such a duty arises only when police engage in "(1) a specific undertaking to protect a particular individual, and (2) [there is] justifiable reliance by the plaintiff." *Morgan v. Dist. of Columbia*, 468 A.2d 1306, 1312, 1314 (D.C. 1983) (holding that because an officer never "affirmatively indicat[ed] an intent to deploy the police department to assure [a wife's] safety," the officer was not liable to the wife even though she called him the day before and stated that she feared her husband would shoot her). The eight officers in this case therefore had no duty "to protect [Ms. Babbitt] from harm," Compl. ¶ 63, because, as officers merely responding to a call for units, they had "a duty only to the public at large," *Warren*, 444 A.2d at 4.

In *Miango v. D.R. Congo*, 243 F. Supp. 3d 113 (D.D.C. 2017), the court relied on similar reasoning in dismissing a negligence claim arising out of an assault committed by third parties at a protest. *Id.* at 133. It held that Secret Service officers had no duty "to arrest the attackers or prevent [a demonstrator's] attack" on the plaintiff because the claim was "expressly based on a failure to perform a general duty" owed to the public. *Id.* The allegation that the officers

observed the plaintiff being "kicked and stomped," yet "took no action," demonstrated an absence of "interaction between [the plaintiff] and the agents," and supported the "no duty" conclusion. *Id*. Here too, the alleged duty to protect Ms. Babbitt from harm is at best indistinguishable from a general duty to the public, which is not actionable in tort.

Mr. Babbitt's formulation of duty also risks an unprecedented expansion of liability in the police officer context. Effectively, despite Ms. Babbitt's own decision to "raise[] herself up into the opening of" a window unlawfully broken out by others who unlawfully entered the Capitol, Compl. ¶ 14, Mr. Babbitt suggests the United States should be liable based on the officers' proximity to the event. Not so. Ms. Babbitt's injury arose from her own decision to climb through a broken window during the chaotic and illegal intrusion into the Capitol. That decision severed any legal responsibility and underscores that the officers had no duty actionable in tort to "control, de-escalate, or stop Alam or Jones" or "to call for backup." Compl. ¶¶ 71-72; *see also id*. ¶¶ 14, 49j; *see Hundley v. Dist. of Columbia*, 494 F.3d 1097, 1105 (D.C. Cir. 2007) (rejecting negligence claim against an officer because a "plaintiff's intentional wrongful act [] eliminates a defendant's liability for the plaintiff's harm."). Accordingly, applying a "reasonably prudent officer" standard to Count III cannot save it from dismissal.

## II. The FTCA's Discretionary-Function Exception Bars Counts III, IV, and V.

The FTCA's discretionary-function exception provides yet another reason to dismiss Count III, as well as a basis to dismiss Count IV (negligent supervision, discipline, and retention) and Count V (negligent training). *See* 28 U.S.C. § 2680(a). Under this exception, the United States retains sovereign immunity over any claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." *Id*. When

the exception applies, federal courts do not have subject matter jurisdiction over the claim even if it is one otherwise cognizable under 28 U.S.C. § 1346(b)(1). *See Loumiet v. United States*, 828 F.3d 935, 941 (D.C. Cir. 2016).

The discretionary-function exception's purpose is to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. Gaubert*, 499 U.S. 315, 323 (1991) (quoting *Varig Airlines*, 467 U.S. at 814). "A factfinder's post-hoc determination in a lawsuit that governmental conduct fell short of standards of reasonable care, for example, should not be permitted to gainsay the contrary determination of officials vested with discretion to decide 'how best to accommodate' conflicting policy goals 'and the reality of finite agency resources.'" *Loumiet*, 828 F.3d at 941 (quoting *Berkovitz v. United States*, 486 U.S. 531, 537 (1988)).

The Supreme Court has adopted a two-part test to assess whether the discretionary-function exception immunizes the government from a tort claim. *See Berkovitz*, 486 U.S. at 536-37. First, courts ask whether the challenged action was a discretionary one—that is, it must involve an element of judgment or choice. *Loumiet*, 828 F.3d at 941. "It is the discretion of the executive or the administrator to act according to one's judgment of the best course, a concept of substantial historical ancestry in American law" that the Act protects. *Dalehite v. United States*, 346 U.S. 15, 34 (1953). If an element of judgment or choice is involved, courts turn to the second step to determine "whether the 'judgment is of the kind that the discretionary function exception was designed to shield,' . . . that is, whether the actions or decisions 'were within the range of choice accorded by federal policy and law and were the results of policy determinations.'" *Loumiet*, 828 F.3d at 942 (quoting *Gaubert*, 499 U.S. at 322-23, and *Berkovitz*, 486 U.S. at 536, 538).

16

The second step focuses "not on the agent's subjective intent in exercising the discretion conferred by statute or regulation," nor on whether the government's agent actually considered policy factors, but rather "on the nature of the actions taken and on whether they are susceptible to policy analysis." *Gaubert*, 499 U.S. at 325. Similarly, "[i]t is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case." *Varig Airlines*, 467 U.S. at 813; *see also Gaubert*, 499 U.S. at 325. If the two-part test is satisfied, the government is immune from suit and the court lacks subject matter jurisdiction. *See Loumiet*, 828 F.3d at 942; *Shuler*, 531 F.3d at 935.

### A. Negligence of the Additional Eight Federal Employees (Count III)

Mr. Babbitt's allegations that Lively, Yetter, Lanciano, Gandolph, Robbs, Sikes, Smith, and Brown acted negligently fall within the FTCA's discretionary-function exception. The complaint's Count III faults these eight federal employees for failing to stop or otherwise de-escalate the behavior of rioters Alam and Jones. *See* Compl. ¶¶ 69-72 (alleging these employees failed to "control, de-escalate, or stop Alam or Jones"). There is no question that the conduct of the rioters was criminal and that they could have been arrested on the spot. But whether to arrest Alam, Jones, Ms. Babbitt, or any other intruders at the Capitol at the time involved discretionary judgments susceptible to analysis in policy terms. In responding to a riot, officers on the scene necessarily have to balance various public safety considerations, including the impossibility of arresting hundreds of rioters overrunning the Capitol and the possibility that immediate arrests might divert officers from protecting members of Congress and their staff or that arrests might provoke violent resistance. The discretionary-function exception therefore bars Count III.

Whether to take particular action toward specific criminal suspects in the midst of a "riot at the United States Capitol," *United States v. Nassif*, 97 F.4th 968, 971 (D.C. Cir. 2024),

indisputably involves an "element of judgment or choice."  *Berkovitz*, 486 U.S. at 536.  The Capitol Police are empowered to "make arrests within the United States Capitol Buildings and Grounds for any violations of any law of the United States, of the District of Columbia, or of any State, or any regulation promulgated pursuant thereto[.]"  2 U.S.C. § 1961.

That Capitol Police Officers were authorized to arrest Alam and Jones, however, did not obligate them to do so at the time.  Mr. Babbitt has identified no mandatory directive or policy that prescribes a specific course of action for these Capitol Police or House Sergeant at Arms employees to follow in dealing with the attack on the Capitol, let alone one that mandated an arrest under the circumstances.  As one Court of Appeals observed in concluding that park rangers had discretion to decide when and whether to make, or terminate, an arrest: "It would be impossible to put into a manual every possible scenario a ranger might encounter, and then to decide in advance for the ranger whether an arrest should be made[.]"  *Deuser v. Vecera*, 139 F.3d 1190, 1195 (8th Cir. 1998).  The law in this Circuit is similar.  *See Shuler v. United States*, 531 F.3d 930, 934 (D.C. Cir. 2008) (explaining that no law or policy mandated a course of action regarding the timing of arresting suspects, nor did plaintiff even try to argue that the decision to arrest at the time the government did "was anything other than an exercise of its lawful discretion to decide when best to arrest a dangerous criminal suspect."); *accord United States v. Faneca*, 332 F.2d 872, 875 (5th Cir. 1964) (holding that discretionary-function exception applied based on federal marshals' response to a riot because "[i]t is clear that the United States has a duty to maintain law and order and to enforce the commands of its courts; just how best to fulfill this duty is wholly within the discretion of its officers."); *cf. Usoyan v. Republic of Turkey*, 6 F.4th 31, 39 (D.C. Cir. 2021) (observing "there is little debate that the government has discretion when it … arrests a criminal suspect….  In FTCA cases, analysis of *Berkovitz*'s first condition

generally focuses on whether the government's discretion is altered or removed by law or policy rather than its discretion *in initio*.").

Additionally, whether to stop or arrest criminals like Alam or Jones at the time required judgments susceptible to policy analysis.  The D.C. Circuit has said that "[d]ecisions regarding the timing of arrests are the kind of discretionary government decisions, rife with considerations of public policy, that Congress did not want the judiciary second-guessing."  *Shuler*, 531 F.3d at 934.  In *Shuler*, the plaintiff was working as an FBI informant.  *Id.* at 932.  He told his handlers the whereabouts of a notorious crime boss.  *Id.*  He also asked that the crime boss not be arrested immediately because the plaintiff alone knew the crime boss's whereabouts and the arrest would "blow his cover."  *Id.*  Soon after the government arrested the crime boss, the plaintiff was shot in the back, paralyzing him.  *Id.*  He brought a negligence claim under the FTCA.  *Id.* at 933. The plaintiff contended that the FBI's "hasty arrest blew his cover and led [the crime boss] to order his murder."  *Id.*  The D.C. Circuit disposed of the plaintiff's negligence claim to the extent it challenged the FBI agents' decision to immediately arrest the crime boss: "We think it plain that the government's decision to arrest Gray at the time it did falls within the discretionary function exception."  *Id.* at 934.  It explained that the decision as to when to apprehend a suspect was an exercise of the FBI agents' lawful discretion and that such decisions are "rife with considerations of public policy."  *Id.*; *see also Dupris v. McDonald*, 554 F. App'x 570, 573 (9th Cir. 2014) ("[D]eterminations of whom to arrest and when to arrest them c[o]me within the discretionary function exception."); *Olaniyi v. Dist. of Columbia*, 763 F. Supp. 2d 70, 88-89 (D.D.C. 2011) (cleaned up) (explaining that Capitol Police's decision to detain and arrest the plaintiff in the Capitol Building "falls well within the scope of the discretionary function" because "decisions regarding the timing of arrests are the kind of discretionary government

decisions, rife with considerations of public policy, that Congress did not want the judiciary

second guessing."); *cf. Martinez v. United States*, 587 F. Supp. 2d 245, 248-49 (D.D.C. 2008)

(concluding that discretionary-function exception applied to negligence claim based on FBI's

alleged failure to investigate plaintiff's allegations that she was being victimized and subjected to

hate crimes).  Whether or not to take action at the time against Alam or Jones was a discretionary

judgment that likewise fits neatly within the exception.

Under these precedents the decisions not to promptly arrest Alam and Jones or to take

other actions that might have altered events entailed discretionary judgments susceptible to

policy analysis.  Such decisions implicate a bevy of competing policy considerations.  They

include: the physical protection of Members of Congress; the physical safety of officers; the

protection of government property; which individuals to arrest, if any; how to prioritize arrests in

the midst of a riot; whether making arrests or taking other affirmative action would put the

officers or others in greater physical danger; whether physically stopping certain conduct was

tactically feasible; the allocation of personnel and resources; and more.  The decision whether to

respond to specific crimes or to take or refrain from taking certain actions to protect others was

one rooted in policy considerations.  The discretionary-function exception accordingly shields

the eight employees' actions from challenge in a negligence suit.  *See, e.g.*, *Hart v. United States,*

630 F.3d 1085, 1090 (8th Cir. 2011) ("We readily conclude a federal law enforcement officer's

on-the-spot decisions concerning how to effectuate an arrest—including how best to restrain,

supervise, control or trust an arrestee—fall within the discretionary function exception to the

FTCA absent a specific mandatory directive to the contrary."); *Alfrey v. United States*, 276 F.3d

557, 562-65 (9th Cir. 2002) (holding that correctional officers have discretion in determining

how to respond to inmate threats because an "officer must set priorities among all extant risks:

the risk presented by the reported threat, along with the other risks that inevitably arise in a prison."); *Buchanan v. United States*, 915 F.2d 969, 972 (5th Cir. 1990) ("Prison officials' minute-to-minute decision making in the chaotic circumstances of a riot is a classic example of an activity requiring the exercise of discretion .... We do not believe that Congress meant for judges, through hindsight, to second-guess such difficult decisions.").  Count III challenges the kinds of official actions quintessentially covered by the FTCA's discretionary-function exception.  Accordingly, Count III should be dismissed for lack of subject matter jurisdiction.

### B.  Negligent Training and Negligent Supervision, Discipline, and Retention of Lt. Byrd (Counts IV and V).

The FTCA's discretionary-function exception also bars Mr. Babbitt's claims of negligent supervision, discipline, retention, and training based on acts or omissions of the Capitol Police and Capitol Police Board.  "In this circuit, federal government hiring and employee supervision decisions are generally held to involve the exercise of political, social, or economic judgment" that the discretionary-function exception shields.  *Smith v. United States*, 157 F. Supp. 3d 32, 42 (D.D.C. 2016); *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1217 (D.C. Cir. 1997); *see also Miller v. United States*, 992 F.3d 878, 886, 888 (9th Cir. 2021); *M.D.C.G. v. United States*, 956 F.3d 762, 772 (5th Cir. 2020) (collecting cases across the U.S. Courts of Appeal); *Gordo-González v. United States*, 873 F.3d 32, 37 (1st Cir. 2017); *Sydnes v. United States*, 523 F.3d 1179, 1185–86 (10th Cir. 2008) ("We have previously and unqualifiedly held that decisions regarding employment and termination—the kind of conduct at issue here—are precisely the types of administrative action the discretionary function exception seeks to shield.") (cleaned up).  This is unsurprising because an element of policy judgment or choice is inherent in whether to hire, retain, or discipline federal employees.

Hiring, retention, and disciplinary decisions require federal agencies to make a host of judgments evaluating factors such as qualifications, personal attributes, specialized skills, mitigating circumstances, the needs of the workforce at the time of decision, and more.  Mr. Babbitt does not identify any statute, regulation, or policy that specifically prescribes how the Capitol Police should oversee its employees or any mandatory course of action as it relates to training that was not followed.  *Cf. Berkovitz*, 486 U.S. at 536 ("[T]he discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow.").  Instead, he asserts that the Capitol Police's training was "obviously deficient" and the Capitol Police should not have retained Lt. Byrd as an employee due to his alleged dangerous or incompetent behavior.  Compl. ¶¶ 77-83, 89-92.  That is not the standard.  *Gaubert* and other precedents require an assessment of whether the alleged decision was susceptible to policy judgment, not whether the judgment was negligently made.  *See Gaubert*, 499 U.S. at 325; *Loumiet*, 828 F.3d at 941.

As explained above, when an element of choice is involved, the relevant inquiry becomes whether the official actions at issue are, by their nature, susceptible to policy analysis.  In *Burkhart*, the D.C. Circuit reversed a decision that had permitted negligent hiring, training, and supervision claims against the Washington Metro Area Transit Authority.  112 F.3d at 1217.  The WMATA Compact retains sovereign immunity for "governmental functions," and the D.C. Circuit applies the *Gaubert* discretionary-function analysis to determine whether some WMATA functions qualify.  *Id*. at 1216.  Applying *Gaubert*, the *Burkhart* court held that "decisions concerning the hiring, training, and supervising of WMATA employees are discretionary in nature, and thus immune from judicial review."  *Id*. at 1217.  It also concluded that hiring, training, and supervising choices are susceptible to policy judgment.  *Id*.  It explained that

"supervision decisions involve a complex balancing of budgetary considerations, employee privacy rights, and the need to ensure public safety…. Such decisions are surely among those involving the exercise of political, social, or economic judgment." *Id.* Accordingly, the D.C. Circuit determined that the court lacked subject matter jurisdiction over the negligent hiring, training, and supervision claims. *Id*.

In the wake of *Burkhart*, "[c]ourts within this District have heeded this directive and consistently held that government hiring and employee supervision decisions … fall within the scope of the United States' sovereign immunity." *Buie v. United States*, No. 22cv3501, 2024 WL 519593, at *4 (D.D.C. Feb. 9, 2024) (internal quotation marks omitted), *appeal filed*, No. 24-5057 (D.C. Cir. Mar. 21, 2024); *Smith*, 157 F. Supp. 3d at 42 (similar). In *Harper v. United States*, for example, families of Army personnel killed by an Army officer in a shooting at Fort Hood, Texas, brought negligent retention and supervision claims under the FTCA. No. 12cv1802, 2020 WL 4192540, at *5-6, 8 (D.D.C. Jul. 21, 2020). They argued that the Department of Defense and U.S. Army were aware of the officer's radicalization toward violent extremism and that the government should have removed him from military service. *Id*. In evaluating whether the discretionary-function exception applied, the court explained that the relevant inquiry was whether the officials were mandated to take a particular course of action and whether such personnel decisions involved the exercise of political, social, or economic judgment. *Id*. The court observed that decisions as to whether to retain, discipline, or discharge an employee were discretionary and involve the balancing of "competing policies and considerations" including such factors as budgetary constraints, individual backgrounds, experience, and employer intuition. *Id*. Because the actions fell within the discretionary-function exception, the court dismissed the negligent retention and supervision claims for lack of

subject matter jurisdiction. *Id.*; *see also Tookes v. United States*, 811 F. Supp. 2d 322, 330 (D.D.C. 2011) (dismissing claims that U.S. Marshals negligently supervised deputy marshals because *Burkhart*'s analysis was equally applicable to the U.S. Marshals Service).  Decisions about whether to retain, discipline, or how best to supervise an employee are choices susceptible to policy judgment and thus covered by the exception.

As the D.C. Circuit recognized in *Burkhart*, the type and extent of training a federal agency provides to its employees is susceptible to policy analysis, too.  That is because "[t]he extent of training with which to provide employees requires consideration of fiscal constraints, public safety, the complexity of the task involved, the degree of harm a wayward employee might cause, and the extent to which employees have deviated from accepted norms in the past." 112 F.3d at 1217.  The balancing of such policy-laden factors like these pervades training decisions across federal agencies.  For example, in *Gager v. United States*, 149 F.3d 918 (9th Cir. 1998), the plaintiffs sued the United States under the FTCA after the United States Postal Service delivered a mail bomb to their home, causing serious personal injuries and damage to their property.  *Id.* at 919.  The plaintiffs asserted negligent training and supervision claims, faulting the Postal Service's decision not to provide universal training and supervision in mail bomb detection and disposal.  *Id.* at 920.  The Ninth Circuit explained that, in choosing not to provide such training, the Postal Service would have had to balance a range of competing concerns such as the safety of its employees, the safety of the public, the serious personal and property damage bombs could cause, the significant resources and time training would involve, and the privacy interests of its customers.  *Id.* at 921.  The Ninth Circuit therefore concluded that the Postal Service's training and supervision decisions were grounded in "social, economic, and political policy" and barred by the exception.  *Id.* at 922.  Decisions from this Court have held

similarly.  *See Bostic v. U.S. Capitol Police*, 644 F. Supp. 2d 106, 110 (D.D.C. 2009)

(concluding that the U.S. Capitol Police's "training and supervision of employees is exactly the

kind of discretionary function that is not subject to judicial second-guessing"); *Smith*, 157 F.

Supp. 3d at 42 (denying motion to amend complaint to add failure to train claim because

decisions about training employees rests on "political, social, or economic judgment."); *Tookes*,

811 F. Supp. 2d at 330-31 (same); *Bragdon v. United States*, 537 F. Supp. 2d 157, 160-61

(D.D.C. 2008) (dismissing negligent hiring, training, and supervision claims as barred by the

discretionary function exception because the FBI must weigh a variety of factors in making its

decisions and "such decisions are surely based on considerations of public policy").

The official decisions and actions challenged in Mr. Babbitt's negligent supervision,

discipline, retention, and training claims are susceptible to policy analysis and therefore fall

within the FTCA's discretionary-function exception.  Counts IV and V therefore should be

dismissed because the Court lacks subject matter jurisdiction over them.

## CONCLUSION

For the foregoing reasons, the United States' motion to dismiss should be granted and

Counts III, IV, and V dismissed.

Dated: September 6, 2024                    Respectfully submitted,

                                            BRIAN M. BOYNTON
                                            Principal Deputy Assistant Attorney General,
                                            Civil Division

                                            C. SALVATORE D'ALESSIO, JR.
                                            Director, Torts Branch, Civil Division

                                            RICHARD MONTAGUE
                                            Senior Trial Counsel

*/s/ Sarah E. Whitman*
SARAH E. WHITMAN
MA Bar 657726
Senior Trial Counsel, Torts Branch, Civil Division
United States Department of Justice
175 N Street, NE
Washington, DC 20002
Tel: (202) 616-0089; F: (202) 616-4314
Sarah.whitman@usdoj.gov

*/s/ Joseph A. Gonzalez*
JOSEPH A. GONZALEZ
D.C. Bar No. 995057
Trial Attorney, Torts Branch, Civil Division
United States Department of Justice
175 N Street, NE
Washington, DC 20002
Tel: (202) 598-3888; F: (202) 616-4314
Joseph.a.gonzalez@usdoj.gov

*Counsel for Defendant United States of America*