**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

ESTATE OF ASHLI BABBITT and
AARON BABBITT, individually and on
behalf of the ESTATE OF ASHLI
BABBITT,

                          Plaintiffs,          Case No. 1:24-cv-01701-ACR

    v.

UNITED STATES OF AMERICA,

                          Defendant.
_____ /

**PLAINTIFFS' MOTION FOR**
**JURISDICTIONAL DISCOVERY ON COUNTS III, IV, AND V**
**AND MEMORANDUM IN SUPPORT**

    Plaintiffs Estate of Ashli Babbitt and Aaron Babbitt, individually and on behalf of the

Estate of Ashli Babbitt, respectfully move for an order permitting jurisdictional discovery on

Counts III, IV, and V.  The grounds for this motion are set forth in the accompanying

memorandum of points and authorities.  A proposed order is attached.

**CERTIFICATE OF CONFERRAL**

    Counsel for Plaintiffs conferred with counsel for Defendant and was advised the

government opposes the relief requested herein.

Dated:  October 4, 2024                    Respectfully submitted,

                                           JUDICIAL WATCH, INC.

                              By:    */s/ Robert Patrick Sticht.*

ROBERT PATRICK STICHT
D.C. Bar No. 423395
Judicial Watch, Inc.
425 Third Street SW, Suite 800
Washington, D.C. 20024
(202) 646-5172
rsticht@judicialwatch.org

Attorney for Plaintiffs Estate of Ashli
Babbitt and Aaron Babbitt

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................................................ii

ARGUMENT ....................................................................................................................1

I.  COUNT III ALLEGES AN ACTIONABLE LEGAL DUTY FOR
    WHICH JURISDICTIONAL DISCOVERY IS REQUIRED ...................................1

II. A MERITS EVALUATION OF THE APPLICABILITY OF THE
    DISCRETIONARY FUNCTION EXCEPTION TO COUNTS III, IV,
    AND V IS PREMATURE AND MUST AWAIT
    JURISDICTIONAL DISCOVERY..........................................................................4

CONCLUSION................................................................................................................13

# TABLE OF AUTHORITIES

## Cases

*Berkovitz v. United States*,
   486 U.S. 531 (1988) ................................................................................................5,12

*Bethel v. Rodriguez*,
   2021 U.S. Dist. LEXIS 68819 (D.D.C. 2021) .................................................................1,2,4

*Bragdon v. United States*,
   537 F. Supp. 2d 157 (D.D.C. 2008) ..............................................................................7

*Briscoe v. United States*,
   268 F. Supp. 3rd 1 (D.D.C. 2017) ................................................................................5

*City of Canton v. Harris*,
   489 U.S. 378 (1989) .....................................................................................................9

*Cope v. Scott*,
   45 F.3d 445 (D.C. Cir. 1995) ........................................................................................8

*Coulthurst v. United States*,
   214 F.2d 106 (2nd Cir. 2000) ...................................................................................9,11

*Dalehite v. United States*,
   346 U.S. 15 (1953) .......................................................................................................4

*Graham v. Connor*,
   490 U.S. 386 (1989) ..................................................................................................6,7

*Ignatiev v. United States*,
   238 F.3d 464 (D.C. Cir. 2001) .....................................................................................6

*Judicial Watch, Inc. v. United States Capitol Police*,
   D.D.C. Dkt. No. 21-cv-0401-ACR ...............................................................................2

*Kosak v. United States*,
   465 U.S. 848 (1984) .....................................................................................................4

*Loughlin v. United States*,
   393 F.3d 155 (D.C. Cir. 2004) ...................................................................................6,8

*Loumiet v. United States*,
   828 F.3d 935 (D.C. Cir. 2016) .................................................................................5,6,7

*Marusa v. District of Columbia*,
    484 F.2d 828 (D.C. Cir. 1973)....................................................................................2

*Olanyi v. District of Columbia*,
    763 F.Supp. 2d 106 (D.D.C. 2011) ...........................................................................9

*Sherrod v. McHugh*,
    2017 U.S. Dist. LEXIS 20981 (D.D.C. 2017) ...........................................................1

*Sledge v. Fed. Bureau of Prisons*,
    2013 U.S. App. LEXIS 25940, *14 (D.C. Cir. 2013) ...............................................12

*Tennessee v. Garner*,
    471 U.S. 1 (1985)........................................................................................................6

*United States v. Gaubert*,
    499 U.S. 315 (1991) ...........................................................................................5,10,12

## **Statutes**

28 U.S.C. § 2680(a) ............................................................................................1,4,11

## **Rules**

Fed. R. Civ. P. 12(b)(1) ...........................................................................................4

**ARGUMENT**

The government seeks to dismiss three of the seven counts alleged in the Complaint. None of the counts for which dismissal is sought involve negligent and/or intentional actions of Capitol Police Officer Michael Byrd in regards to Ashli Babbitt on January 6, 2021 as set forth in Counts I and II; nor do they directly involve the fatal shooting itself.  In seeking dismissal of Counts III, IV, and V, the government invokes the discretionary function exception ("DFE") to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2680(a).  Additionally, as regards Count III, the government asserts that the Complaint does not allege an actionable legal duty under D.C. law.

I.      **COUNT III ALLEGES AN ACTIONABLE LEGAL DUTY FOR WHICH JURISDICTIONAL DISCOVERY IS REQUIRED.**

The analogous case is *Bethel v. Rodriguez*, 2021 U.S. Dist. LEXIS 68819 (D.D.C. 2021). Plaintiff Bethel successfully alleged and argued that Metropolitan Police Department ("MPD") Officer Rodriguez "fail[ed] to thoroughly investigate" a warrant for his arrest for stealing an air conditioner unit from Home Depot in Northeast Washington, D.C.  Bethel invoked "the uniform standard of care for suits against police officers," the Court said, "'that of a reasonable police officer under the circumstances.'"  *Id*. at \*15 (*quoting Sherrod v. McHugh*, 2017 U.S. Dist. LEXIS 20981, \*6 (D.D.C. 2017).  Before the Court was MPD's motion to dismiss.  "'At this stage of the proceedings, before expert witnesses have been identified and expressed their opinions about the applicable standard of care, no more is required.'"  *Id*. (*quoting Sherrod*).

Plaintiff Bethel also overcame the public duty doctrine, which the Court said did not apply where the alleged harm was brought about directly by the officer himself.  *Id*. at \*17.  The Court also specifically rejected MPD's argument that "the public duty doctrine covers instances where the plaintiff contends that a defendant police officer failed to do what reasonably prudent

*police* employees would have done in similar circumstances." *Id*. at *16 (cleaned up). "This overbroad articulation of the doctrine would absurdly absolve police employees from negligence claims in almost all scenarios." *Id*. The Court then noted that Bethel's claim "does not concern a duty owed to the public at large but rather 'a duty to conduct a full and complete investigation of individual allegations against him.'" *Id*. (*quoting* Bethel's brief). [1]

Bethel relied on an MPD policy as evidence of a national standard of care for issuing and serving arrest warrants, which must be based on probable cause that would lead a reasonable, prudent, and cautious police officer to believe a crime has been committed. However, the existence of the MPD policy was not essential for two reasons: first, the MPD raised it in its argument that policies cannot establish a standard of care (*negligence per se*); and second, the Court said that pleading the "uniform standard" of a reasonable, prudent, and cautious police officer was sufficient at the pleading stage. *Id*. at *15.

Plaintiffs Estate of Ashli Babbitt and Aaron Babbitt are in a comparatively disadvantaged position at the pleading stage in this case. The United States Capitol Police is not a transparent law enforcement organization. Its directives, policies, and procedures (including SOPs) are not publicly available, nor are they subject to FOIA, and Capitol Police resists requests for records under the common law right of access on various grounds, including sovereign immunity and that such records are not public records. *See e.g., Judicial Watch, Inc. v. United States Capitol*

---

[1] In *Marusa v. District of Columbia*, 484 F.2d 828, 831 (D.C. Cir. 1973), the Court held that the District of Columbia has a duty to minimize the risk of injury to members of the public that is presented by MPD's policy that requires police officers to carry their service revolvers. If Capitol Police had a similar policy in effect on January 6, 2021, then by analogy to *Marusa* it owed a duty to minimize the risk of injury to Ashli, including through the actions of the Count III officers. If discovery shows, as Plaintiffs believe it will, that one or more officers inside the lobby opposite the officers guarding the doors had service weapons drawn the Count III officers also would have had a duty to warn Ashli that she would be shot.

*Police*, D.D.C. Dkt. No. 21-0401-ACR, ECF 12 (Capitol Police memorandum in support of motion for summary judgment regarding request for January 6, 2021 electronic communications and surveillance video footage).  Discovery is necessary to determine the existence and nature of Capitol Police policies and procedures and whether the Count III officers conformed their conduct to them.

In the meantime, Ashli has alleged the subjects of relevant policies and procedures that constitute evidence of a national standard of care.  *See* Compl. ¶¶ 89-93.  At this early stage, Count III is sufficiently pled because the Complaint alleges both that the officers failed to conform their conduct to the "uniform standard of care for suits against police officers" – that of a reasonable police officer under the circumstances of the First Amendment demonstration at the scene of the unlawful, fatal shooting, *id*. ¶¶ 71-72, and that their actions fell below the national standard of care concerning threat analysis and perception, situational awareness, verbal commands and subject control, crowd control, de-escalation techniques, and communications, among others.  Id. ¶¶ 89-93.  The Complaint also alleges that the officers violated an order to guard and hold the lobby doors and quotes the statements of two officers who admitted to investigators that the doors should not have been abandoned.  *Id*. ¶ 92.  The actions of the officers at the scene led directly and foreseeably to the unlawful, fatal shooting of Ashli Babbitt.

In other words, the officers created the risk of death or serious bodily harm to Ashli when they left the doors in the hands of two violent demonstrators and the police protection of Officer Byrd, a reckless officer with a history of prior misconduct involving firearm safety who was wearing a suit, tie, and Covid mask and lurking in a blind corner, determined to shoot any demonstrator who attempted entry at the doorway, including an innocent, unarmed young woman that flees to safety from the hallway as someone in the hallway yells, "he's got a gun."  "At this

stage of the proceedings, before expert witnesses have been identified and expressed their opinions about the applicable standard of care, no more is required."  *Bethel* at \*15 (cleaned up).

## II.     A MERITS EVALUATION OF THE APPLICABILITY OF THE DISCRETIONARY FUNCTION EXCEPTION TO COUNTS III, IV, AND V IS PREMATURE AND MUST AWAIT JURISDICTIONAL DISCOVERY.

The FTCA exempts from its broad sovereign immunity waiver any claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."  28 U.S.C. § 2680(a).  The discretionary function exception is a tool used by the government in having FTCA lawsuits dismissed in whole or in part under Rule 12(b)(1) of the Federal Rules of Civil Procedure on the basis of an alleged lack of subject matter jurisdiction. If a court grants a motion to dismiss based upon the DFE, the court is deciding that the United States has not waived sovereign immunity for the claim because the government's actions are discretionary in nature and grounded in public policy, and thus expressly barred by the FTCA. The exemption shields the government from tort liability even if the court finds that the discretion in question was abused.

The DFE must not be read in a way that would nullify the exception through judicial interpretation, but an unduly generous interpretation of the exception runs the risk of defeating the central purpose of the FTCA.  *See Kosak v. United States*, 465 U.S. 848, 853 n.9 (1984). "We think that the proper objective of a court attempting to construe one of the subsections of 28 U.S.C. § 2680 is to identify 'those circumstances which are within the words and reason of the exception' – no less and no more.  Id. (*quoting Dalehite v. United States*, 346 U.S. 15, 31 (1953).

The U.S. Supreme Court has adopted a two-prong test to determine whether the DFE applies to a particular claim.  First, courts must ask whether the challenged action is discretionary, *i.e.*, involves an element of judgment or choice.  If an element of judgment or

choice is involved, courts then turn to the second prong to determine whether the "'judgment is of the kind that the discretionary function exception was designed to shield,'" *United States v. Gaubert*, 499 U.S. 315, 322-323 (1991) (*quoting Berkovitz v. United States*, 486 U.S. 531, 536 (1988)), "that is, whether the actions or decisions 'were within the range of choice accorded by federal policy and law and were the results of policy determinations.'" *Loumiet v. United States*, 828 F.3d 935, 942 (D.C. Cir. 2016) (*quoting Berkovitz*, 486 U.S. at 538). "Because the purpose of the exception is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort, when properly construed, the exception protects only governmental actions and decisions based on considerations of public policy." *Gaubert*, 499 U.S. at 323 (internal quotations and citations omitted).

Regarding the first prong, while negligence and negligent supervision, discipline, retention, and training claims may fall within the DFE broadly speaking, such determinations turn on whether actions taken were truly discretionary or whether regulations, statutes, the constitution, or internal rules, policies, and procedures contain mandatory actions that were not followed. Jurisdictional discovery, including facts that are necessary to establish jurisdiction, is required in this case to determine the existence of such rules and procedures, [2] whether they allow for discretion, and, importantly, whether Capitol Police violated any mandatory actions. The factual predicate is critical to an accurate analysis of the nature of the actions taken or decisions made. A merits ruling on the DFE regarding Counts III, IV, and V should await Plaintiffs' discovery in this regard. *See Briscoe v. United States*, 268 F. Supp. 3rd 1, 12-14 (D.D.C. 2017) ("the standard for permitting jurisdictional discovery in this Circuit is quite

---

[2]   See discussion, supra, regarding non-transparency of Capitol Police policies and procedures.

liberal."); *Ignatiev v. United States*, 238 F.3d 464, 467 (D.C. Cir. 2001) (reversing the district court's decision in FTCA case to decline to permit discovery regarding whether mandatory internal guidelines existed"); *Loughlin v. United States*, 393 F.3d 155, 167 (D.C. Cir. 2004) ("Even in *Ignatiev*, however, we recognized that where facts are necessary to establish jurisdiction, plaintiffs must be afforded the opportunity for discovery of such facts prior to the granting of a motion to dismiss for lack of subject matter jurisdiction.") (cleaned up).

Regarding the second prong, in *Loumiet*, the D.C. Circuit held that the DFE does not bar an FTCA tort claim where the challenged exercise of discretion allegedly exceeded the government's constitutional authority to act.  828 F.3d at 942-943.  Officer Byrd's decision to shoot Ashli Babbitt was proscribed by *Graham v. Connor*, 490 U.S. 386 (1989), and *Tennessee v. Garner*, 471 U.S. 1 (1985), a pair of cases in which the U.S. Supreme Court holds that, for a seizure to comport with the Fourth Amendment, it must be reasonable under the totality of the circumstances.  Deadly force is only authorized where the subject of such force poses an imminent threat of death or serious bodily harm to the officer or to a third party.  Under *Loumiet*, the DFE does not apply to Counts I and II, and the government has not moved to dismiss those counts.

Just as the DFE does not shield Counts I and II, since each such claim addresses actions taken by Officer Byrd in violation of the Fourth Amendment, it also would not shield the retention of Officer Byrd under the circumstances alleged in Count IV of the Complaint where the Capitol Police decided to retain him in a law enforcement position after learning he had previously violated the constitution when employing deadly force where it was not justified. Compl. ¶¶ 80-83.  Further developing this point, prong two of the DFE requires the court to determine whether the "judgment is of the kind that the discretionary function exception was

designed to shield." *Loumiet*, 828 F.3d at 942.  In examining past instances of conduct by Officer Byrd in which he employed his firearm in situations where it was not justified, the Capitol Police was negligent in retaining him in a law enforcement officer capacity where previous conduct displayed a constitutional violation.  The decision to retain an employee, though normally falling within the DFE broadly speaking, would not be protected because the employee's actions violated the constitution.

The fatal shooting of Ashli Babbitt illustrates the dire consequences of retaining an employee as an officer when he has shown a propensity to violate the constitution and employ deadly force recklessly.  While "the degree of harm a wayward employee might cause" and "the extent to which employees have deviated from accepted norms in the past" are *considerations* of public policy, s*ee Bragdon v. United States*, 537 F. Supp. 2d 157, 160 (D.D.C. 2008), the *decision* to retain may not ignore the constitutional violation context.  *See Cope v. Scott*, 45 F.3d 445, 451 (D.C. Cir. 1995) ("While it may be true, as the government claims, that the placement of signs involves judgments because engineering and aesthetic concerns determine where they are placed, such judgments are not necessarily protected from suit; only if they are 'fraught with public policy considerations' do they fall within the exception[.]").  The decision to retain Officer Byrd is not of the kind that the DFE was designed to shield because it is not "fraught with public policy considerations."  In its proper context, that decision serves no legitimate public policy.  In fact, it's tantamount to an official policy authorization for application of deadly force in contravention of the constitution as interpreted by the U.S. Supreme Court in *Graham* and *Garner*.

Jurisdictional discovery is required to determine the predicate facts of all prior acts of misconduct and/or firearms discharges by Officer Byrd, either on or off duty, how these incidents

were managed, *i.e.*, supervision, discipline, and retention, and the dispositions of these incidents. *See Loughlin*, 393 F.3d at 166-167 ("There are situations, however,  where the factual predicate is critical to an accurate analysis of the nature of the decision made."); *Cope*, 45 F.3d 445 (D.C. Cir. 1995) (rejecting the government's purported policy justification for its decision regarding sign placement (aethestics and engineering considerations) in light of the factual context (the presence of multiple signs on the same stretch of road)).

Such discovery is also necessary to determine whether any regulations, policies, or procedures applied when an employee was found to have intentionally discharged a weapon contrary to policy, whether disciplinary actions were mandatory, and whether policies were followed.  Captiol Police policy might have required Officer Byrd's dismissal for prior acts involving discharge of a firearm in violation of the constitution.  If such rules do not exist, public policy is not served by retaining and continuing to provide a firearm to an employee who has demonstrated violations of constitutional prohibitions on use of deadly force.  The Capitol Police cannot ignore the constitutional standard in making employment decisions.

Similarly, jurisdictional discovery is necessary to determine whether the deadly force training provided by Capitol Police meets constitutional requirements, and whether any Capitol Police regulations, policies, or procedures applied regarding deadly force training, whether they were mandatory, and whether they were followed.  The need for such discovery as pertains to deadly force training is underscored by Officer Byrd's statement that in shooting Ashli Babbitt, a non-violent unarmed person, he was following his training.  Compl. ¶¶ 88-89.  That statement is evidence of a constitutional deficiency in training not shielded by the DFE.  Such discovery would include the actual materials used for deadly force training, the deployment of such

materials live and/or online, and training attendance logs or other evidence that Officer Byrd attended such training.

Records of how Capitol Police handled all prior instances of intentional or non-intentional discharges of a firearm by officers on or off duty are necessary to determine whether a pattern exists and thus a policy of ignoring a constitutional standard. *Cf. City of Canton v. Harris*, 489 U.S. 378 (1989) (municipality may be liable for constitutional violations resulting from its inadequate training); *Olanyi v. District of Columbia*, 763 F.Supp. 2d 106 (D.D.C. 2011) (liability may result for failure to train in such a manner as to show deliberate indifference to the risk that not addressing the training will result in constitutional violations).

Regarding Count III negligence claim, while decisions pertaining to the actions of the officers may fall within the ambit of the DFE broadly speaking, negligent or reckless conduct is not protected. In *Coulthurst v. United States*, 214 F.2d 106 (2nd Cir. 2000), an inmate at FCI Danbury suffered a torn rotator cuff in his left shoulder and various injuries to his back and neck while lifting weights in the prison exercise room. The cable connecting the steel pull-down bar to the weights snapped, bringing the bar down on his shoulders and neck with approximately 270 pounds of force. Prison guidelines required that the exercise room and equipment be visited and inspected. Plaintiff Coulthurst alleged that the prison was negligent and careless in failing to diligently and periodically inspect the weight equipment and the cable and further failed to replace the cable after undue wear and tear. The Second Circuit reversed the district court's dismissal of his complaint on the basis of both prongs of the DFE.

The Court found the complaint susceptible to various readings. "There are numerous potential ways in which an inspector's 'carelessness' may have triggered the accident. The operative words of the complaint – 'negligence and carelessness' in the 'failure to diligently and

periodically inspect the weight equipment and cable' – encompass the possibility of various different types of careless and negligent conduct." *Id.* at 109.  The Court then discussed the types of negligence that are protected by the DFE and those which fall outside its reach.

> On the one hand, the person charged with designing inspection procedures might have designed procedures that were deficient in that an inspector following those procedures would be likely to overlook, or fail to appreciate, a latent danger resulting from a frayed or strained cable.  Similarly, the person deciding how frequently the inspection should be conducted might be negligent in that reasonable precaution might require more frequent inspections than provided in the schedule.  We assume that if the negligence or carelessness involved in the case were of those sorts, the United States would be shielded from suit by the DFE.  These types of negligently made decisions would involve elements of judgment or choice, would not be compelled by statute or regulation, and would be grounded in considerations of public policy since they would involve choices motivated by considerations of economy, efficiency, and safety.
>
> On the other hand, the complaint's allegations of negligence and carelessness in the failure to diligently and periodically inspect might also refer to a very different type of negligence.  For example, the official assigned to inspect the machine may in laziness or haste have failed to do the inspection he claimed (by his initials in the log) to have performed; the official may have been distracted or inattentive, and thus failed to notice the frayed cable; or he may have seen the frayed cable but been too lazy to make the repairs or deal with the paperwork involved in reporting the damage.  Such negligent acts neither involve an element of judgment or choice within the meaning of *Gaubert* nor are grounded in considerations of governmental policy.

*Id.*

The Court said all of the latter possibilities were fairly alleged by the complaint's allegations that the responsible officials "failed to diligently and periodically inspect the weight equipment" and "failed to replace the cable after undue wear and tear."  *Id.* at 109-110.  In its view, the complaint was "broad enough to cover both the types of negligence that are covered by the DFE and thus cannot be the basis of suit, and the types of negligence that fall outside the DFE."  *Id.* at 110.

The Court acknowledged that the DFE, which asserts that the exception is applicable "whether or not the discretion involved be abused," 28 U.S.C. § 2680(a), is somewhat ambiguous in that one might characterize an official's lazy or careless failure to perform his or her discretionary duties with due care as an "abuse of discretion." In rebuttal, the Court said that such a reading would effectively shield all government negligence from suit, an absurd result not required by the language, and would undercut the policy aims of the DFE:

> Reading the statute in this fashion, however, would lead to absurd results. For example, the driver of a mail truck undoubtedly exercises discretion in the manner of driving and makes innumerable judgment calls in the course of making his or her deliveries. In some manner of speaking, therefore, one might characterize it as an "abuse of discretion" for that driver to fail to step on the brake when a pedestrian steps in front of the car, to fail to signal before turning, or to drive 80 mile per hours in a 35 mile per hour zone. Such a characterization, however, would effectively shield almost all government negligence from suit, because almost every act involves some modicum of discretion regarding the manner in which one carries it out. Such a result is not required by the language of the DFE and would undercut the policy aims at the heart of the FTCA. We therefore would be reluctant to adopt that reading of the statute if that question had never before been considered.

*Id*.

The Court then applied its analysis to Coulthurst's complaint and concluded that it involved negligence unrelated to any policy objective and should proceed forward rather than being dismissed:

> Under various fair readings of the complaint, this case similarly involves negligence unrelated to any plausible policy objectives. An inspector's decision (motivated simply by laziness) to take a smoke break rather than inspect the machines, or an absent-minded or lazy failure to notify the appropriate authorities upon noticing the damaged cable, are examples of negligence fairly encompassed by the allegations of the complaint that do not involve "considerations of public policy." Such actions do not reflect the kind of considered judgment "grounded in social, economic, and political policy" which the DFE is intended to shield from "judicial 'second-guessing.'" If the plaintiff can establish that negligence of this sort occurred, his claims are not barred by the DFE, and he is entitled to recover under the FTCA.

*Id*. at 111.

The same reasoning applies to the Complaint in the present case.  The motion to dismiss is based broadly, if not exclusively, on a reading that the Court III officers are faulted for not arresting Zachary Alam and Chad Jones, the two most violent actors at the scene of the fatal shooting referenced in the Complaint.  One might also read the Complaint as faulting the officers for abandoning the doors.  While discretionary decisions to leave a post or to not make an arrest arguably may be protected by the DFE, if those decisions were motivated by laziness, a desire for a break from the demonstration, a desire to be relieved by other officers, or even a careless attitude, then the negligence claim in Count III is not barred by the DFE.  *See also Sledge v. Fed. Bureau of Prisons*, 2013 U.S. App. LEXIS 25940, *14 (D.C. Cir. 2013) (citing *Culthurst*) (officer's "decision to pack up early" on the clock falls outside second prong of the DFE).

In addition, as explained above, Ashli has alleged that the officers' actions fell below the national standard of care concerning threat analysis and perception, situational awareness, verbal commands and subject control, crowd control, de-escalation techniques, and communications, among others.  In all the particulars, fact discovery is necessary to determine the precise nature of the actions and decisions, as well as the existence and nature of Capitol Police policies and procedures, to determine instances in which negligent conduct is protected by the DFE and actions that fall outside its reach.  "It is not enough to establish that an activity is not mandated by statute and involves some element of judgment or choice; to obtain dismissal of the suit, the United States must also establish that the decision in question was grounded in considerations of public policy. *Id*. at 110 (*citing Gaubert*, 499 U.S. at 322-23; *Berkovitz*, 486 U.S. at 536-37).

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's motion to dismiss Counts III, IV, and V without prejudice in that Plaintiffs are entitled to pursue jurisdictional discovery, including facts that are necessary to establish jurisdiction, with respect to those claims.

Dated:  October 4, 2024                              Respectfully submitted,

                                                     JUDICIAL WATCH, INC.

                                   By:      */s/ Robert Patrick Sticht.*
                                            ROBERT PATRICK STICHT
                                            D.C. Bar No. 423395
                                            Judicial Watch, Inc.
                                            425 Third Street SW, Suite 800
                                            Washington, D.C. 20024
                                            (202) 646-5172
                                            rsticht@judicialwatch.org

                                            Attorney for Plaintiffs Estate of Ashli
                                            Babbitt and Aaron Babbitt