## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ESTATE OF ASHLI BABBITT and AARON BABBITT, individually and on behalf of the ESTATE OF ASHLI BABBITT, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| UNITED STATES OF AMERICA, | ) ) |
| Defendant. | ) ) ) |

Case No. 1:24-cv-01701-ACR

## REPLY IN SUPPORT OF DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS COUNTS III, IV, AND V

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General,
Civil Division

C. SALVATORE D'ALESSIO, JR.
Director, Torts Branch, Civil Division

RICHARD MONTAGUE
Senior Trial Counsel

SARAH E. WHITMAN
MA Bar No. 657726
Senior Trial Counsel, Torts Branch, Civil Division
United States Department of Justice
175 N Street, NE, Washington, DC 20002
Tel: (202) 616-0089; F: (202) 616-4314
Sarah.whitman@usdoj.gov

JOSEPH A. GONZALEZ
D.C. Bar No. 995057
Trial Attorney, Torts Branch, Civil Division
United States Department of Justice
175 N Street, NE, Washington, DC 20002
Tel: (202) 598-3888; F: (202) 616-4314
Joseph.a.gonzalez@usdoj.gov

*Counsel for Defendant United States of America*

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................. 1

I.   Count III Should Be Dismissed for Failure to Allege an Actionable Duty Under D.C. Law... 1

   A. Mr. Babbitt has not established a private person analog. ..................................................... 1

   B.  The "Reasonably Prudent Officer" standard would not impose liability. ........................... 2

II. The FTCA's Discretionary-Function Exception Bars Counts III, IV, and V. ........................... 6

CONCLUSION .......................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Art Metal-U.S.A., Inc. v. United States*,
   753 F.2d 1151 (D.C. Cir. 1985) ......................................................................... 5

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................... 6

*Bethel v. Rodriguez*,
   No. CV 20-1940 (RC), 2021 WL 1340961 (D.D.C. Apr. 9, 2021) .................................. passim

*Bostic v. U.S. Capitol Police*,
   644 F. Supp. 2d 106 (D.D.C. 2009) ................................................................... 7

*Briscoe v. United States*,
   268 F. Supp. 3d 1 (D.D.C. 2017) ................................................................... 9, 11

*Brower v. Cnty. of Inyo*,
   489 U.S. 593 (1989) ........................................................................................... 8

*Buchanan v. United States*,
   915 F.2d 969 (5th Cir. 1990) ....................................................................... 12, 13

*Burke v. Scaggs*,
   867 A.2d 213 (D.C. 2005) ................................................................................. 5

*Cnty. of Sacramento v. Lewis*,
   523 U.S. 833 (1998) ........................................................................................... 8

*Cope v. Scott*,
   45 F.3d 445 (D.C. Cir. 1995) ......................................................................... 10

*Coulthurst v. United States*,
   214 F.3d 106 (2d Cir. 2000) ....................................................................... 11, 12

*Daniels v. Williams*,
   474 U.S. 327 (1986) ........................................................................................... 8

*Delta Sav. Bank v. United States*,
   265 F.3d 1017 (9th Cir. 2001) ......................................................................... 5

*Dist. of Columbia v. Shannon*,
   696 A.2d 1359 (D.C. 1997) ............................................................................. 5

*Doheny v. Med. Fac. Assocs., Inc.,*
    284 A.3d 739 (D.C. 2022) ................................................................... 6

*Gilbert v. Miodovnik,*
    990 A.2d 983 ......................................................................................... 5

*Harper v. United States,*
    No. CV 12-1802 (CKK), 2020 WL 4192540 (D.D.C. July 21, 2020) ................... 7, 10

*Himmelstein v. Comcast of the Dist., L.L.C.,*
    908 F. Supp. 2d 49 (D.D.C. 2012) ....................................................... 5

*Hunter ex rel. A.H. v. D.C.,*
    64 F. Supp. 3d 158 (D.D.C. 2014) ....................................................... 4

*In re Sealed Case,*
    67 F.3d 965 (D.C. Cir. 1995) ............................................................... 5

*Klahr v. Dist. of Columbia,*
    576 A.2d 718 (D.C. 1990) ..................................................................... 2

*Liser v. Smith,*
    254 F. Supp. 2d 89 (D.D.C. 2003) ....................................................... 3

*Loughlin v. United States,*
    393 F.3d 155 (D.C. Cir. 2004) ............................................................. 10

*Loumiet v. United States,*
    828 F.3d 935 (D.C. Cir. 2016) .......................................................... 7, 8

*Lovelien v. United States,*
    422 F. Supp. 3d 341 (D.D.C. 2019) ..................................................... 2

*Miango v. Dem. Rep. Congo,*
    243 F. Supp. 3d 113 (D.D.C. 2017) ..................................................... 2

*Morgan v. Dist. of Columbia,*
    468 A.2d 1306 (D.C. 1983) ................................................................... 4

*Olaniyi v. Dist. of Columbia,*
    763 F. Supp. 2d 70 (D.D.C. 2011) ..................................................... 11

*Presley v. Com. Moving & Rigging, Inc.,*
    25 A.3d 873 (D.C. 2011) ....................................................................... 5

*Quinonez v. United States,*
    667 F. Supp. 3d 1015 (N.D. Cal. 2023) .................................................................. 10

*Red Lake Band of Chippewa Indians v. United States,*
    800 F.2d 1187 (D.C. Cir. 1986) ............................................................................. 10

*Shuler v. United States,*
    531 F.3d 930 (D.C. Cir. 2008) .......................................................................... 11, 13

*Sledge v. Fed. Bureau of Prisons,*
    No. 12-5287, 2013 U.S. App. LEXIS 25940 (D.C. Cir. Jan. 15, 2014) .................. 11

*Tookes v. United States,*
    811 F. Supp. 2d 322 (D.D.C. 2011) ........................................................................ 7

*United States v. Gaubert,*
    499 U.S. 315 (1991) .................................................................................... 7, 10, 13

*Varner v. Dist. of Columbia,*
    891 A.2d 260 (D.C. 2006) ....................................................................................... 5

*Wanzer v. Dist. of Columbia,*
    580 A.2d 127 (D.C. 1990) ....................................................................................... 4

*Warren v. Dist. of Columbia,*
    444 A.2d 1 (D.C. 1981) .......................................................................................... 2

*Woods v. Dist. of Columbia,*
    63 A.3d 551 (D.C. 2013) ........................................................................................ 4

## Statutes

28 U.S.C § 1346(b)(1) ................................................................................................... 1

# INTRODUCTION

Mr. Babbitt's opposition (ECF No. 38) lacks merit and does not establish the Court's subject matter jurisdiction over the claims for relief in the complaint's Counts III, IV, and V.[1] He does not address the private party analog requirement for a negligence claim (Count III) based on the conduct of the eight officers outside the Speaker's Lobby.  And the public duty doctrine forecloses Mr. Babbitt's argument that Count III is sufficient under a reasonably prudent police officer standard.  The eight officers did not owe Ashli Babbitt a duty to control rioters Alam's and Jones' third-party criminal conduct as the doctrine requires to impose officer liability.  Mr. Babbitt also cannot overcome application of the discretionary-function exception to Counts III, IV, and V.  The alleged actions Mr. Babbitt relies on to support those claims were discretionary and susceptible to policy considerations.  And Mr. Babbitt has not, and cannot, identify any statute, regulation, or agency policy that withdrew or curbed that discretion.

# ARGUMENT

## I.    Count III Should Be Dismissed for Failure to Allege an Actionable Duty Under D.C. Law.

### A.    Mr. Babbitt has not established a private person analog.

Count III alleges that the eight officers responding to the Speaker's Lobby door breached a duty to Ms. Babbitt by doing "nothing to control, de-escalate, or stop Alam or Jones" and by "failing to call for backup[.]"  ECF No. 1, Complaint ¶¶ 69-72.  In its opening Memorandum of Points and Authorities ("Mem."), the United States established that under the FTCA's 28 U.S.C § 1346(b)(1), the relevant legal duty for a negligence claim is that of a private person in like

---

[1] Mr. Babbitt also filed a Motion for Jurisdictional Discovery (ECF No. 39), which is identical to his Opposition to the Motion to Dismiss (ECF No. 38, "Opp.").  The United States addresses the Motion for Jurisdictional Discovery in a separate opposition filed concurrently with this brief.

circumstances, not that of a "reasonably prudent officer" as Mr. Babbitt alleged, *see* Compl. ¶ 63. The government also showed that no analogous private duty exists under District of Columbia law. *See* Mem. at 8-13. Mr. Babbitt does not address the private person analog issue. He relies instead on a "reasonably prudent officer" theory of duty. Because Mr. Babbitt is mistaken, and a private party analog is required for FTCA liability, he has not met his burden to establish subject matter jurisdiction through a waiver of sovereign immunity. *See Lovelien v. United States*, 422 F. Supp. 3d 341, 347 (D.D.C. 2019) (because "Plaintiffs offer[ed] no response to Defendants' discussion of sovereign immunity . . . Plaintiffs have conceded Defendants' argument on this point"), *aff'd*, 853 F. App'x 676 (D.C. Cir. 2021). Accordingly, Count III warrants dismissal on that ground.

### B.     The "Reasonably Prudent Officer" standard would not impose liability.

***Public Duty Doctrine***. The government also established that Count III is insufficient under Mr. Babbitt's own formulation of duty. The District of Columbia's public duty doctrine holds that police officers have "no general duty to provide . . . police protection[] to any particular individual citizen." *Klahr v. Dist. of Columbia*, 576 A.2d 718, 720 (D.C. 1990) (quoting *Warren v. Dist. of Columbia*, 444 A.2d 1, 3 (D.C. 1981) (en banc)). As a result, the eight officers had no duty "to protect [Ms. Babbitt] from harm," Compl. ¶ 63, because, as officers responding to a public safety need, they had "a duty only to the public at large," *Warren*, 444 A.2d at 4.

Mr. Babbitt's opposition does not address the relevant cases, *e.g., Miango v. Dem. Rep. Congo*, 243 F. Supp. 3d 113, 133 (D.D.C. 2017) (holding federal officers at a protest had no duty "to arrest the attackers or prevent [a demonstrator's] attack" on the plaintiff, despite being nearby, because the claim was "expressly based on a failure to perform a general duty" owed to

the public).  Instead, he relies on *Bethel v. Rodriguez*, No. CV 20-1940 (RC), 2021 WL 1340961 (D.D.C. Apr. 9, 2021).  *Bethel* is not instructive; it involved a harm inflicted directly on the plaintiff by the officer's own tortious conduct, not a failure to protect against harm "from third parties or other independent sources." *Id*. at *6 (citation omitted).

In *Bethel*, a D.C. Metropolitan Police Department officer obtained an arrest warrant for the plaintiff after he reviewed surveillance video of the plaintiff walking past a cashier without paying for an item.  *Id*. at *1.  But the surveillance video also showed that the plaintiff had stopped at the cashier to pay a few minutes earlier and obtained a receipt for his purchase.  *Id*. After the plaintiff turned himself in and explained the situation, the police released him albeit after detaining him for several hours and clearing the arrest.  *Id*. at *2.  The plaintiff, proceeding *pro se*, brought negligence claims against the investigating officer, including a claim of breach of a duty to thoroughly investigate.  *Id*.

The officer argued that the public duty doctrine insulated him from liability because he did "what reasonably prudent police employees would have done in similar circumstances." *Id*. at *6.  The court rejected "[t]his overbroad articulation" of the defense.  *Id*.  It held that the "public duty doctrine 'deals with the question [of] whether public officials have a duty to protect individual members of the general public against harm from third parties or other independent sources.'"  *Id*. (quoting *Liser v. Smith*, 254 F. Supp. 2d 89, 102 (D.D.C. 2003)).  Cases involving harm "brought about directly by the officer," like the MPD officer's conduct, lacked the hallmark of a public duty doctrine relationship—failure to protect from a third party.  *Bethel*, 2021 WL 1340961, at *6.

Mr. Babbitt's negligence claim is nothing like the claim in *Bethel*, in which the MPD officer himself allegedly inflicted the plaintiff's injury by negligently investigating and causing a

wrongful arrest.  *Id.* at *1-2.  Here the claimed harm is alleged to have come from the eight officers doing "nothing to control, de-escalate, or stop Alam or Jones[.]"  Compl. ¶¶ 69-72; *see also* Opp. at 7 ("they left the doors in the hands of two violent demonstrators").  Mr. Babbitt's theory is that the eight officers allegedly "owed Ashli a duty to act as reasonably prudent officers to protect her from harm" traceable to third parties Alam and Jones.  *See* Compl. ¶ 63.  But as shown in the government's dismissal motion, the eight officers had no such duty under D.C. law. *See* Mem. at 13-15.  *Bethel* is not to the contrary.

The recognized exception to the public duty doctrine underscores Mr. Babbitt's inability to establish an actionable duty here.  To establish a duty-creating exception to the doctrine a plaintiff must show (1) "direct contact or continuing contact between the victim and the governmental agency" that (2) "in some demonstrable way exceed[s] the response generally made to other members of the public."  *Woods v. Dist. of Columbia*, 63 A.3d 551, 553 (D.C. 2013) (citations and quotations omitted).

Here Mr. Babbitt alleges no contact between Ms. Babbitt and the eight officers that qualifies as "direct contact" in the relevant sense.  *See Hunter ex rel. A.H. v. D.C.*, 64 F. Supp. 3d 158, 187 (D.D.C. 2014) ("Plaintiffs must allege a 'direct transaction with the party injured or an arms-length relationship[.]'").  Ms. Babbitt was simply present amidst dozens of other rioters and allegedly yelled at the officers to call for help at one point.  Compl. ¶ 66.  But "a special relationship does not come into being simply because an individual requests assistance from the police."  *Morgan v. Dist. of Columbia*, 468 A.2d 1306, 1313 (D.C. 1983).  As to the second element, the officers' alleged inaction toward Ms. Babbitt does not meaningfully distinguish the eight officers' conduct with respect to her from their conduct with respect to anyone else present in the Capitol at the time of the January 6 riot.  *See Wanzer v. Dist. of Columbia*, 580 A.2d 127,

4

132 (D.C. 1990) (for a duty to arise, the government must "assume[] a greater duty to that person than the duty owed to the public"); *see also Varner v. Dist. of Columbia*, 891 A.2d 260, 276 (D.C. 2006) ("The presence of police officers on the campus, and their promises of protection, cannot reasonably be viewed as having created more than 2000 'special relationships'" with the students.).  Accordingly, even if a "reasonably prudent officer" duty applied under section 1346(b)(1), the public duty doctrine forecloses Count III here.

**Internal policies are not relevant to duty**.  Mr. Babbitt also relies on *Bethel* for the proposition that he has sufficiently alleged negligence by citing to Capitol Police policies that "constitute evidence of a national standard of care." Opp. at 3.  That is incorrect.  The argument conflates the question of duty of care with the distinct questions of standard of care and breach. Though sometimes "overlap[ping]", "[t]he questions of duty of care and standard of care are separate inquiries under" D.C. law.  *Gilbert v. Miodovnik*, 990 A.2d 983, 990 n. 5 (D.C. 2010). The questions are also necessarily distinct for purposes of FTCA liability.  *See, e.g., Delta Sav. Bank v. United States*, 265 F.3d 1017, 1025-26 (9th Cir. 2001); *accord Art Metal–U.S.A., Inc. v. United States*, 753 F.2d 1151, 1158 (D.C. Cir. 1985).

"Whether there is a duty of care is a question of law." *Presley v. Com. Moving & Rigging, Inc.*, 25 A.3d 873, 883 (D.C. 2011); *see also Himmelstein v. Comcast of the Dist., L.L.C.*, 908 F. Supp. 2d 49, 55 (D.D.C. 2012) ("Plaintiff must [] allege an independent duty to support his negligence claim. Whether such a duty exists is a question of law for the Court."); *In re Sealed Case*, 67 F.3d 965, 968 (D.C. Cir. 1995).  The determination rests on the "particular set of circumstances" at issue. *Dist. of Columbia v. Shannon*, 696 A.2d 1359, 1365 (D.C. 1997). The "applicable standard of care," by contrast, "is a question of fact for the jury," *Burke v. Scaggs*, 867 A.2d 213, 219 (D.C. 2005), to be developed, when necessary, through discovery.

Mr. Babbitt must prevail at the dismissal stage on the antecedent question of law (duty) before he can develop the record and litigate the question of fact (standard of care). *See Doheny v. Med. Fac. Assocs., Inc.*, 284 A.3d 739, 742 (D.C. 2022) ("The trial court determined that [the doctor] did not have a duty to [the plaintiff], and so it did not reach the . . . applicable standard of care[.]"). And for the reasons already explained, Mr. Babbitt has not alleged any well-pleaded facts from which existence of a legal duty to Ashli Babbitt may be inferred. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

For similar reasons, Mr. Babbitt is incorrect when arguing that the eight officers failed to employ sufficient "threat analysis" and "verbal commands and subject control," as well as "crowd control" techniques. Opp. at 12. None of these alleged failings is relevant to the question of whether a legal duty exists. They too mistakenly presuppose an actionable duty and the validity of Mr. Babbitt's failure to protect theory.

Count III's well-pleaded factual allegations do not plausibly support a duty owed by the eight officers as to Ms. Babbitt. Accordingly, Count III warrants dismissal for failure to allege a duty.

## II.    The FTCA's Discretionary-Function Exception Bars Counts III, IV, and V.

The United States also demonstrated that the official actions at issue in Counts III, IV, and VI are covered by the FTCA's discretionary-function exception because they involved an element of judgment or choice susceptible to analysis in policy terms. Mem. at 15-25. In response, Mr. Babbitt acknowledges that his negligence claim (Count III), negligent supervision claim (Count IV), and negligent training claim (Count V) may "broadly speaking" fall within the discretionary-function exception. Opp. at 5, 9. He nonetheless asserts that his negligent training and supervision claims supposedly involve an exercise of discretion that exceeded the

government's constitutional authority to act.  *Id*. at 6-7.  He also says that "one might also read [Count III] as faulting the officers for abandoning the doors," which "if motivated by laziness," would not be subject to the exception.  *Id*. at 12.  His arguments are mistaken in both respects.

      ***Counts IV and V.***  As demonstrated in the government's opening memorandum (Mem. at 25-34), the Capitol Police's supervision of Lt. Byrd (Count IV), as well as the training of him and three other officers (Count V), involved "an element of judgment or choice" that was "susceptible to policy analysis."  *United States v. Gaubert*, 499 U.S. 315, 322, 325 (1991). Although Mr. Babbitt acknowledges that Counts IV and V "may fall within DFE broadly speaking," he argues that his claims do not implicate the second prong of *Gaubert* because the decisions at issue were not susceptible to policy analysis.  Opp. at 9.  That is incorrect.  "[T]he governing case law in this Circuit firmly supports a finding that the supervision and training of" law enforcement agents "are discretionary governmental functions grounded in social, economic, and political policy."  *Tookes v. United States*, 811 F. Supp. 2d 322, 330 (D.D.C. 2011).  That includes the Capitol Police; the Department's "training and supervision of employees is exactly the kind of discretionary function that is not subject to judicial second-guessing."  *Bostic v. U.S. Capitol Police*, 644 F. Supp. 2d 106, 110 (D.D.C. 2009); *see also Harper v. United States*, No. CV 12-1802 (CKK), 2020 WL 4192540, at *5 (D.D.C. July 21, 2020) ("In this circuit, federal government hiring and employee supervision decisions are generally held to involve the exercise of political, social, or economic judgment, and therefore, to fall with the scope of the United States' sovereign immunity").

      Mr. Babbitt attempts to side-step the discretionary-function exception by pointing to the rule that it "does not shield decisions that exceed constitutional bounds, even if such decisions are imbued with policy considerations."  *Loumiet v. United States*, 828 F.3d 935, 944 (D.C. Cir.

2016).  Mr. Babbitt's claims purportedly rest on two such decisions: the Capitol Police retained Lt. Byrd despite his alleged prior misconduct (Count IV), and the possibility that Capitol Police's deadly force training might not meet constitutional requirements (Count V).  Opp. at 10-11.[2]

Mr. Babbitt's argument is mistaken.  *Loumiet* requires a plaintiff to "plausibly allege[]" that the challenged discretionary conduct "flouts a constitutional prescription."  828 F.3d at 943.  The complaint here does not.  Mr. Babbitt does not allege that the employment-related decisions at issue amounted to a constitutional violation nor does he supply any facts plausibly supporting such a conclusion.  Counts IV and V sound exclusively in negligence.  *See, e.g.*, Compl. ¶ 85.  And negligence typically implicates no constitutional proscription.  *See, e.g., Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998) ("[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process."); *Daniels v. Williams*, 474 U.S. 327, 328 (1986) (interpreting the Due Process Clause of the Fourteenth Amendment); *cf. Brower v. Cnty. of Inyo*, 489 U.S. 593, 596 (1989) ("[I]f a parked and unoccupied police car slips its brake and pins a passerby against a wall, it is likely that a tort has occurred, but not a violation of the Fourth Amendment.").  The same is true here.  The complaint's allegations that the Capitol Police Board or Congress "breached their duty to Ashli to use reasonable care in the supervision, discipline, and retention of Lt. Byrd," Compl. ¶ 83, may sound in common law tort, but it does not describe a constitutional violation.  "Far from an abuse of power," implicating constitutional concerns, "lack of due care suggests no more than a failure to measure up to the conduct of a reasonable person."  *Daniels*, 474 U.S. at 332.

---

[2] Mr. Babbitt confines his argument to the deadly force training of Lt. Byrd.  He does not contest that the discretionary-function exception applies to any training as it relates to Officers Lively, Yetter, and Lanciano.

Precedent confirms that Mr. Babbitt's theory does not overcome the discretionary-function exception.  For example, in *Briscoe v. United States*, 268 F. Supp. 3d 1 (D.D.C. 2017), the court rejected a similar attempt to overcome the exception.  There, the plaintiffs did not allege that "the FBI's supervision *itself* was unconstitutional," but rather that "the FBI's negligent failure to adequately supervise [the officer] led to" possibly unconstitutional conduct. *Id*. at 12 (emphasis added).  Here, Mr. Babbitt similarly alleges that the Capitol Police negligently supervised and trained Lt. Byrd, leading him to shoot Ms. Babbitt.  *See* Compl. ¶ 84 ("As a direct result" of Capitol Police's negligent supervision "Lt. Byrd shot and fatally wounded Ashli"); ¶ 95 ("As a direct result" of the Capitol Police's negligent training "Lt. Byrd shot and fatally wounded Ashli").  That "fail[ure] to allege a single supervisory action that itself violated plaintiffs' constitutional rights" forecloses Mr. Babbitt's attempt to invoke *Loumiet*'s caveat to the discretionary-function exception for constitutional violations.  *Briscoe*, 268 F. Supp. 3d at 12.

Mr. Babbitt is similarly incorrect when arguing that "[t]he decision to retain an employee, though normally falling within the DFE broadly speaking, would not be protected because the employee's actions violated the constitution."  Opp. at 7.  The question is not whether Lt. Byrd violated the Constitution in the past; it is whether the Capitol Police violated the Constitution and thereby exceeded the bounds of discretion shielded by section 2680(a) when retaining him in its employ.  Mr. Babbitt describes the challenged government actions in negligence terms, and fairly read, his complaint describes no more than that.  That is dispositive.

Mr. Babbitt also stops short of asserting that Capitol Police's training is constitutionally defective.  He questions, but admits he does not know, "whether the deadly force training provided by Capitol Police meets constitutional requirements."  *Id*. at 12.  But speculation does

not suffice to resist dismissal under section 2680(a).  *See Quinonez v. United States*, 667 F. Supp. 3d 1015, 1029 (N.D. Cal. 2023) (holding the discretionary-function exception applied because the plaintiff used "equivocal" language "alleg[ing] that *if* the packages were searched, the Fourth Amendment was violated," which fell short of "plausibly alleg[ing] that the packages were in fact searched.").

Mr. Babbitt is also mistaken when arguing that the "shooting of Ashli Babbitt illustrates" the "dire consequences of retaining an employee" that "employ[s] deadly force recklessly" and that "[t]he decision to retain Lt. Byrd" was not "fraught with public policy considerations" and "serve[d] no legitimate public policy."  Opp. at 12.  The point of the discretionary-function exception is to shield protected discretionary decisions from judicial second guessing in a tort suit.  *See Gaubert*, 499 U.S. at 323.  Accordingly, it makes no difference "whether the government made the right or wrong choice when exercising its discretion."  *Harper*, 2020 WL 4192540, at *6, *8 (discretionary-function exception barred retention claim regarding an employee that had clearly been "radicaliz[ed] toward violent extremism" and eventually went on shooting rampage).  "[E]ven the negligent performance of a discretionary function does not subject the government to liability under the Federal Tort Claims Act."  *Red Lake Band of Chippewa Indians v. United States*, 800 F.2d 1187, 1194 (D.C. Cir. 1986).  "[T]he issue is not the decision" to retain Lt. Byrd, "but whether the nature of the decision implicates policy analysis."  *Cope v. Scott*, 45 F.3d 445, 449 (D.C. Cir. 1995); *see also Loughlin v. United States*, 393 F.3d 155, 166 (D.C. Cir. 2004) ("[T]he prong-two inquiry looks to the *type* of decision . . . irrespective of considerations that factored into the *actual* decision.").  As set forth above, and in the government's opening memorandum, retention decisions implicate policy analysis and so fall within the heartland of the exception.

**Count III.**  The government's dismissal motion showed that:

> In responding to a riot, officers on the scene necessarily have to balance various public safety considerations, including the impossibility of arresting hundreds of rioters overrunning the Capitol and the possibility that immediate arrests might divert officers from protecting members of Congress and their staff or that arrests might provoke violent resistance.

Mem. at 26; *see also Shuler v. United States*, 531 F.3d 930, 934 (D.C. Cir. 2008) ("Decisions regarding the timing of arrests are the kind of discretionary government decisions, rife with considerations of public policy, that Congress did not want the judiciary second-guessing."); *Olaniyi v. Dist. of Columbia*, 763 F. Supp. 2d 70, 89 (D.D.C. 2011) (Capitol Police's detention and arrest of the plaintiff "falls well within the scope of the discretionary function" because "decisions regarding the timing of arrests are the kind of discretionary government decisions, rife with considerations of public policy, that Congress did not want the judiciary second guessing.") (cleaned up).

In response, Mr. Babbitt relies on *Coulthurst v. United States*, 214 F.3d 106 (2d Cir. 2000), *see* Opp. at 9-11, an inapposite Second Circuit case involving negligent inspection and maintenance of prison exercise equipment, and argues that the decisions at issue in Count III may not implicate policy because they "were motivated by laziness, a desire for a break from the demonstration, a desire to be relieved by other officers, or even a careless attitude," *id.* at 12.  He also cites the D.C. Circuit's decision in *Sledge v. Fed. Bureau of Prisons*, No. 12-5287, 2013 U.S. App. LEXIS 25940 at *13 (D.C. Cir. Jan. 15, 2014), which he describes as "citing *Culthurst*" [sic] for the proposition that an "officer's 'decision to pack up early' on the clock falls outside second prong of" the discretionary-function exception.  Opp. at 12.

Mr. Babbitt's argument is incorrect.  The Second Circuit's *Coulthurst* decision is distinguishable; indeed, in *Sledge* the D.C. Circuit declined to follow *Coulthurst* in response to

an argument that a prison guard abused his discretion and thereby allowed one inmate to attack

another.  In *Coulthurst*, a federal prisoner brought a negligence claim after he was injured using a

weight machine in the prison exercise room.  214 F.3d at 107.  He alleged a "fail[ure] to

diligently and periodically inspect [] weight equipment, and the cable" that snapped and injured

him.  *Id*. at 108.  Because choosing the "procedures and frequency" of inspections involved

"elements of judgment . . . and a balancing of policy considerations," the district court deemed

the inspection discretionary.  *Id*. at 109.  The Second Circuit agreed to an extent, but also

observed that the allegations supported other "types of careless and negligent conduct" that did

not implicate protected discretion.  *Id*.  The inspector "may in laziness or haste have failed to do

the inspection he claimed . . . may have been [too] distracted or inattentive . . . to notice the

frayed cable; or he may have seen the frayed cable but been too lazy to make the repairs[.]"  *Id*.

Those acts or omissions were not susceptible to policy analysis.  *Id*.  Accordingly, the "failure to

diligently" inspect allegation encompassed this "carelessness," and defeated the exception.  *Id*. at

110.

Mr. Babbitt's claim that Capitol Police officers negligently failed to protect Ms. Babbitt

from harm in the midst of the January 6, 2021 riot at the Capitol is different in kind from a claim

for negligent inspection of exercise equipment for damage or defects.  The "minute-to-minute

decision making in the chaotic circumstances of a riot is a classic example of an activity

requiring the exercise of discretion."  *Buchanan v. United States*, 915 F.2d 969, 972 (5th Cir.

1990); *see also* Mem. at 26.  And the discretionary-function exception's application does not

change here because Mr. Babbitt intimates that Capitol Police officers outside the Speaker's

Lobby "were motivated by laziness, a desire for a break from the demonstration, a desire to be

relieved by other officers, or even a careless attitude[.]"  Opp. at 12.  Mr. Babbitt alleges no facts

that plausibly support such an inference, and his argument improperly looks to subjective intention in an effort to show that the discretion involved was abused.  Both section 2680(a)'s text and precedent foreclose it.  *See Gaubert*, 499 U.S. at 325.

For similar reasons, the D.C. Circuit declined to follow *Coulthurst* in *Sledge*.  There, a prisoner claimed that a guard allowed another inmate to assault him when the guard left his post and "stepped outside to smoke, pace, and talk."  *Sledge*, 2013 U.S. App. LEXIS 25940 at *13.  Though the plaintiff argued that the guard utterly neglected his duties and was not exercising discretion, the D.C. Circuit reiterated that the Supreme Court has made clear that the focus of the inquiry in step two is "not on the agent's subjective intent in exercising discretion" but instead on the nature of the actions taken and whether they are susceptible to policy analysis.  *Id*. at *14 (quoting *Gaubert*, 499 U.S. at 325).  The guard's "motivation [was] irrelevant," and the discretionary-function exception applied because "[t]he decision to stand outside, . . . [was] 'susceptible to policy analysis'" in the circumstances alleged.  *Id*.

The actions Mr. Babbitt challenges in Count III also satisfy the objective *Gaubert* test.  Decisions made in the midst of a riot, including whether to change positions or redeploy personnel, necessarily involve competing safety concerns and resource allocation judgments that are "rife with considerations of public policy."  *Shuler*, 531 F.3d at 934; *see also Buchanan*, 915 F.2d at 972.  Mr. Babbitt points to no case holding otherwise.  Nor does he allege conduct that is outside the scope of that discretion.  His opposition intimates that the officers on the scene might have acted for wholly personal reasons not implicating any discretionary function, but like in *Sledge*, the complaint stops well short of alleging facts plausibly supporting such a thing.  *Cf.* Compl. ¶ 67 (alleging that Sgt. Lively, Officer Yetter, and Officer Lanciano "moved away from" the Speaker's Lobby doors to an "adjacent wall" and "then began exiting the hallway using the

stairway along the right-side wall" as "CERT officers Robbs, Smith, Sikes, and Brown arrived

on the scene[ ] ascending the same stairway").  Accordingly, Count III warrants dismissal as a

matter of law.

**CONCLUSION**

For the foregoing reasons, the United States' motion to dismiss should be granted and

Counts III, IV, and V should be dismissed.


Dated: October 25, 2024                                 Respectfully submitted,

                                                        BRIAN M. BOYNTON
                                                        Principal Deputy Assistant Attorney General,
                                                        Civil Division

                                                        C. SALVATORE D'ALESSIO, JR.
                                                        Director, Torts Branch, Civil Division

                                                        RICHARD MONTAGUE
                                                        Senior Trial Counsel

                                                        */s/ Sarah E. Whitman*
                                                        SARAH E. WHITMAN
                                                        MA Bar No. 657726
                                                        Senior Trial Counsel, Torts Branch, Civil Division
                                                        United States Department of Justice
                                                        175 N Street, NE, Washington, DC 20002
                                                        Tel: (202) 616-0089; F: (202) 616-4314
                                                        Sarah.whitman@usdoj.gov

                                                        */s/ Joseph A. Gonzalez*
                                                        JOSEPH A. GONZALEZ
                                                        D.C. Bar No. 995057
                                                        Trial Attorney, Torts Branch, Civil Division
                                                        United States Department of Justice
                                                        175 N Street, NE, Washington, DC 20002
                                                        Tel: (202) 598-3888; F: (202) 616-4314
                                                        Joseph.a.gonzalez@usdoj.gov

                                                        *Counsel for Defendant United States of America*

14