UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

ESTATE OF ASHLI BABBITT and
AARON BABBITT, individually and on
behalf of the ESTATE OF ASHLI
BABBITT,

                Plaintiffs,        Case No. 1:24-cv-01701-ACR

  v.

UNITED STATES OF AMERICA,

                Defendant.
_____/

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR
JURISDICTIONAL DISCOVERY ON COUNTS III, IV, AND V**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

ARGUMENT ........................................................................................................................... 1

I.     INTRODUCTION ........................................................................................................ 1

II.    COUNT III ALLEGES AN ACTIONABLE LEGAL DUTY FOR WHICH JURISDICTIONAL DISCOVERY IS REQUIRED .................................. 1

III.   A MERITS EVALUATION OF THE APPLICABILITY OF THE DISCRETIONARY FUNCTION EXCEPTION TO COUNTS IV AND V IS ALSO PREMATURE AND MUST AWAIT JURISDICTIONAL DISCOVERY ................................................................................................................ 2

CONCLUSION ........................................................................................................................ 9

# TABLE OF AUTHORITIES

**Cases**

*Berkovitz v. United States*,
  486 U.S. 531 (1988)..................................................................................................2

*Bethel v. Rodriguez*,
  2021 U.S. Dist. LEXIS 68819 (D.D.C. 2021) ....................................................1

*Bostic v. U.S. Capitol Police*,
  644 F. Supp. 2d 106 (D.D.C. 2009) .....................................................................3

*Bragdon v. United States*,
  537 F. Supp. 2d 157 (D.D.C. 2008) ...................................................................3,4

*Briscoe v. United States*,
  268 F. Supp. 3d 1 (2017)......................................................................................6,7

*Burkhart v. Washington Metro. Area Transit Auth.*,
  112 F.3d 1207 (D.C. Cir. 1997)...........................................................................3

*City of Canton v. Harris*,
  489 U.S. 378 (1989)..............................................................................................6,7

*Cope v. Scott*,
  45 F.3d 445 (D.C. Cir. 1995)................................................................................4

*Coulthurst v. United States*,
  214 F.2d 106 (2nd Cir. 2000).............................................................................2

*Davis v. United States*,
  296 F. Supp. 3d 106 (D.D.C. 2016) ...................................................................7

*Donahue v. United States*,
  870 F. Supp. 2d 97 (D.C. Cir. 2001) ................................................................4

*Graham v. Connor*,
  490 U.S. 386 (1989)..............................................................................................4

*Ignatiev v. United States*,
  238 F.3d 464 (D.C.Cir. 2001)..............................................................................4

*Loumiet v. United States*,
  828 F.3d 935 (D.C. Cir. 2016)............................................................................7,8

*Olaniyi v. District of Columbia*,
   763 F. Supp. 2d 70 (D.D.C. 2011) ...............................................................................6,7

*Sledge v. Fed. Bureau of Prisons*,
   2013 U.S. App. LEXIS 25940 (D.C. Cir. 2013) ...............................................................2

*Smith v. United States*,
   157 F. Supp. 3d 32 (D.D.C. 2016) ...................................................................................5

*Tennessee v. Garner*,
   471 U.S. 1 (1985)..............................................................................................................4

*Tookes v. United States*,
   811 F. Supp. 2d 322 (D.D.C. 2011).............................................................................2,3

*Torres-Estrada v. Cases*,
   88 F.4th 14 (1st Cir. 2023) ...............................................................................................8

*United States v. Gaubert*,
   499 U.S. 315 (1991)..........................................................................................................2

*Xiaoxing Xi v. Haugen*,
   68 F.4th 824 (3rd Cir. 2023)............................................................................................8

ARGUMENT

I.      INTRODUCTION.

It is elementary that the discretionary function exception (DFE) does not immunize the government from liability for actions proscribed by the United States Constitution, federal statutes and regulations, and mandatory agency policies. Plaintiffs have moved for jurisdictional discovery to determine the precise nature of the actions and decisions of the Count III officers and the existence and nature of Capitol Police polices and procedures and whether Capitol Police supervision, discipline, and retention (Count IV) and training (Count V) actions and decisions violate the constitutional standard on use of deadly force given the allegations in this particular case. The government has largely demurred insisting at every turn that decisions concerning officer movements during a "riot" and employee supervision and training are generally discretionary and fraught with considerations of public policy. It urges this Court to dismiss Counts III, IV, and V outright with little to no jurisdictional discovery. This urging operates at too high a level of generality. Viewed from 35,000 feet, virtually any action can be characterized as discretionary, including actions that violate the Constitution and thus do not fall within the DFE, and many kinds of judgments can be characterized as rife with considerations of public policy. The DFE requires that a court focus on the specific conduct at issue in context. The Court must allow jurisdictional discovery to achieve that end.

I.      **COUNT III ALLEGES AN ACTIONABLE LEGAL DUTY FOR WHICH JURISDICTIONAL DISCOVERY IS REQUIRED.**

The government erroneously asserts that Ashli has not addressed the "private party analog" issue it raised in its motion to dismiss. ECF No. 41 ("Def's Opp.") at 4. Actually, she has cited to the private party analogous case, *Bethel v. Rodriguez*, 2021 U.S. Dist. LEXIS 68819 (D.D.C. 2021). ECF 39 (Plfs' Mot.) at 1-4. That *Bethel* is not a sovereign immunity case and no

questions of jurisdiction or jurisdictional discovery are presented is immaterial to the question of the duty owed by the Count III officers. Regarding jurisdictional discovery, Ashli has cited to *Coulthurst v. United States*, 214 F.2d 106 (2nd Cir. 2000) and *Sledge v. Fed. Bureau of Prisons*, 2013 U.S. App. LEXIS 25940, *14 (D.C. Cir. 2013) (citing *Culthurst*). *Id*. at 9-12. Fact discovery is necessary to determine the precise nature of the actions and decisions of the Count III officers, as well as the existence and nature of Capitol Police policies and procedures, to determine instances in which negligent conduct is protected by the DFE and actions that fall outside its reach. Actions predicated on laziness, for example, are not grounded in considerations of public policy and thus do not fall within the DFE. "It is not enough to establish that an activity is not mandated by statute and involves some element of judgment or choice; to obtain dismissal of the suit, the United States must also establish that the decision in question was grounded in considerations of public policy. *Id*. at 110 (*citing United States v. Gaubert*, 499 U.S. 315, 322-23 (1991); *Berkovitz v. United States*, 486 U.S. 531, 536-37 (1988)). Such discovery goes to the very heart of the threshhold jurisdictional question. Any overlap with the merits is not a reason to deny jurisdictional discovery.

II.  **A MERITS EVALUATION OF THE APPLICABILITY OF THE DISCRETIONARY  FUNCTION EXCEPTION TO COUNTS IV AND V IS ALSO PREMATURE AND MUST AWAIT JURISDICTIONAL DISCOVERY.**

Regarding Counts IV and V, the government's arguments and cases do not support its contention that the DFE should apply to the facts of this case. For example, the government cites *Tookes v. United States*, 811 F. Supp. 2d 322 (D.D.C. 2011) as support for the assertion that the negligent training and negligent supervision, discipline, and retention claims in the Complaint fall within the DFE and should be dismissed. *See* Def's Opp. at 3. The government argues that the DFE bars both claims because they involve '"exactly the kind of discretionary function that

- 2 -

is not subject to judicial second guessing.'"  *Id.*, citing *Bostic v. U.S. Capitol Police*, 644 F. Supp. 2d 106 (D.D.C. 2009).

Neither *Tookes* nor *Bostic* considered complaints grounded in deadly force, where training involving the application of deadly force and standards come into play, or where the issue of proper supervision (*i.e.*, decision to retain) of a wayward employee found to have misused a firearm and unlawfully applied deadly force is at issue.  *Tookes* involved a *pro se* complaint filed by a Nigerian plaintiff alleging assault, battery, and false arrest even though the arrest was based on a warrant.  The court dismissed the negligent training and supervision counts based on the DFE.  The plaintiff in *Bostic* was arrested by Capitol Police for driving with a suspended license.  The court dismissed the negligent training and supervision counts based on the DFE.  Since deadly force was not a factor in these cases, the degree of harm that a wayward employee might cause was not a factor, nor was the extent to which the employee might have deviated from accepted norms in the past.  Both of these factors are presented in the Complaint in this case.

The government similarly relies on *Bragdon v. United States*, 537 F. Supp. 2d 157 (D.D.C. 2008), where the court ruled that claims against the FBI for negligent hiring, training, and supervision were barred by the DFE.  *Bragdon* relied on *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1217 (D.C. Cir. 1997).  In considering whether supervision and training of employees fall within the policy equation and thus might be immune from suit as discretionary, the *Burkhart* court listed as among the factors to be considered "the degree of harm a wayward employee might cause, and the extent to which employees have deviated from accepted norms in the past."  *Id*. at 1217.

While these factors are *considerations* of public policy recognized in *Burkhart* and

*Bragdon*, the *decision* to retain may not ignore the constitutional violation context. *See Cope v. Scott*, 45 F.3d 445, 451 (D.C. Cir. 1995) ("While it may be true, as the government claims, that the placement of signs involves judgments because engineering and aesthetic concerns determine where they are placed, such judgments are not necessarily protected from suit; only if they are 'fraught with public policy considerations' do they fall within the exception[.]"). The decision to retain Officer Byrd is not of the kind that the DFE was designed to shield because it is not "fraught with public policy considerations." In its proper context, that decision serves no legitimate public policy. In fact, it's tantamount to an official policy authorization for application of deadly force in contravention of the constitution as interpreted by the U.S. Supreme Court in *Graham v. Connor*, 490 U.S. 386 (1989), and *Tennessee v. Garner*, 471 U.S. 1 (1985).

Given the allegations in the Complaint, this aspect of the DFE is critical in evaluating the need for additional discovery and, ultimately, whether the DFE applies here, yet it is nowhere addressed in the government's brief. Training on arrests for a suspended license and other incidents is entirely different than training on the applicable legal standards that apply in deciding whether to employ deadly force. Likewise, the decisions on whether to retain and how to supervise employees who have unlawfully applied deadly force in the past, on or off duty, is far different than evaluating the more routine aspects of hiring, retention, and supervision that do not involve life or death matters.

Citing *Ignatiev v. United States*, 238 F.3d 464 (D.C.Cir. 2001) and *Donahue v. United States*, 870 F. Supp. 2d 97, 114 (D.C. Cir. 2001), the government attempts to limit jurisdictional discovery by claiming it would not be beneficial to Plaintiffs' establishment of jurisdiction. zDef's Opp. at 4, 7-8. Comparing these non-deadly force cases to the instant Complaint minimizes and obscures the factors that the Court must discern, namely, whether training and

supervision decisions made by the Capitol Police are the sort of policy-driven decisions that Congress intended to make immune from suit under the DFE.  If the government arms employees and authorizes them to employ deadly force, is it entirely discretionary within agencies whether they properly train on use of deadly force and how they supervise (retain) employees who unlawfully employ deadly force either on or off duty?  In this circuit, "the degree of harm a wayward employee might cause, and the extent to which employees have deviated from accepted norms in the past" are factors the court must consider in evaluating a motion to dismiss based on the DFE because the training and supervision decisions are subject to a constitutional standard on the application of deadly force.

This point is further amplified in *Smith v. United States*, 157 F. Supp. 3d 32 (D.D.C. 2016), also cited by the government.  *See* Def's Opp. at 11.  *Smith* was a non-deadly force, FTCA case filed against the Veteran's Administration for VA employees negligently acting as witnesses to a hospitalized patient's will.  Like other cases cited by the government that "routinely dispose of negligent supervision and training claims," Def's Opp. at 11, *Smith* involved a routine negligent failure to train claim that is "generally held to involve the exercise of political, social, or economic judgment, and therefore, to fall within the scope of the United States' sovereign immunity." *Id*. at 42 (cleaned up).  Clearly, in the instant Complaint there are factors not germane in *Smith* or other cited cases that resulted in the courts deciding to dismiss based on the DFE.  The degree of harm a wayward employee might cause is significantly greater when the employee is given a firearm and authorized, under certain circumstances of constitutional magnitude, to shoot and end a life.

Given the facts alleged in the Complaint, the Court cannot properly evaluate the applicability of the DFE solely on the basis that negligent supervision and training claims

"generally" or "routinely" fall within the United States' sovereign immunity. Plaintiffs must be allowed liberal discovery to determine exactly how deadly force training is conducted for all Capitol Police employees, and whether Officer Byrd participated in such training, so that the Court may properly evaluate the applicability of the DFE. Plaintiffs and, ultimately, the Court also need to discover how Capitol Police supervises employees who have negligently or intentionally discharged their firearms, either on or off duty, and whether and how such employees were disciplined. The negligent supervision and training claims implicate not only Officer Byrd, but also the Capitol Police, the Capitol Police Board, and ultimately Congress. See Compl. ¶¶ 77, 83, 87, 93. The proper scope of discovery is outlined in Plaintiffs' motion at 7-9.

The government asserts, "[t]he only potentially relevant factor extrinsic to the complaint is whether some internal agency directive specifically limited the discretion generally afforded to federal personnel or mandated a specific course of action for its employees to follow in the circumstances." Def's Opp. at 7. This formulation is deliberately too narrow and limiting, and in making this assertion the government misses the second prong of the DFE, namely, whether the decision made by the government, if not restricted by statute, regulation, or mandatory directives, is the type of decision subject to a policy analysis.

The government seeks to limit Plaintiffs' jurisdictional discovery to that which was authorized in *Briscoe v. United States*, 268 F. Supp. 3d 1 (2017), dismisses *City of Canton v. Harris*, 489 U.S. 378, 388 (1989), a section 1983 case, and *Olaniyi v. District of Columbia*, 763 F. Supp. 2d 70, 106 (D.D.C. 2011), an FTCA case which included a section 1983 claim, and relies on *Olaniyi* as support for dismissing Ashli's negligent training claim because it involved an arrest and decisions regarding arrests are the kind of discretionary decisions that generally fall within the government's sovereign immunity under the DFE. However, *Briscoe* does not purport

to set the outer limits of jurisdictional discovery, and the government does not argue otherwise, but rather stands for the proposition that the scope of such discovery depends on the facts of each case. Here, the facts and injury alleged in the Complaint are far different than *Briscoe*, which was neither a use of force nor a deadly force case. *Olaniyi* likewise did not involve use of force or deadly force. In deadly force cases the magnitude of harm caused by poorly trained employees is immense, and the degree of harm that could be caused by a wayward employee is a matter of life and death. *City of Canton* is highly instructive in this case because the Supreme Court there acknowledged a pattern of misconduct may evidence a policy of ignoring a constitutional standard as Plaintiffs have alleged and argued. Obviously, such a policy would not fall within the DFE.

 Similarly, the government cites *Davis v. United States*, 296 F. Supp. 3d 106 (D.D.C. 2016), where limited discovery was authorized regarding TSA canine training, for the proposition that discovery in the Complaint should remain limited to directives, going so far as to argue that "Mr. Babbitt's negligent training claim (Count V) is at best indistinguishable from the claim in Davis[.]" Def's Opp. at 14. This argument also fails. In *Davis*, a canine owned by the TSA attacked and injured a child, which led to a complaint for negligence under the FTCA. The court limited discovery to whether mandatory directives governed the training of TSA canines. Far different is the present Complaint in which constitutional standards exist for when and how use of force and deadly force are authorized by the government under the Fourth Amendment. There are no constitutional standards that exist for training canines.

 The DFE "does not shield decisions that exceed constitutional bounds, even if such decisions are imbued with policy considerations." *Loumiet v. United States*, 828 F.3d 935, 944 (D.C. Cir. 2016). The government characterizes Ashli's reliance on *Loumiet* as a "side-step,"

ECF 40 (Def's Reply ISO MTD) at 7, but as explained above it is critical here to any proper evaluation of the DFE given the allegations in the Complaint.  The government also characterizes reliance on *Loumiet* as "mistaken," *id*. at 8, but Ashli need not allege that negligent supervision and training decisions, particularly as they pertain to Officer Byrd, flouted a constitutional prescription for that to be true and adequately pled.  The Complaint alleges that the shooting of Ashli violated the constitutional standard on use of deadly force, Compl. ¶ 22,  that Officer Byrd stated he followed his training, *id*. ¶ 88, from which arises the reasonable inference that his training was also constitutionally deficient, and that prior instances of similar misconduct exist yet Officer Byrd was retained and armed, *id*. ¶¶ 80-82, which decisions ultimately led to his using deadly force to kill Ashli contrary to the constitutional standard.

Similarly, the government's argument that the negligent supervision and training claims sound exclusively in negligence, which typically implicates no constitutional proscription, misses the point that although a constitutional violation cannot form the basis of an FTCA claim, it is a defense to a motion to dismiss under the DFE.  *See Loumiet*, 828 F.3d at 944-945; *Xiaoxing Xi v. Haugen*, 68 F.4th 824, 839 (3rd Cir. 2023) ("because government officials never have discretion to violate the Constitution, unconstitutional government conduct is per se outside the discretionary function exception"); *Torres-Estrada v. Cases*, 88 F.4th 14, 21 (1st Cir. 2023). It follows that the government failing to train to the constitutional standard for use of deadly force, and the government's failure to properly supervise employees who violate the constitutional standard for use of deadly force, serve as bars to the DFE and sovereign immunity has been waived.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion for jurisdictional discovery and deny Defendant's motion to dismiss Counts III, IV, and V without prejudice.

Dated: November 8, 2024                    Respectfully submitted,

                                                                         JUDICIAL WATCH, INC.

By:   */s/ Robert Patrick Sticht.*
ROBERT PATRICK STICHT
D.C. Bar No. 423395
Judicial Watch, Inc.
425 Third Street SW, Suite 800
Washington, D.C. 20024
(202) 646-5172
rsticht@judicialwatch.org

Attorney for Plaintiffs Estate of Ashli Babbitt and Aaron Babbitt