UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ESTATE OF ASHLI BABBITT and
AARON BABBITT, individually and on
behalf of the ESTATE OF ASHLI BABBITT,

    *Plaintiffs*,

v.

UNITED STATES OF AMERICA,

    *Defendant*.

Case No. 1:24-cv-01701 (ACR)

## MEMORANDUM OPINION AND ORDER

A United States Capitol Police officer shot and fatally wounded Ashli Babbitt while both were inside the U.S. Capitol on January 6, 2021. On January 5, 2024, Ms. Babbitt's estate and her husband, Aaron Babbitt (together, Plaintiffs), sued the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671, *et seq*, for alleged torts arising out of that shooting. Plaintiffs filed their suit in the U.S. District Court for the Southern District of California (S.D. Cal.), where Mr. Babbitt resides.

The United States moved on March 1, 2024, to transfer the case to the U.S. District Court for the District of Columbia (D.D.C.).[1] Dkt. 5. Plaintiffs opposed, highlighting that the FTCA accords a plaintiff's choice of forum "considerable deference." Dkt. 7 at 4. After reviewing the FTCA's venue provision and the relevant factors, Judge Cynthia A. Bashant granted the motion to transfer on June 12, 2024. Dkt. 14 (the Transfer Order).

---

[1] The Court apologizes to the reader for this alphabet soup of abbreviations.

1

What happened next prompted Plaintiffs' Motion to Retransfer. The Clerk of the S.D. Cal. docketed the Transfer Order. Soon after, the case was electronically transferred to the D.D.C., depriving the S.D. Cal. and the Ninth Circuit of jurisdiction. Plaintiffs complain that this snap turn-around made it impossible to seek a writ of mandamus from the Ninth Circuit. They assert that they now have no procedural mechanism to appeal the decision anywhere, which is manifestly unjust. If this Court grants the Motion to Retransfer, Plaintiffs highlight, the California courts would regain jurisdiction and they could seek a writ in the Ninth Circuit.

Plaintiffs are mistaken. They are not at sea with no appellate lifeboat in sight. The D.C. Circuit stands, or rather sits, ready to hear their appeal. Thus, the Court finds no manifest injustice in the case's procedural posture. Turning to the merits, the Court finds nothing approaching error, much less the required clear error, in the Transfer Order. Indeed, were the Court writing anew, it would reach the same conclusion as Judge Bashant. The Court therefore **DENIES** Plaintiffs' Motion to Retransfer Venue.

## I.     BACKGROUND

### A. Factual Background[2]

On January 5, 2021, Ashli Babbitt traveled to Washington, D.C. from her home in San Diego, California, to attend the Women for America First rally scheduled for January 6, 2021.

---

[2] Though there is serious disagreement as to why the shooting occurred, the parties do not contest these bare facts. *See* Dkt. 31 at ¶¶ 8, 14.

After the rally, Ms. Babbitt joined thousands of others in a march to the U.S. Capitol.[3]  Her husband, Aaron Babbitt, did not join her on the trip.

After arriving at the Capitol, Ms. Babbitt entered the building and walked towards the Lobby of the Speaker of the House, where a large crowd had gathered to protest the electoral count.  Two members of this crowd dislodged the glass panels in the lobby doors and the sidelight next to the right door.  Ms. Babbitt then raised herself into the opening of the right door sidelight.  When she did so, a member of the U.S. Capitol Police shot her.  She died soon after.

### B. Procedural Background

On January 5, 2024, the Estate of Ashli Babbitt and Aaron Babbitt, individually and on behalf of the Estate of Ashli Babbitt, sued the United States under the FTCA.  Dkt. 1.  The United States moved to transfer venue to this Court on March 1, 2024, pursuant to 28 U.S.C. § 1404(a).  Dkt. 5.  In support, it highlighted that (1) the events occurred in Washington, D.C.; (2) D.C. is a convenient location for witnesses; (3) D.C. judges are better versed in D.C. tort law; (4) both parties have counsel in D.C.; and (5) D.C. has a strong local interest in this case.  Dkt. 5-1 at 1.

Plaintiffs opposed transfer.  Dkt. 9.  Plaintiffs conceded that Washington, D.C. is a proper venue under the FTCA.  *Id.* at 8.  But they argued that the Court should deny transfer because (1) the FTCA requires courts to give a plaintiff's choice of forum "considerable deference"; (2)

---

[3] The word "capitol" derives from the Latin "capitolium," meaning a city on a hill, but it is more particularly associated with the great Roman temple dedicated to Jupiter Optimus Maximus on the Capitoline Hill.  In 1791, before the first publication of the District's city map, Thomas Jefferson replaced every reference to "Congress house" on the draft with "Capitol."  With this change, "[i]nstead of a mere house for Congress, the nation would have a capitol, a place of national purposes, a place with symbolic roots in the Roman Republic and steeped in its virtues of citizenship and ancient examples of self-government."  S. Doc. No. 106-29, *History of the United States Capitol: A Chronicle of Design, Construction, and Politics*, at 10 (2002).

California is a convenient location for the witnesses; (3) Plaintiffs' counsel is in California; (4) electronic evidence is easily accessible from almost anywhere; (5) California judges can apply Washington, D.C. tort law without undue effort; and (6) Southern California has a greater local interest in the controversy. *Id.* at 8-19.

For reasons the Court details below, Judge Cynthia A. Bashant granted the United States' motion and signed the Transfer Order on June 10, 2024. The Clerk of the S.D. Cal. then entered the Transfer Order on the court's docket and transferred the case electronically to the D.D.C. on June 12, 2024. Dkt. 14. Upon completion of the transfer, the S.D. Cal. and Ninth Circuit lost jurisdiction to hear the case. Dkt. 21 at 4. The D.D.C. docketed the case on June 14, 2024.

Plaintiffs claim, and Defendant does not contest, that they lacked sufficient time to file a writ challenging the Transfer Order in the Ninth Circuit. And so on July 20, 2024, Plaintiffs filed a motion here to retransfer venue to the California courts. Dkt. 21. If the Court grants retransfer, the S.D. Cal. and Ninth Circuit will regain jurisdiction. And Plaintiffs can then petition the Ninth Circuit for a writ of mandamus. *Id.* If the Court denies retransfer, Plaintiffs can appeal that denial to the D.C. Circuit. *See Hill v. Henderson*, 195 F.3d 671, 677 (D.C. Cir. 1999).

## II. LEGAL STANDARD[4]

Venue is proper under the FTCA "only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." 28 U.S.C. § 1404(a). If the plaintiff resides in one venue but the events occurred elsewhere, the court can transfer jurisdiction "for the convenience of parties and witnesses[] and in the interest of justice" to a venue in which the case "might have been brought." *Id.* § 1404(b). District courts have "discretion […] to

---

[4] The following scorecard may be helpful. The S.D. Cal. is the "transferor court"; the Ninth Circuit is the "transferor circuit"; the D.D.C. is the "transferee court"; and the D.C. Circuit is the "transferee circuit." The party that opposed venue is the "transferred party."

4

adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

An order transferring venue is the "law of the case binding the [transferee] district court." *Hill*, 195 F.3d at 677. The transferee court cannot review the decision of the transferor court and should not retransfer the case unless the transfer order was "clearly erroneous and would work a manifest injustice." *Arizona v. California*, 460 U.S. 605, 618 n.8 (1983). This demanding standard avoids the "judicial ping pong" of constant venue transfers. *FMC Corp. v. U.S. E.P.A.*, 557 F. Supp. 2d 105, 113 (D.D.C. 2008) (cleaned up). Indeed, "transferee courts that feel entirely free to revisit transfer decisions of a coordinate court threaten to send litigants into a vicious circle of litigation." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988).

### III. ANALYSIS

#### A. Plaintiffs Have Not Been Denied the Right to Appeal

Plaintiffs argue that "[m]anifest injustice occurs when a party procedurally entitled to file an appeal pursuant to 28 U.S.C. §1294 is deprived of that right […] before the transferred party has an opportunity to file an appeal." Dkt. 29 at 11. If Plaintiffs had been denied the right to appeal, they might have a point. But that has not occurred.

To understand why, it is useful to rehearse the life cycle of a transfer order. While "[t]ransfer orders under §1404 are not final appealable orders," a litigant can seek a writ of mandamus from the transferor circuit if the transfer has not yet occurred. *Hill*, 195 F.3d at 676. But once transfer is complete, the transferor circuit loses jurisdiction and can do nothing on the transfer order. *See id.*; *NB Imaging Sys., Inc. v. U.S. Dist. Court for the Eastern Dist. of Cal.*,

5

841 F.2d 297, 298 (9th Cir. 1988). Thus, to file a writ in the transferor circuit, the litigant must file the writ before the district court clerk physically (or, these days, electronically) transfers the case.

If the transferred party does not have time to petition the transferor circuit, hope is not lost. The transferred party can ask the transferee court to send the case back (*i.e.*, retransfer) to the transferor court. If the transferee court grants the motion, the case returns to the transferor court and the transferor circuit regains jurisdiction to entertain a writ. If the transferee court denies the motion, the transferred party can seek a writ of that denial in the transferee circuit to obtain appellate review of the transfer. *See Hill*, 195 F.3d at 677. While this requires an extra step—resolution of a motion to retransfer before the transferred party can seek a writ—the outcome is the same: appellate review in a court "not […] bound by the decision of either lower court." *Id*.

Plaintiffs thus are not without appeal rights. They have taken the initial step of moving this Court to retransfer the case. And now the Court resolves the motion, denying it because Plaintiffs have not shown—as they must to obtain retransfer—clear error by the transferor court resulting in manifest injustice. Once this Order is docketed, Plaintiffs can petition the D.C. Circuit for a writ to reverse it and instruct the Court to retransfer the case to the S.D. Cal.

Plaintiffs' real gripe appears to be that—for unstated reasons—they prefer to appeal to the Ninth Circuit instead of the D.C. Circuit. If so, that preference is irrelevant for two reasons. First, "[f]ederal courts comprise a single system applying a single body of law, and no litigant has a right to have the interpretation of one federal court rather than that of another determine his case." *Menowitz v. Brown*, 991 F.2d 36, 40 (2d Cir. 1993) (cleaned up). Second, Plaintiffs face an uphill (some might say, up-mountain) battle in either circuit. The Ninth Circuit and the D.C.

Circuit each consider mandamus of a transfer order an extreme remedy, generally appropriate only to correct "a clearly erroneous transfer order." *In re Bozic*, 888 F.3d 1048, 1054 (9th Cir. 2018); *see also In re Scott*, 709 F.2d 717, 719 (D.C. Cir. 1983) (cleaned up) (calling mandamus "a drastic [remedy], to be invoked only in extraordinary circumstances, [and] available on rare occasions to review transfer orders"). Practically then, Plaintiffs lose no legal advantage by appealing in the D.C. Circuit rather than the Ninth Circuit.

### B. The Transferor Court Did Not Err

The Court now turns to the merits. Because the Transfer Order is the law of the case, the Court can disturb it only if it contains clear error resulting in manifest injustice. *See supra* Part II. The Transfer Order contains nothing of the sort. Judge Bashant considered the FTCA and carefully weighed the relevant factors governing a motion to transfer venue in detail before concluding that the factors in favor of transfer outweighed those against.

While Plaintiffs purport to identify five clear errors, they are wrong as to each one. First, Plaintiffs complain that Judge Bashant "[u]nfairly transferred the burden, difficulty, and expense of litigation from the Defendant to the Plaintiffs." Dkt. 29 at 10. Not so. To start, litigation is not a one-way street in which defendants bear the sole burden. Wherever litigated, Plaintiffs will bear some burden, difficulty, and expense. And Judge Bashant considered the burdens of the parties in each venue. She acknowledged that litigation would be easier for the United States in Washington, D.C. and easier for the Plaintiffs in California but concluded that the difference was negligible. Dkt. 14 at 5-6. The Court agrees.

Second, Plaintiffs complain that Judge Bashant "[f]ailed to properly assess [sic] and evaluate the importance of the special venue provision which allows an FTCA claimant to file suit in the venue in which she resides." Dkt. 29 at 10. But Judge Bashant expressly considered

7

the FTCA's instruction on a plaintiff's choice of forum, even highlighting, with citation to case law, that it was "particularly true if plaintiff resides in that chosen forum." Dkt. 14 at 4-5 (collecting cases). She acknowledged that this factor weighed against transfer but also found, again with citation to case law, that this factor was "substantially diminished in this matter because the conduct all occurred outside of California." *Id.* Judge Bashant therefore did not fail to assess or evaluate the FTCA's venue provision. She did both and found that it weighed against transfer but was not outcome determinative. The Court again agrees.

Third, Plaintiffs claim that Judge Bashant "[i]mproperly weighed and gave greater deference to local interest in this controversy, finding that the District of Columbia had a greater interest in this matter than California." Dkt. 29 at 11. To say that Washington, D.C. has a greater interest here than California is putting it mildly. The events of January 6, 2021, cost an estimated $2.7 billion[5] and imposed untold hardships on D.C.'s government, first responders, and residents. There was no clear error in Judge Bashant weighing the local interest factor in favor of transfer; indeed, it might have been clear error to weigh it in favor of California or even call it a draw.

Fourth, Plaintiffs assert that Judge Bashant paid only "lip service" to their choice of forum and instead favored venue where the events giving rise to the action occurred. This, they claim, "would essentially read the [FTCA's] special [venue] provision out of law, requiring an FTCA claimant to always file in the district where the injury occurred." Dkt. 29 at 11. In lobbing this claim, Plaintiffs willfully ignore Judge Bashant's analysis, which addressed numerous factors other than the site of the events.

---

[5] *See* U.S. Gov't Accountability Off., GAO-23-106625, Capitol Attack: Federal Agencies Identified Some Threats, but Did Not Fully Process and Share Information Prior to January 6, 2021 (2023).

Fifth, Plaintiffs claim that Judge Bashant "[e]ntirely ignored the weight and import of the witnesses who shot video recording of the shooting at issue; all of whom are non-party critical witnesses, and none of whom apparently reside in the District of Columbia." Dkt. 29 at 11. Not so. Devoting several pages of analysis to this issue, Judge Bashant highlighted that many non-party witnesses live in the Washington, D.C. area. She also noted that because the witnesses living outside Washington D.C. are "scattered across the country," their location favored neither venue.[6] She thus properly found that convenience of witnesses weighed significantly in favor of transfer. Dkt. 14 at 6-10.

Plaintiffs' concerns with Judge Bashant's conclusion not only fail on their own merits, they ignore the entirety of her opinion. For example, Judge Bashant considered that Washington, D.C. provides easier access to sources of proof because the events occurred here. *Id.* at 10. As another example, she considered that the FTCA "incorporates substantive state law as federal law to determine liability" such that D.C. tort law applies to aspects of this case. *Id.* at 10-11. And because D.C. courts have more familiarity with D.C. tort law, she properly found that this factor weighed slightly in favor of transfer. *Id.*

Judge Bashant also considered two issues of judicial expediency: the possibility of consolidating cases and the relative congestion of the two courts. As for consolidation, she noted that no related actions were pending in Washington, D.C. And even though Plaintiffs had filed a separate Freedom of Information Act (FOIA) action in the S.D. Cal., that action was insufficiently like this case to make consolidation feasible. Thus, with "no sufficiently related actions to consolidate in either forum," Judge Bashant found consolidation neutral with respect

---

[6] These witnesses were present in the U.S. Capitol on January 6, 2021. Presumably, then, at some point they found travel to Washington, D.C. feasible.

to transfer. *Id.* at 12-13. As for congestion, Judge Bashant found that time to trial for civil cases is similar in both districts, making this factor neutral as well. *Id.* at 13.

All told, the only concrete item tying this case to California is the Babbitts' residence in San Diego. Mr. Babbitt's preference to litigate close to home does not cast doubt on Judge Bashant's determination—based on an analysis of all relevant factors—that the appropriate forum is Washington, D.C. And were this Court painting on a blank canvas, it would reach the same result. That noted, the Court is not indifferent to Mr. Babbitt's residency and that of other third-party witnesses. And so it orders that the parties honor any request by Mr. Babbitt or third-party witness to be deposed in his or her district of residency.

## IV. CONCLUSION AND ORDER

For these reasons, the Court **DENIES** Plaintiffs' Motion to Retransfer Venue to the Southern District of California, Dkt. 21.

To advance the interest of convenience for Mr. Babbitt and other witnesses residing in California, the Court **ORDERS** that Mr. Babbitt and any third-party witness may request to have his or her deposition taken in person in the district of their residency, and that counsel for the parties will abide by such requests. This Court will retain jurisdiction over all depositions, regardless of their location.

**SO ORDERED.**

Date: January 15, 2025

_____
ANA C. REYES
United States District Judge